THE WAND LAW FIRM
Aubry Wand (SBN 281207)
400 Corporate Pointe, Suite 300
Culver City, California 90230
Telephone:  (310) 590-4503
Facsimile:  (310) 590-4596
E-mail: awand@wandlawfirm.com

SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
Todd M. Schneider (SBN 158253)
Jason H. Kim (SBN 220279)
Kyle G. Bates (SBN 299114)
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
E-mail:  tschneider@schneiderwallace.com
         jkim@schneiderwallace.com
         kbates@schneiderwallace.com

*Attorneys for Plaintiffs and*
*The Putative Class*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA DASHNAW, WILLIAM MEIER, and SHERRYL JONES, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NEW BALANCE ATHLETICS, INC., a corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.: 3:17-cv-00159-L-JLB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Judge: Hon. M. James Lorenz<br>Date:   May 21, 2018<br>Time:  10:30 am<br>Courtroom: 5B<br><br>**<u>No oral argument unless requested by the Court</u>** |

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................1

II.   RELEVANT PROCEDURAL BACKGROUND ........................................2

III.  THE SETTLEMENT .....................................................................................3

    A.   The Settlement Class ..........................................................................3

    B.   Settlement Terms ................................................................................4

        1.   Monetary Relief to the Class .................................................4

        2.   Injunctive Relief....................................................................5

        3.   Class Representative Service Awards.....................................7

        4.   Attorneys' Fees and Costs .....................................................7

        5.   Settlement Administration Costs ...........................................8

    C.   Release ................................................................................................8

    D.   Class Notice and Objection and Opt-Out Rights................................8

        1.   Direct Notice .........................................................................9

        2.   Notice via Publication...........................................................9

        3.   Form of Notice to Class Members .......................................10

        4.   Exclusions ............................................................................10

        5.   Objections ............................................................................11

IV.  THE SETTLEMENT IS FAIR AND REASONABLE ...............................11

    A.   The Proposed Settlement Was Reached After Informed, Arm's Length Bargaining 12

    B.   The Proposed Settlement Does Not Suffer From Any Obvious Deficiencies ..........13

    C.   The Proposed Settlement Does Not Provide Preferential Treatment to Plaintiffs or a Segment of the Class ......................................................15

    D.   The Proposed Settlement Falls within the Range of Possible Approval ..................16

V.   THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES...............18

    A.   The Requirements of Rule 23(a) Are Satisfied .................................18

        1.   The Numerosity Requirement is Satisfied ...........................19

        2.   The Commonality Requirement is Satisfied.........................19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

      3.   The Typicality Requirement is Satisfied ................................................. 19

      4.   The Adequacy Requirement is Satisfied ................................................. 20

  B.    The Requirements of Rule 23(b)(3) are Satisfied ...................................... 21

     1.  Common Questions Predominate Over Individual Issues ....................... 21

     2.  A Class is the Superior Method to Resolve this Controversy ................. 21

VI.  THE PROPOSED CLASS NOTICE SHOULD BE APPROVED ................................. 22

VII. CONCLUSION ........................................................................................ 24

1

# TABLE OF AUTHORITIES

2

**Cases**

3
*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................20, 22

4
*Barbosa v. Cargill Meat Solutions Corp.*,
   2013 WL 3340939 (E.D. Cal. Jul. 2, 2013) ...........................................22

5

6
*Browning v. Yahoo! Inc.*,
   2007 WL 4105971 (N.D. Cal. Nov. 16, 2007).......................................23

7
*Churchill Vill., L.L.C. v. GE*,
   361 F.3d 566 (9th Cir. 2004) ..................................................................23

8
*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ..................................................................................2

9

10
*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ................................................................................22

11
*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ..................................................................20

12
*Farinella v. Paypal, Inc.*,
   611 F. Supp. 2d 250 (E.D.N.Y. 2009)....................................................23

13
*Guido v. L'Oreal, USA, Inc.*,
   284 F.R.D. 468 (C.D. Cal. 2012),
14   *reconsideration granted on other grounds*, 2012 WL 2458118 (C.D. Cal. June 25,
   2012)........................................................................................................20

15
*Guilbaud v. Sprint Nextel Corp.*,
16   2016 WL 7826649 (N.D. Cal. Apr. 15, 2016) ........................................12

17
*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)...............................................18, 20, 21, 22

18
*Hopson v. Hanesbrands Inc.*,
   2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ............................................16

19
*In re Heritage Bond Litig.*,
   546 F.3d 667, 674-75 (9th Cir. 2009) .....................................................11

20

21
*In re LDK Solar Sec. Litig.*,
   2010 WL 3001384 (N.D. Cal. July 29, 2010).........................................17

22
*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015)...................................................................15

23
*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..................................................16

24
*In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA)
   Litig.*,
25   295 F.R.D. 438 (C.D. Cal. 2014) ......................................................12, 17

26
*Jordan v. County of Los Angeles*,
   669 F.2d 1311 (9th Cir. 1982),
27   *rev'd on other grounds*, 713 F.2d 503 (9th Cir. 1983) .............................19

28

iii

*Mendoza v. United States*,
    623 F.2d 1338 (9th Cir. 1980)................................................................23

*Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988, (9th Cir. 2010)..................................................................8

*Morris v. Lifescan, Inc.*,
    54 Fed.Appx. 663 (9th Cir. 2003)............................................................7

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)...............................................................................24

*Reed v. 1–800 Contacts, Inc.*,
    2014 WL 29011 (S.D. Cal. Jan. 2, 2014)..............................................17

*Rodriguez v. Hayes*
    591 F.3d 1105 (9th Cir. 2010)................................................................19

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009)...........................................................12, 15

*Satchell v. Federal Express Corp.*,
    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)......................................12

*Schaffer v. Litton Loan Servicing, LP*,
    2012 WL 10274679 (C.D. Cal. Nov. 13, 2012).....................................18

*Spann v. J.C. Penney Corp.*,
    314 F.R.D. 312 (C.D. Cal. 2016).....................................................12, 14

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003).............................................................16, 19

*Tadepalli v. Uber Technologies, Inc.*,
    2015 WL 9196054 (N.D. Cal. Dec. 17, 2015)......................................23

*Tait v. BSH Home*,
    2012 WL 6699247 (C.D. Cal. Dec. 20, 2012)......................................21

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996)..................................................................22

*Vasquez v. Coast Valley Roofing, Inc.*,
    670 F. Supp. 2d 1114 (E.D. Cal. 2009).................................................16

*Vinh Nguyen v. Radient Pharm. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) .........................................15

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)...............................................................................19

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008)..................................................................21

*Zinser v. Accufix Research Inst. Inc. Corp.*,
    253 F.3d. 1180 (9th Cir. 2001)...............................................................22

///
///
///
///

**Rules**

Fed. R. Civ. P. 23(a)(1) ............................................................... 19
Fed. R. Civ. P. 23(a)(3) ............................................................... 19
Fed. R. Civ. P. 23(a)(4) ............................................................... 20
Fed. R. Civ. P. 23(b)(3) ............................................................... 21
Fed. R. Civ. Proc. § 23(e) ............................................................ 11

**Statutes**

Cal. Civ. Code § 1542 .................................................................. 7

**Other Authorities**

Newberg on Class Actions
    (4th ed. 2013) §14.6 ............................................................. 13

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

In this is class action, Sheila Dashnaw, William Meier, and Sherryl Jones ("Plaintiffs") allege that New Balance Athletics, Inc. ("New Balance") violated California consumer protection laws and committed unlawful business practices by advertising that some of its shoes are "Made in USA" when those shoes are comprised of up to 30% non-domestic content.

After over a year of hard-fought litigation, Plaintiffs present this Settlement to the Court for preliminary approval. The proposed Settlement provides for a common fund of $750,000 which will cover the costs of settlement administration and payments to Settlement Class Members. Each Settlement Class Member will be eligible to receive $10 per purchase of qualified shoes. This provides near complete relief to those Settlement Class Members who choose to make a claim, as it closely corresponds with the damages calculation of Plaintiffs' expert.

In addition, the proposed Settlement provides for substantial injunctive protection, requiring New Balance to make more prominent the existing disclosure of the domestic content in its "Made in USA" labeled shoes. The actions that New Balance will be required to implement should the Court approve this Settlement are detailed below.

As more fully discussed below, the proposed Settlement is fair, reasonable, and adequate. It represents a significant recovery based on the risks of obtaining and maintaining class certification and establishing liability and damages at trial. Furthermore, the proposed Class should be provisionally certified for settlement purposes because all of the requirements of Fed. R. Civ. P. 23 are satisfied, specifically: (1) the Class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the Class; (3) Plaintiffs' claims are typical of the claims of the Class; (4) Plaintiffs and their counsel will fairly and

adequately protect the interests of the Class; and (5) common issues predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Finally, the proposed notice plan meets all requirements as to method and form. The Class Notice, which is to be distributed to each Class Member, fairly apprises them of the terms of the proposed settlement and their options in connection with the proceedings. Accordingly, Plaintiffs respectfully request that this Court grant preliminary approval of the Settlement, provisionally certify the Class as described herein, approve the Class Notice and Notice Plan, and set a hearing for final approval of the Settlement.

## II.  **RELEVANT PROCEDURAL BACKGROUND**

On December 27, 2016, Plaintiffs filed a Complaint in the California Superior Court, County of San Diego. Declaration of Jason H. Kim in Support of Plaintiffs' Motion for Preliminary Approval of Settlement ("Kim Decl."), ¶ 2. On January 26, 2017, New Balance removed the action to this Court. *See* ECF No. 1.

On February 20, 2017, Plaintiffs filed a First Amended Complaint ("FAC"), which is the operative Complaint in this action. *See* ECF No. 16.

On September 8, 2017, Plaintiffs filed a motion for class certification. *See* ECF No. 49.

On November 8, 2017, New Balance filed an omnibus memorandum opposing Plaintiffs' motion for class certification and seeking to strike the testimony of Plaintiffs' two expert witnesses who were proffered in support of Plaintiffs' motion for class certification pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See* ECF No. 73.

On December 12, 2017, Plaintiffs filed an omnibus reply memorandum in support of their motion for class certification and opposing New Balance's *Daubert* motions. *See* ECF No. 80.

On December 22, 2017, New Balance filed a reply in support of its *Daubert* motions as well as a motion for judgment on the pleadings, arguing that California's "Made in USA" statute, Cal. Bus. & Prof. Code § 17533.7, violates its right to free speech under the First Amendment. *See* ECF No. 86.

On February 16, 2018, Plaintiffs filed an opposition to New Balance's motion for judgment on the pleadings. *See* ECF No. 91.

On February 21, 2018, the parties participated in a mediation in Boston, Massachusetts with a highly respected mediator, Professor Eric Green. At the conclusion of the mediation, the parties reached an agreement regarding the material terms of this Settlement. Therefore, the parties jointly requested that the Court vacate all deadlines and hearing dates with respect to Plaintiffs' pending motion for class certification and New Balance's pending motion for judgment on the pleadings with respect to Plaintiffs' Cal. Bus. & Prof. Code § 17533.7 Claim.

On March 13, 2018, the Court granted the parties' joint motion to stay this action pending the settlement, and ordered Plaintiffs to file their motion for preliminary approval by no later than April 23, 2018. *See* ECF No. 97. There are currently no dates on calendar other than the hearing on this Motion.

## III.   THE SETTLEMENT

### A.   The Settlement Class

The proposed Settlement provides relief to a California Class comprised of:

All persons who, during the Class Period, purchased any and all "Made in USA" Shoes from New Balance and/or its Authorized Retailers in California.[1] Kim Decl., ¶ 5, Exh. A ("Settlement Agreement"), ¶ II.A.11.

---

[1]   Excluded from the Class are: (a) New Balance's Board members or employees, including its attorneys; (b) any persons who purchased "Made in USA" shoes for purposes of resale; (c) distributors or re-sellers of the "Made in USA" Shoes; (d) the judge and magistrate judge presiding over the Action and their immediate families; (e) governmental entities; and (f) persons or entities who or which timely and properly exclude themselves from the Class as provided in this Agreement.

The Class Period is defined as December 27, 2012 until the date the Court grants preliminary approval of the Settlement. Settlement Agreement, ¶ II.A.15.

Shoes labeled as "Made in USA" and which contain less than 95% domestic content (*e.g.*, qualifying shoes) include 51 different New Balance shoe models, which are listed in the Settlement Agreement and in related documents such as the Class Notice and Claim Form. *Id.*, ¶ II.A.21.

**B.   Settlement Terms**

In exchange for a release of claims against New Balance, the material terms of the Settlement are as follows:

1.      Monetary Relief to the Class

Pursuant to the Settlement, New Balance shall allocate $750,000 to a non-reversionary common fund, which shall cover settlement administration costs, the service awards to the named Plaintiffs, and Individual Settlement Payments to Class Members. *Id.*, ¶ III.A.

Each Class Member who does not opt out of the Settlement will be eligible to receive up to $10 per purchase of "Made in USA" Shoes up to a maximum of $50 (*e.g.*, up to five pairs of qualified shoes). *Id.*, ¶ III.B.5. Class Members will be required to submit a Claim Form to the Class Action Settlement Administrator[2] in order to be eligible to receive the Claim Amount. *Id.*, ¶ II.A.7, Exh. 1.

Any monetary sum remaining in the common fund, after settlement administration costs have been paid (*e.g.*, unclaimed funds) or any uncashed Claim Amounts issued to Class Members (*e.g.*, residual funds) shall go to a cy pres recipient, in this case, United Service Organization, which provides the Heroes Make America Program, a career skills training program that arms transitioning service members with the unique qualifications and industry-specific certifications necessary to secure

---

[2]      Also referred to as "Notice Administrator."

rewarding jobs in the manufacturing industry ("USO" or "Cy Pres Recipient"). *Id.*, ¶ III.C.

2.      Injunctive Relief

A primary goal of this case was to challenge New Balance's "Made in USA" advertising. This Settlement resolves that challenge by requiring New Balance to make more prominent the disclosure of what it means by this phrase. New Balance will be required to make the following changes to its marketing practices pursuant to the Settlement, in order to make its existing disclosures regarding its "Made in USA" claims more prominent:

a.      Going forward, for all "Made in USA" Shoes produced after the Final Settlement Date, the hangtag affixed to the "Made in USA" Shoes which contain less than 95% U.S. content will no longer include the phrase "Made in the USA" on the front of the tag. On the back, in clear readable font, the hangtag will include the following sentence, or words to similar effect, "New Balance 'made' is a premium collection that contains domestic value of 70% or greater" (the "Made Notice") unless and until a change in either federal or California law obviates the need for such clarification. New Balance may make any and all stylistic changes to the hangtag it desires so long as such changes are in accordance with the principles set forth in this paragraph.

b.      Going forward, for all "Made in USA" Shoes produced after the Final Settlement Date, shoe boxes for the "Made in USA" Shoes which contain less than 95% U.S. content will not include the phrase "Made in the USA" on the outside top panel of the box. New Balance may indicate that the shoes are made in the United States on the side(s) of the shoe box if, on the end and/or side of the shoe box, in clear readable font, it states the following sentence, or words to similar effect, "New Balance 'made' is a premium collection that contains domestic value of 70% or greater" unless and until a change in either federal or California law obviates the need

for such clarification. New Balance may make any and all stylistic changes to the shoe box it desires so long as such changes are in accordance with the principles set forth in this paragraph.

c.    New Balance will implement a compliance and training program for a period of five years from the Final Settlement Date, intended to ensure that moving forward any advertising – including print, television, social media in the United States – include the Made Notice any time the "Made in USA" representation is made with respect to "Made in USA" Shoes which contain less than 95% U.S. content.

d.    New Balance will implement reasonable policies and practices intended to ensure that the modified hangtag is physically affixed to each display shoe in all California retail stores. New Balance further agrees to implement a compliance training program for employees of its flagship and factory stores in California.

e.    New Balance sales and marketing associates who work on advertising for the "Made in USA" Shoes shall receive training at least twice during the five years following the effective date of the Settlement Agreement regarding California's false advertising laws conducted by an attorney. New Balance will also appoint an attorney responsible for ensuring compliance with the above and implement a compliance program for this same five-year period.

f.    New Balance agrees that it will maintain its current policy with respect to any "Made in USA" statements on its U.S. ecommerce website. Specifically, (1) all banners saying "Made in USA" or displaying a "Made in USA" Shoe where the "Made in USA" label is showing must have the Made Notice in legible size and font, (2) the "Made in USA" Shoe landing page (*i.e.*, where all of New Balance's "Made in USA" Shoes are listed), must have the Made Notice listed under the "Made in USA" heading, and (3) all individual product display pages containing a "Made in USA" Shoe must have the Made Notice listed in same size and font as, and

in close proximity to, the rest of the product description. New Balance acknowledges that various aspects of its e-commerce website relating to "Made in USA" Shoes were changed after this litigation commenced.

Settlement Agreement, ¶ III.D.1-6.

### 3. Class Representative Service Awards

Subject to Court approval, in exchange for a broad release of their claims, as well as for their time and effort in litigating this matter, each of the Named Plaintiffs shall be eligible to receive a payment of up to $5,000 ("Class Representative Service Award").[3] Settlement Agreement, ¶ VIII.C.

### 4. Attorneys' Fees and Costs

Pursuant to the Settlement Agreement, Plaintiffs' Counsel will request up to $650,000 for their fees and reimbursable litigation costs, which New Balance does not oppose. *Id.*, ¶ VIII.A. Plaintiffs' Counsel currently estimate their litigation costs are approximately $230,000 and their fees, based on the lodestar, are approximately $550,000. Kim Decl., ¶ 6; Declaration of Aubry Wand in Support of Plaintiffs' Motion for Preliminary Approval ("Wand Decl."), ¶¶ 9-10. Plaintiffs' Counsel's lodestar will increase considerably based on the time they will need to expend through the settlement administration and approval process. Kim Decl., ¶ 7. Thus, the award of attorneys' fees and costs is less than the value of the services of Counsel as calculated under the lodestar method. Moreover, the attorneys' fees and costs represent less than 10% of the total value of the Settlement, including the monetary value of the injunctive relief, and thus the fee award is also appropriate under the common fund approach. Courts in the Ninth Circuit regularly approve fee awards of one third of the total settlement amount. *See*, *e.g.*, *Morris v. Lifescan, Inc.*, 54 Fed.Appx. 663 (9th Cir. 2003) (affirming a 33% award); 4 Newberg et al., Newberg on Class Actions (4th ed.

---

[3]   Unlike Class Members, the Named Plaintiffs have agreed to a general release, which includes a waiver of Cal. Civ. Code § 1542.

2013) §14.6 ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery").

Plaintiffs will provide further supporting documentation and briefing regarding attorneys' fees and costs and the Class Representative Service Awards in a separate motion, which will be filed fourteen days prior to the exclusion and objection deadline, thus enabling Class Members to consider this issue before deciding how to proceed under the Settlement. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 933 (9th Cir. 2010).

### 5. Settlement Administration Costs

Settlement Administration costs will be paid out of the common fund. Settlement Agreement, ¶ III.A.2. Heffler Claims Group ("Heffler"), an experienced and well-qualified claims administrator, has been selected to administer class notice and settlement. *Id.*, ¶ II.A.22. Prior to selecting Heffler, the parties considered proposals from three other reputable claims administrators, but ultimately selected Heffler based on several factors, including consideration of Heffler's experience, costs, and notice plan. Kim Decl., ¶ 8. Heffler has extensive experience in administering similar consumer class action settlements. Declaration of Jeanne Finegan, Exh. 7 to Exh. A ("Finegan Decl."), ¶¶ 1-12. The Costs of Notice and Settlement Administration are currently estimated to be $235,000.

### C. Release

Under the Settlement, Class Members will only release claims on the basis of connected with, arising from or relating to the claims alleged in the Complaint in the Action during the Class Period. Settlement Agreement, ¶ VII.

### D. Class Notice and Objection and Opt-Out Rights

Pursuant to the terms of the Settlement Agreement, sufficient notice will be provided that will fully apprise the Class of the terms of the Settlement. The notice

plan is designed to reach 70% of the target audience. Finegan Decl., ¶ 4. Notice will be in the form of a two-step approach: (1) direct notice via email and/or U.S. Mail to approximately 56,000 Class Members for whom New Balance has such information; and (2) targeted notice to the entire Class via print advertisements, Internet websites, and the creation of a settlement website and the maintenance of a toll-free number.

### 1.    Direct Notice

New Balance will provide the Notice Administrator with information relating to the Class Members for whom New Balance has such information, including their email and/or mailing addresses, within one (1) business day after the Court grants preliminary approval of the Settlement. Settlement Agreement, ¶ IV.B.1.a.

Not later than five (5) business days after entry of the Preliminary Approval Order and to be substantially completed not later than ten (10) days after entry of the Preliminary Approval Order, the Notice Administrator will send the Class Notice to Class Members via email. *Id.*, ¶ IV.B.1.b. As set forth below, courts have increasingly recognized that email notice provides an effective means of class notice, especially in matters related to e-commerce (as is the case here). *See* discussion, *infra,* Section VI. Not later than twenty (20) days after entry of the Preliminary Approval Order, the Notice Administrator shall send the Summary Settlement Notice by First Class U.S. Mail to each Class Member whose email address returned a message as undeliverable, subject to the existence of such information as provided by New Balance, and will re-mail any such notices that are retuned as undeliverable. *Id.*, ¶ IV.B.1.c, d; Finegan Decl. ¶ 16.

### 2.    Notice via Publication

The Notice Administrator will also create a settlement website and post, among other potential documents, the Class Notice, the operative Complaint, the Settlement Agreement, the Claim Form, Class Counsel's motion for attorneys' fees and costs, and the Order Granting Preliminary Approval of Class Action Settlement, on the settlement

website prior to the end of the Claim Period. *Id.*, ¶ VI.B.4; Finegan Decl., ¶¶ 27-28. The Notice Administrator will also establish a toll-free telephone number that will provide Settlement-related information to Class Members. Settlement Agreement, ¶ VI.B.5; Finegan Decl., ¶ 29.

In addition, the Notice Administrator has put together a carefully designed notice plan via print and internet advertisements that is designed to reach at least 70% of the target audience. Finegan Decl., ¶¶ 4, 17-22. The Notice Administrator will publish the Summary Settlement Notice not later than five (5) business days after entry of the Preliminary Approval Order, and substantially complete it no later than sixty-five (65) days after entry of the Preliminary Approval Order. Settlement Agreement, ¶ VI.B.4. Specifically, the notice program will employ social media platforms such as Facebook and Instagram, it will be posted in print and online versions of the Los Angeles Times, and there will be a news release over PR Newswire's California and California Hispanic Newslines, which delivers to thousands of print and broadcast newsrooms nationwide, as well as websites, databases and online services including featured placement in news sections of leading portals. Finegan Decl., ¶¶ 23-25. Heffler will monitor the various media channel and provide the Court with a report upon completion of the notice program. *Id.*, ¶ 26.

### 3.   Form of Notice to Class Members

The Parties have agreed to the substantial form of the Class Notice and the Summary Settlement Notice, subject to the Court's approval. Settlement Agreement, ¶ II.A.14, Exh. 2; IV.B.3, Exh. 7.

### 4.   Exclusions

Class Members will have the opportunity to exclude themselves from the Settlement by submitting a written, signed request to the Notice Administrator by first-class mail, postage-prepaid mail to the address provided in the Class Notice. *Id.*, ¶ V. Class Members must submit the their written request for exclusion within ninety (90)

days after the Notice Administrator transmits the Class Notice to Class Members (the "Claims Period"). *Id.*, ¶¶ II.A.8, V. Class Members who fail to timely exclude themselves in the manner specified shall be included in the Settlement. *Id.*, ¶¶ V, IX.A.6.

### 5.    Objections

The Class Notice informs Class Members of their right to object to the Settlement. Class Members who wish to object must file with the Court a written objection, and submit the objection to the Notice Administrator by first-class mail, postage-prepaid mail, within the Claims Period, pursuant to the instructions set forth in the Class Notice. Settlement Agreement, ¶ VI. The Objection must be signed by the Class Member and state: (a) the full name, address, and telephone number of the Class Member; (b) include proof of purchase of qualified shoe(s); (c) a written statement of the Class Member's objection(s), including any legal support and/or supporting evidence; (d) whether the person intends to appear at the Final Settlement Hearing; and (e) the Class Member's signature, even if represented by counsel. *Id.*, ¶ II.A.14, Exh. 2 ("Class Notice"). Class Members who fail to timely make objections in the manner specified shall be deemed to have waived any objections and shall be foreclosed from making any objections (whether by appeal or otherwise) to the Settlement. *Id.*, ¶ VI.C.

## IV.    THE SETTLEMENT IS FAIR AND REASONABLE

Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. Proc. § 23(e). Before a court approves a settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2009). At the preliminary approval stage, the court may grant preliminary approval of a settlement and direct notice to the class if the settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not

improperly grant preferential treatment to the class representative or segments of the class; and (4) falls within the range of possible approval." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016) (internal quotation omitted). Preliminary approval is appropriate here because all of the foregoing criteria, and the factors supporting class certification, are satisfied.

### A. The Proposed Settlement Was Reached After Informed, Arm's Length Bargaining

The Settlement Agreement was reached following extensive negotiations during a private mediation session with Professor Eric Green in Boston, Massachusetts, who is one of the preeminent mediators in the country. Kim Decl., ¶ 3.

When a settlement is "a product of informed, arms-length negotiations," a presumption of fairness attaches. *In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014); *see also Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir.2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). And "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Federal Express Corp.*, Nos. C03-2659 SI & C03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also Guilbaud v. Sprint Nextel Corp.*, No. 3:13-CV-04357-VC & 3:14-CV-02642-VC, 2016 WL 7826649, at *1 (N.D. Cal. Apr. 15, 2016) (approving settlement where after "initial exchanges of information and discovery, the Parties entered into private mediation before respected neutral mediator . . . to try to resolve the claims").

The settlement negotiations were at arm's length and, although conducted in a professional manner, were adversarial. The parties went into the mediation session willing to explore the potential for a settlement of the dispute, but each side was also committed and prepared to vigorously litigate the case if a settlement had not been reached. This is demonstrated by the extensive briefing – including a motion for class

certification, two *Daubert* motions, and a motion for judgment on the pleadings – all of which were on file before the mediation occurred. Kim Decl. ¶ 10.

Moreover, Plaintiffs through Class Counsel conducted a thorough investigation and completed substantial discovery before participating in the mediation, which includes but is not limited to the following:

- Each of the three Plaintiffs sat for deposition;
- Plaintiffs took two depositions of New Balance on relevant topics pursuant to Rule 30(b)(6) in Boston;
- Plaintiffs deposed New Balance's expert witnesses, Hal Poret and Sarah Butler and defended their own expert witnesses, Colin Weir and Doug Kysar, at deposition;
- Plaintiffs reviewed the approximately 15,000 pages of documents produced by New Balance, including sales data, advertising and marketing documents;
- Plaintiffs filed a motion for class certification, which was fully-briefed prior to the mediation; and
- Plaintiffs opposed New Balance's two *Daubert* motions and a motion for judgment on the pleadings.

Thus, Plaintiffs and Class Counsel were well-apprised of the salient legal and factual issues before participating in the mediation. Kim Decl., ¶ 12.

**B.      The Proposed Settlement Does Not Suffer From Any Obvious Deficiencies**

The second factor the Court considers is whether there are obvious deficiencies in the Settlement. Under the terms of the Settlement Agreement, New Balance has committed to set aside $750,000 as a common fund, in addition to undertaking substantial marketing efforts to make its 70% disclosures regarding its "Made in USA" advertising more prominent. This is an excellent recovery for the Class, taking into

consideration the significant risks of proceeding with the litigation, including the risks of obtaining and maintaining class certification, establishing liability and proving damages. *See Spann*, 314 F.R.D. at 326 (preliminarily approving settlement of class action involving deceptive discounting practices in light of "substantial litigation risks" including risks associated with restitutionary measures).

Prior to the mediation, New Balance filed a motion for judgment on the pleadings, wherein it argued that California's "Made in USA" statute (Cal. Bus. & Prof. Code § 17533.7) violated its free speech rights. If New Balance prevailed on this motion, it would not only have gutted Plaintiffs' primary claim, but it could also have jeopardized the viability of more generalized claims based on false advertising (*e.g.*, Plaintiffs' unlawful prong UCL claim).

New Balance also argued that Plaintiffs could not prove restitutionary damages and relatedly that Plaintiffs' economic expert, who proffered a price premium based on the alleged deceptive "Made in USA" representation, should be stricken. New Balance asserted that it would also have been able to introduce evidence that it claimed would establish: (1) that it has always intended to disclose to consumers the nature of its "Made in USA" claims, and that it believes that its claims have been sufficiently qualified in the past to fall outside the specific provisions of California's "Made in USA" statute (Cal. Bus. & Prof. Code § 17533.7); (2) that it has never intended to mislead consumers; (3) that it does, in fact, have five factories in the United States that employ more than 1,300 American workers, where shoes are manufactured; and (4) that (according to surveys conducted by its expert) consumers were not, in fact, deceived by the "Made in USA" claims at issue in the case. In short, there are real risks that Plaintiffs would have been unable to certify a class, leaving the class with nothing.

When the risks of litigation, the uncertainties involved in achieving class certification, the burdens of proof necessary to establish liability, and the probability of appeal of a favorable judgment are balanced against the merits of Plaintiffs' claims, it

1   is clear that the settlement amount is fair, adequate, and reasonable and that there are
2   no deficiencies in the proposed settlement. Kim Decl., ¶ 13.

3       **C.     The Proposed Settlement Does Not Provide Preferential Treatment**
4              **to Plaintiffs or a Segment of the Class**

5       Under the third factor, the Court examines whether the proposed Settlement
6   provides preferential treatment to any class member. The Settlement Agreement
7   provides equal relief to all Class Members. Each Class Member shall be entitled to
8   recover a Claim Amount of up to $10 per purchase, for up to five purchases. This
9   amount is directly tied to the alleged damages calculated by Plaintiffs where the
10  average shoe costs approximately $90 and the price premium based on the "Made in
11  USA" representation is 10.1%. The allocation is appropriate. *See Vinh Nguyen v.*
12  *Radient Pharm. Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293, at *5
13  (C.D. Cal. May 6, 2014) ("[C]ourts recognize that an allocation formula need only
14  have a reasonable, rational basis, particularly if recommended by experienced and
15  competent counsel.").

16      The Settlement provides a service payment to Plaintiffs in an amount of up to
17  $5,000 each. This modest payment is for the extensive risk and services undertaken by
18  Plaintiffs, as well as the substantial benefit conferred on the Class as a result of their
19  efforts. Plaintiffs were actively involved in this litigation, including by participating in
20  many discussions with their Counsel, providing declarations, preparing and sitting for
21  deposition, assisting with other discovery, and being engaged in the settlement process.
22  Kim Decl., ¶ 14.

23      The Ninth Circuit has recognized that service awards to named Plaintiffs in a
24  class action are permissible and do not render a settlement unfair or unreasonable. *See*
25  *West Publishing Corp.*, 563 F. 3d at 958-69 (finding that the payment of a service
26  award is "fairly typical in class actions."); *In re Online DVD-Rental Antitrust Litig.*,
27  779 F.3d 934, 947-48 (9th Cir. 2015) (approving $5,000 incentive award and finding

28

that it was not unreasonably large or unfair); *Staton v. Boeing Co.*, 327 F.3d 938, 976-77 (9th Cir. 2003) ("We have … approved incentive awards of $5,000 each to the two class representatives of 5,400 potential class members in a settlement of $1.725 million.").

Further, the Court will ultimately determine whether Plaintiffs are entitled to the requested service awards, or a portion thereof, after reviewing Plaintiffs' motion for attorneys' fees and costs.

**D.    The Proposed Settlement Falls within the Range of Possible Approval**

Finally, the Court must consider whether the Settlement falls within the range of possible approval. "To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider Plaintiffs' expected recovery balanced against the value of the settlement offer." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009), *citing In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (internal quotations omitted).

Approximately one million purchases of qualified shoes have been made during the Class Period. Kim Decl., ¶ 15. The average shoe price is a little over $90. *Id.* Plaintiffs' economics expert, Colin Weir, calculated a 10.1% price premium based on the alleged "Made in USA" misrepresentation. Thus, after retaining an expert to analyze actual sales data for relevant sales in California during the Class Period, Class Counsel believes the maximum monetary benefit attainable for the Class, based on restitution, would be approximately $9,210,137 (multiplying the 10.1% price premium by the relevant sales data during the Class Period).

The $750,000 monetary component of the Settlement represents over 8% of the maximum damages recovery. *Id.* This represents an excellent recovery, and on its own, supports preliminary approval and final approval. *See, e.g., Hopson v. Hanesbrands*

16

*Inc.*, 2009 WL 928133, *8 (N.D. Cal. Apr. 3, 2009) ("The settlement … represents less than two percent of that amount," but "may be justifiable … given … significant defenses that increase the risks of litigation."); *In re Toys R Us–Del., Inc.– Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. at 453–54 (granting final approval of a settlement providing for payment reflecting 3% of possible recovery); *Reed v. 1–800 Contacts, Inc.*, No. 12-cv-02359 JM (BGS), 2014 WL 29011, *6 (S.D. Cal. Jan. 2, 2014) (granting final approval where settlement represented 1.7% of possible recovery); *In re LDK Solar Sec. Litig.*, No. C 07-5182 WHA, 2010 WL 3001384, *2 (N.D. Cal. July 29, 2010) (granting final approval where settlement was 5% of estimated damages).

   In addition, the Court must consider the substantial injunctive relief obtained through this Settlement. New Balance has calculated the approximate total monetary costs and expenditures associated with planning and printing materials containing the disclaimer in order to comply with all of the foregoing injunctive relief. *See* attached Declaration of Erin Michael, Exh. 6 to Exh. A ("Michael Decl."). Specifically, New Balance estimates that it will spend approximately $35,000 per year on the production of modified hangtags over the next five years; it will spend approximately $1.2M per year on the production of shoes boxes that include the agreed-upon disclosure over the next five years (which excludes the costs associated with the design of the boxes); and New Balance's in-house legal team will spend approximately 50 hours on the implementation of this training program over the next five years. In total, the monetary value of the injunctive relief is approximately $6,175,000, excluding the costs of the training and compliance program. Michael Decl., ¶¶ 6-14. When factoring in the monetary value of the injunctive relief provided pursuant to the settlement, the total monetary value of the Settlement is $6,925,000, which represents 75% percent of the *maximum* recovery if Plaintiffs were to prevail at trial.

Moreover, New Balance contests liability, as well as the propriety of certification, and it is prepared to vigorously oppose certification and to defend against Plaintiffs' claims if the action is not settled. Plaintiffs' motion for class certification is fully briefed, and there is a motion for judgment on the pleadings on file. These motions, if resolved in New Balance's favor, would essentially eviscerate all of Plaintiffs' claims and remedies, leaving the proposed Class with nothing. Although Plaintiffs dispute the merits of New Balance's motion for judgment on the pleadings, and believes this case is suitable for class certification, the risk that the Court would grant either or both motions is a factor that weighs heavily in favor of approving this settlement. *See*, *e.g.*, *Schaffer v. Litton Loan Servicing, LP*, No. CV 05-07673 MMM (JCx), 2012 WL 10274679, at *11 (C.D. Cal. Nov. 13, 2012) ("Estimates of a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)."). In sum, given the maximum potential damages and the substantial risks entailed by this case, the proposed settlement is reasonable.

## V.    THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

When presented with a proposed settlement, the Court must ascertain whether the proposed settlement class satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-22 (9th Cir. 1998). Here, the requirements of both Rule 23(a) and Rule 23(b)(3) are satisfied.[4]

### A.    The Requirements of Rule 23(a) Are Satisfied

Rule 23(a) enumerates four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. Fed. R. Civ. P. 23(a). Each of these requirements is met here.

---

[4] New Balance agrees not to oppose certification only for purposes of settlement only.

18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.    The Numerosity Requirement is Satisfied

A class must be so numerous that joinder of all members individually is "impracticable." Fed. R. Civ. P. 23(a)(1). Here, there are at least several hundred thousand Class Members. Kim Decl., ¶ 16. Thus, numerosity is satisfied. *See Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319-20 (9th Cir. 1982), *rev'd on other grounds*, 713 F.2d 503 (9th Cir. 1983).

### 2.    The Commonality Requirement is Satisfied

Rule 23(a)(2) only requires that there be at least one issue of law or fact common to the class. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (one question of fact or law is sufficient). To satisfy the commonality requirement, a class claim "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

The commonality requirement is satisfied here because all Class Members' claims arise under the same laws; all Class Members were exposed to the same alleged misrepresentations on the shoes themselves and all Class Members have been injured in the same manner. Thus, absent settlement, several issues of law and fact common to the entire Class can be resolved in one fell swoop: whether New Balance's "Made in USA" claims were false or misleading; whether these claims were material to consumers' purchasing decisions; and whether Plaintiffs and Class Members have suffered damages as a result of New Balance's conduct.

### 3.    The Typicality Requirement is Satisfied

Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality does not mean that the claims of the class representatives must be identical or substantially identical to those of absent class members." *Staton*, 327 F.3d at 957.

Rather, they only need to be "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020.

The typicality requirement is satisfied because Plaintiffs and Class Members uniformly purchased products from New Balance that were based on the same deceptive "Made in USA" representations on the shoes themselves. *See Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 479 (C.D. Cal. 2012) *reconsideration granted on other grounds*, CV 11-1067 CAS JCX, 2012 WL 2458118 (C.D. Cal. June 25, 2012) (finding typicality when "each named Plaintiffs testified that she would not have purchased Serum or would have paid less for Serum had she known it had flammable characteristics."). In short, Plaintiffs share an injury with the Class that "is not unique to" them and which occurred out of the same "course of [deceptive] conduct[.]" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). Thus, the typicality requirement is met.

### 4.     The Adequacy Requirement is Satisfied

A class representative must be able to "fairly and adequately" protect the interests of all members in the class. Fed. R. Civ. P. 23(a)(4). Adequacy is met where the class representatives: (1) have common, not antagonistic, interests with unnamed class members; and (2) will vigorously prosecute the interests of the class through qualified counsel. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997).

Here, Plaintiffs, the proposed class representatives, have the same types of interests and suffered the same types of injury as all other Class Members. In addition, Plaintiffs have already provided significant, valuable assistance in the investigation and prosecution of this matter, and helped to bring about the Settlement now before this Court. Kim Decl., ¶ 14. They are therefore "adequate" class representatives within the meaning of Rule 23(a)(4). Plaintiffs' counsel are also "adequate" because they have extensive experience in class action litigation, and have vigorously pursued these

claims throughout this litigation. Kim Decl., ¶¶ 9-11 & 18; Wand Decl., ¶¶ 3-7. Accordingly, the designated Plaintiffs should be appointed as Class Representatives and Plaintiffs' counsel should be appointed as Class Counsel.

**B.     The Requirements of Rule 23(b)(3) are Satisfied**

"To qualify for certification under [Rule 23(b)(3)], a class must satisfy two conditions in addition to the Rule 23(a) prerequisites: common questions must 'predominate over any questions affecting only individual members,' and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Hanlon*, 150 F.3d at 1022, *quoting* Fed. R. Civ. P. 23(b)(3)).

### 1.     Common Questions Predominate Over Individual Issues

Plaintiffs bring claims for violations of the California Made in USA statute, various California consumer protection statutes, and common law claims. The central and predominant question as to all of Plaintiffs' legal claims is whether New Balance's "Made in USA" advertising is deceptive, unlawful, and/or unfair. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (holding that "the primary evidence in a false advertising case is the advertising itself") (citation omitted). This determination is not made with regard to each class member, but under a single, objective, and common "reasonable consumer" standard. *Id.* at 938. "This objective test renders claims under the UCL, FAL, and CLRA ideal for class certification because they will not require the court to investigate class members' individual interaction with the product.'" *Tait v. BSH Home*, No. SA CV 10-0711 DOC (ANx), 2012 WL 6699247, at *12 (C.D. Cal. Dec. 20, 2012) (citations omitted).

### 2.     A Class is the Superior Method to Resolve this Controversy

A class action is superior to other methods of litigation where, as here, "classwide litigation of common issues will reduce litigation costs and promote greater efficiency" and "no realistic alternative [to classwide treatment] exists." *Valentino v.*

*Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-1235 (9th Cir. 1996). In considering whether a class action is superior, the Court must focus on whether "efficiency and economy" would be advanced by class treatment. *See Zinser v. Accufix Research Inst. Inc. Corp.*, 253 F.3d. 1180, 1190 (9th Cir. 2001). And when evaluating the propriety of certification of a settlement class, a court may properly consider that there will be no trial. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

Here, concentrating the adjudication of claims into a single proceeding is highly desirable because individual claims could only be brought by claimants unlikely to be able to afford to pursue them or who lack sufficient knowledge of their rights. Even if those individuals could bring separate lawsuits, having nearly identical lawsuits filed by hundreds if not thousands of individuals would be wasteful and inefficient. The high cost of litigating these cases would dwarf any potential recovery for the majority of consumers, most of whom would likely forgo vindicating their rights. *See Barbosa v. Cargill Meat Solutions Corp.*, No. 1:11-cv-00275-SKO, 2013 WL 3340939, at *11 (E.D. Cal. Jul. 2, 2013). Accordingly, certification is superior to any other method of resolution, as it will promote economy, expediency, and efficiency.

## VI.   THE PROPOSED CLASS NOTICE SHOULD BE APPROVED

Adequate notice is critical to court approval of a class settlement under Rule 23(e). *Hanlon*, 150 F.3d at 1025. The threshold requirement concerning the sufficiency of class notice is whether the means employed to distribute the notice is reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the class members' rights to opt out or object. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974). In the Ninth Circuit, notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill.,*

*L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004), *citing Mendoza v. United States*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

Here, the Class Notice provides Class Members with sufficient information to make an informed and intelligent decision about the Settlement. The Class Notice and Summary Notice are written in simple, straightforward language that, among other things, includes: (1) basic information about the lawsuit; (2) a description of the benefits provided by the settlement; (3) an explanation of how Class Members can obtain settlement benefits; (4) an explanation of how Class Members can exercise their right to request exclusion from or object to the settlement; (5) an explanation that any claims against New Balance that could have been litigated in this action will be released if the Class Member does not request exclusion from the settlement; (6) information regarding Class Counsel's request for fees and expenses, Plaintiffs' service award payments, and how Class Members may obtain a copy of the upcoming fee motion (which, like all pertinent settlement documents, will be posted to a settlement website); (7) the Final Approval hearing date; and (8) an explanation of eligibility for appearing at the Final Approval hearing. Accordingly, the Notice forms satisfy the content requirements of Rule 23(e).

The notice plan is also comprehensive and designed to reach 70% of the target audience. As described above, notice will be provided directly via email and U.S. mail for approximately 80,000 sales, which equate to roughly 56,000 Class Members. Michael Decl., ¶ 16; Finegan Decl., ¶ 16. Courts have recognized that email may be used as an effective means of class notice, especially where e-commerce is involved. *See, e.g., Tadepalli v. Uber Technologies, Inc.*, No. 15-cv-04348-MEJ, 2015 WL 9196054, *3, 12 (N.D. Cal. Dec. 17, 2015); *Farinella v. Paypal, Inc.*, 611 F. Supp. 2d 250, 257 n. 10 (E.D.N.Y. 2009); *Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 WL 4105971, *4 (N.D. Cal. Nov. 16, 2007). Notice via email, and U.S. mail if the email is bounced, constitutes the best practicable notice in light of the facts of this case

and based on the authority cited above. In addition, and as described in more detail above, the Settlement also provides for notice to the entire Class via the establishment of a settlement website, a toll-free number, internet publication on targeted websites, print publication in the Los Angeles Times, and a widespread press release.

In sum, the contents and dissemination of the proposed Class Notice constitute the best notice practicable under the circumstances and fully comply with the requirements of Rule 23 and due process. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) ("The notice must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.")(Internal citations and quotations omitted.)

## VII.  CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the class action settlement; (2) approve the Class Notice (Exh. 2 to Exh. A) and notice plan; (3) provisionally certify the Class described herein for settlement purposes only; (4) appoint Plaintiffs as representatives of the Class; (5) appoint the Wand Law Firm, P.C. and Schneider Wallace Cottrell Konecky & Wotkyns LLP as Class Counsel; (6) appoint Heffler as the Settlement Administrator; and (7) schedule a final fairness hearing.

DATED: April 23, 2018               SCHNEIDER WALLACE COTTRELL
                                    KONECKY WOTKYNS LLP


                                By: /s/ Jason H. Kim
                                    JASON H. KIM

                                    THE WAND LAW FIRM, P.C.
                                    Aubry Wand

                                    *Attorneys for Plaintiffs and the Putative Class*