# EXHIBIT A

THE WAND LAW FIRM
Aubry Wand (SBN 281207)
400 Corporate Pointe, Suite 300
Culver City, California 90230
Telephone: (310) 590-4503
Facsimile: (310) 590-4596
E-mail: awand@wandlawfirm.com

*Attorneys for Plaintiffs*

SCHNEIDER WALLACE COTTRELL
KONECKY & WOTKYNS LLP
Todd M. Schneider (SBN 158253)
Jason H. Kim (SBN 220279)
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
E-mail: tschneider@schneiderwallace.com
      jkim@schneiderwallace.com

FISH & RICHARDSON P.C.
R. David Hosp (Pro Hac Vice)
Sheryl Garko (Pro Hac Vice)
Mark S. Puzella (Pro Hac Vice)
Laura B. Najemy (Pro Hac Vice)
1 Marina Park Dr.
Boston, MA 02210
Telephone: (617) 542-5070
Facsimile: (617) 542-8906
E-mail: hosp@fr.com; garko@fr.com
      puzella@fr.com; najemy@fr.com

*Attorneys for Defendant*

FISH & RICHARDSON P.C.
Garrett K. Sakimae (SBN 288453)
12390 El Camino Real
San Diego, California 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099
E-mail: sakimae@fr.com

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

SHEILA DASHNAW, WILLIAM
MEIER, and SHERRYL JONES,
individually, and on behalf of all others
similarly situated,

     Plaintiffs,

     v.

NEW BALANCE ATHLETICS, INC.,
a corporation; and DOES 1 through 50,
inclusive,

     Defendants.

Case No. 3:17-cv-00159-L-JLB

**SETTLEMENT AGREEMENT**

Magistrate Judge: Hon. Jill L. Burkhardt

Judge: Hon. M. James Lorenz

IT IS HEREBY STIPULATED AND AGREED, by, between and among Plaintiffs Sheila Dashnaw, William Meier, and Sherryl Jones ("Plaintiffs"), and Defendant New Balance Athletics, Inc. ("New Balance"), with all terms as defined below, through their duly-authorized counsel, that the above-captioned action, *Sheila Dashnaw, et al. v. New Balance Athletics, Inc.*, Case Number 17-CV-00159-L-JLB (S.D. Cal.), and the matters raised therein, are settled, compromised, and dismissed on the merits with prejudice, on the terms and conditions set forth in this Settlement Agreement and the release set forth herein, subject to the approval of the Court.

## I. <u>INTRODUCTION</u>

A. There is a purported class action pending in the United States District Court for the Southern District of California against New Balance alleging that New Balance engaged in untrue and deceptive advertising with respect to certain shoes that New Balance labels as "Made in USA." This action is *Sheila Dashnaw, et al. v. New Balance Athletics, Inc.*, Case Number 17-CV-00159-L-JLB (S.D. Cal.) (the "Action"). The Amended Complaint filed in this action (ECF No. 16) alleges that New Balance's practice of labeling certain of its shoes "Made in USA" constitutes false and deceptive advertising, unfair trade practices, a violation of California's "Made in the USA" statute, breach of express warranty, and negligent misrepresentation.

B. Plaintiffs filed a Complaint in California state court on December 27, 2016 and New Balance removed the action to the United States District Court for the Southern District of California on January 26, 2017. Plaintiffs brought this Complaint on behalf of a purported class of California purchasers of New Balance shoes identified as "Made in USA" alleging claims against New Balance under California's False Advertising Law ("FAL") (Cal. Bus. & Prof. Code § 17500, et seq.), California's Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1750, et seq.), Cal. Bus. & Prof. Code § 17533.7, California's Unfair Competition law ("UCL") (Cal. Bus. & Prof. Code § 17204), and for breach of express warranty,

negligent misrepresentation, and unjust enrichment. Plaintiffs sought damages including individual restitution, restitutionary disgorgement, economic, monetary, actual, consequential, and compensatory damages, declaratory and injunctive relief, reasonable attorneys' fees and costs, statutory pre- and post-judgment interest, and any other relief that the Court may deem just and proper.

C. Plaintiffs filed the Action "on behalf of themselves and all others similarly situated" and defined the Class to include: "All persons located within the State of California who purchased any New Balance shoe model labeled or advertised as made in the United States at any time beginning four (4) years prior to the filing of this action on December 27, 2016 and ending at the time this action settles or proceeds to final judgment." *See* ECF No. 16.

D. New Balance filed an Answer to both the Complaint and Plaintiffs' Amended Complaint. *See* ECF Nos. 12, 25. In each of its Answers, New Balance expressly denied and continues to deny any and all wrongdoing alleged in this action, and neither admits nor concedes any actual or potential fault, wrongdoing, or liability in connection with any facts or claims that have been or could have been alleged against it in these actions.

E. Class Counsel (also referred to as "Plaintiffs' Counsel") have conducted an extensive and thorough examination, investigation, and evaluation of the relevant law, facts and allegations to assess the merits of the claims and potential claims to determine the strength of both defenses and liability sought in the Action.

F. New Balance produced to Plaintiffs, through Class Counsel, extensive discovery. Plaintiffs and Class Counsel have thoroughly reviewed the documents. In particular, New Balance produced voluminous documentation to Class Counsel regarding the "Made in USA" Shoes in the following categories: (i) sales and accounting records; (ii) images of products, packaging, labels, and New Balance's website; (iii) advertisements, marketing, media, and public relations; (iv)

-2-

manufacturing specifications; and (v) consumer helpdesk communications. In total, New Balance produced over 15,000 pages of documents.

G. On February 21, 2018, the Parties participated in a mediation with Eric Green in Boston, Massachusetts. Notwithstanding their disagreements, at the mediation the Parties reached an agreement in principle for the settlement of this matter, subject to obtaining the necessary approval from the Court.

H. Based upon their review, investigation, and evaluation of the facts and law relating to the matters alleged in the pleadings, Plaintiffs and Class Counsel, on behalf of the other members of the proposed Class, have agreed to settle the Action pursuant to the provisions of this Agreement, after considering, among other things: (1) the substantial benefits to Plaintiffs and the other Class Members under the terms of this Agreement; (2) the risks, costs and uncertainty of protracted litigation, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation; and (3) the desirability of consummating this Agreement promptly in order to provide effective relief to Plaintiffs and the other Class Members.

I. New Balance expressly denies any wrongdoing alleged in the pleadings and does not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims that have been or could have been alleged against it in the Action and/or any other actions. Even though New Balance expressly denies any wrongdoing, New Balance considers it desirable for this case to be settled and dismissed, because this Settlement will finally put Plaintiffs' claims and the underlying matters to rest and will avoid the substantial expense, burdens, and uncertainties associated with the continued litigation of these claims and cases.

## II. __DEFINITIONS__

A. As used in this Agreement and the attached exhibits (which are an integral part of this Agreement and are incorporated in their entirety by reference), the following terms have the following meanings, unless this Agreement specifically provides otherwise:

1. "Action" means *Sheila Dashnaw, et al. v. New Balance Athletics, Inc.*, Case No. 17-CV-00159-L-JLB (S.D. Cal.).

2. "Agreement" or "Settlement Agreement" means this Settlement Agreement and the exhibits attached hereto or incorporated herein, including any subsequent amendments and any exhibits to such amendments.

3. "Authorized Retailers" means retailers who are specifically authorized by New Balance to sell New Balance shoes and who purchase from New Balance at wholesale including, without limitation, New Balance U.S. Retailers, New Balance Stores, shopnewbalance.com, joesnewbalanceoutlet.com, New Balance Outlets and/or other third party retailers.

4. "Attorneys' Fees and Expenses" means such funds as may be awarded by the Court to Class Counsel from New Balance to compensate all Class Counsel for their fees and expenses in connection with the Actions and the Settlement, as described in Section VIII of this Agreement (below).

5. "Claim" means the claim of a Class Member or his or her representative submitted on a Claim Form as provided in this Agreement.

6. "Claimant" means a Class Member who has submitted a Claim.

7. "Claim Form" means the document, in substantially the same form as Exhibit 1 attached to this Agreement.

8. "Claim Period" means the time period in which Class Members must submit a Claim Form for review to the Class Action Settlement Administrator in order to be timely. The Claim Period shall also be the time period within which persons must submit requests for exclusion or file objections in order to be timely.

-4-

The Claim Period shall run for ninety (90) days from the date of the first dissemination of the Summary Settlement Notice.

9. "Claim Process" means that process for submitting Claims described in this Agreement.

10. "Class Action Settlement Administrator" means the third-party agent or administrator agreed to by the Parties and appointed by the Court. The Parties agree that Heffler Claims Group shall be retained to implement the claims and Settlement requirements of this Agreement, subject to the Court's approval.

11. "Class" means all persons who, during the Class Period, purchased any and all "Made in USA" Shoes from New Balance and/or its Authorized Retailers, in California. Excluded from the Class are: (a) New Balance's Board members or employees, including its attorneys; (b) any persons who purchased "Made in USA" shoes for purposes of resale; (c) distributors or re-sellers of the "Made in USA" Shoes; (d) the judge and magistrate judge presiding over the Action and their immediate families; (e) governmental entities; and (f) persons or entities who or which timely and properly exclude themselves from the Class as provided in this Agreement.

12. "Class Member" means a member of the Class.

13. "Class Counsel" means: Schneider Wallace Cottrell Konecky Wotkyns LLP and The Wand Law Firm, P.C.

14. "Class Notice" means a notice substantially in the form attached hereto as Exhibit 2.

15. "Class Period" means the period for December 27, 2012 up to the date the Court files a Preliminary Approval Order.

16. "Court" means the United States District Court for the Southern District of California.

17. "Escrow Agent" means Heffler Claims Group.

18. "Fairness Hearing" means the hearing at or after which the Court shall make a final decision whether to approve this Agreement as fair, reasonable, and adequate. The Parties shall request that the Court schedule the Fairness Hearing for a date that is at least one hundred and fifty-five (155) days after entry of Preliminary Approval Order.

19. "Final Order and Final Judgment" means the Court's order approving the Settlement and this Agreement, as described in Section IX.B of this Agreement, which is to be substantially in the forms attached hereto as Exhibits 3 and 4, respectively.

20. "Final Settlement Date" means the date on which the Final Order and Final Judgment approving this Agreement becomes final. For purposes of this Agreement:

a. If no appeal has been taken from the Final Order and Judgment, "Final Settlement Date" means the date on which the time to appeal therefrom has expired; or

b. If any appeal has been taken from the Final Order and Final Judgment, "Final Settlement Date" means the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing en banc, and petitions for certiorari or any other form of review, have been finally disposed of in a manner that affirms the Final Order and Judgment; or

c. If the Parties agree in writing, "Final Settlement Date" can occur on any other agreed date.

21. "'Made in USA' Shoes" means New Balance's shoes that were labeled and marketed as "Made in USA," and which contained a domestic value of 70% or greater, but less than 95%, and were purchased as new by Class Members during the Class Period. These shoes include: 601, M1140, M1290, M1300, M1400, M1540, M1700, M2040, M3040, M498, M574, M585, M587, M770, M990, M991, M995, M996, M997, M9975, M998, MK706, ML1300, ML1978, ML996, ML997,

MR1105, MR993, MW812, PM15, PM16, US574, US576, US990, US993, US998, W1140, W1290, W1400, W1540, W3040, W498, W587, W990, W998, WK706, WR993, and WW812.

22. "Notice Administrator" means the Court-appointed third-party agent or administrator agreed to by the Parties and appointed by the Court. The Parties agree that Heffler Claims Group shall be retained to implement the notice and related requirements of this Agreement.

23. "Parties" means Plaintiffs and New Balance, collectively, as each of those terms is defined in this Agreement.

24. "Plaintiffs" (also referred to as "Named Plaintiffs") means Sheila Dashnaw, William Meier, and Sherryl Jones.

25. "Plaintiffs' Counsel" means counsel for the Plaintiffs in the Action, who are: Jason H. Kim of Schneider Wallace Cottrell Konecky Wotkyns LLP and Aubry Wand of The Wand Law Firm, P.C.

26. "Preliminary Approval Order" means the order to be entered by the Court preliminarily approving the Settlement as outlined in Section IX.A. of this Agreement and should be substantially in the form attached hereto as Exhibit 5.

27. "New Balance" means New Balance Athletics, Inc.

28. "New Balance's Counsel" means Fish & Richardson P.C.

29. "Release" means the release and waiver set forth in Section VII of this Agreement and in the Final Order and Final Judgment.

30. "Released Parties" means New Balance, its past, present and future parents (including but not limited to New Balance, Inc., and any intermediary and/or ultimate parents), officers, directors, employees, stockholders, agents, attorneys, administrators, successors, suppliers, distributors, reorganized successors, spin-offs, assigns, holding companies, related companies, subsidiaries, affiliates, joint-ventures, partners, members, divisions, predecessors, as well as any Authorized Retailers of "Made in USA" Shoes.

B. Other capitalized terms used in this Agreement but not defined in this Section II shall have the meanings ascribed to them elsewhere in this Agreement.

C. The terms "he or she" and "his or her" include "it" or "its" where applicable.

## III. SETTLEMENT RELIEF

Settlement relief shall consist of two primary components: (1) a monetary component consisting of restitutionary payments to Class Members who submit valid Claims; and (2) an injunctive relief component through New Balance agrees to make certain changes to its business practices with respect to its "Made in USA" Shoes.

A. Relief Amount

1. The total Relief Amount shall be $750,000.  Within ten (10) days of the Preliminary Approval Order, New Balance shall deposit an amount estimated to be sufficient to cover the Administrative Costs in escrow to be held by the Class Action Settlement Administrator, which shall be the "Escrow Agent," such amount to total $200,000, which shall be used by the Escrow Agent to pay Administrative Costs. Within ten (10) days of the Final Settlement Date, New Balance shall deposit an additional amount of $550,000 to bring the total amount paid by New Balance to $750,000, which additional amount shall be held in escrow to be held by the Escrow Agent to pay approved claims to Class Members as well as any additional Administrative Costs.  Together, these amounts will be known as the "Escrowed Fund(s)".

2. The Escrowed Funds shall be non-reversionary and shall cover (a) payments to Class Members on a claims-made basis, (b) class representative service awards, and (c) Administrative Costs.  However, in the event that the Court does not approve the Settlement, any amount of the Escrowed Funds remaining in escrow at the time that Court makes such a decision shall be returned to New Balance as soon as practicable, and no later than five (5) days.

3. "Administrative Costs" shall include, (a) charges and invoices by the Class Action Settlement Administrator and Notice Administrator relating to this Settlement, (b) the costs and expenses associated with disseminating the notice, including but not limited to, the Class Notice and the Summary Settlement Notice, to the Class, (c) the costs and expenses associated with claims administration, and (d) the costs and expenses associated with the timely, valid, and approved Claims submitted by Class Members pursuant to the Claim Process.

B. Claim Form Submission and Review

1. Class Members may submit a Claim through the Claim Process during the Claim Period and the Class Action Settlement Administrator shall review and process the Claims. As part of the Claim Process, Class Members shall be eligible for the relief provided in this Agreement, provided Class Members complete and timely submit the Claim Form, which shall be included with the Class Notice, to the Class Action Settlement Administrator within the Claim Period.

2. Class Members shall not initially be required to submit proof of purchase for a purchase of one pair of qualified "Made in USA" Shoes. Proof of purchase (*e.g.*, a receipt, a credit card record, or other substantial proof) shall be required for each additional purchase of qualified "Made in USA" Shoes claimed by each Class Member (*e.g.*, anywhere between two and five purchases).

3. As stated on the Claim Form, in order to be eligible to receive the Claim Amount, Class Members must attest, pursuant to 28 U.S.C. section 1746 under penalty of perjury, that the Class Member purchased one or more of the "Made in USA" Shoes in California during the Class Period. The Claim Form shall advise Class Members that the Class Action Settlement Administrator has the right to request verification of the purchase of "Made in USA" Shoes, including, but not limited to, receipt(s) or other documentation demonstrating purchase of any and all of the "Made in USA" Shoes during the Class Period, prior to issuing the Claim Amount to the Class Member. If the Class Member does not timely comply (*e.g.*,

-9-

within thirty-five (35) days of any request from the Class Action Settlement Administrator) and/or is unable to produce documents to substantiate and/or verify the information on the Claim Form and the Claim is otherwise not approved, the Claim shall be disqualified.

4. The Class Action Settlement Administrator has the right to audit any claims, and will use adequate and customary procedures and standards to prevent the payment of fraudulent claims and to pay only valid claims. Such procedures may include: (1) screening for duplicate claims or Settlement Class Members seeking more than the maximum cash payment permitted, and (2) reviewing Claims for evidence of waste, fraud, and abuse.

5. The Class Action Settlement Administrator shall employ reasonable procedures to screen Claims for waste, fraud, and abuse. The Class Action Settlement Administrator may request additional information necessary to validate Claims and/or reject a Claim Form where there is evidence of abuse or fraud. The Settlement Administrator may also reject a Claim Form that does not contain all requested information necessary to screen the claim for fraud or abuse. Finally, the Class Action Settlement Administrator's decision as to whether the Class Member submitted a Valid Claim shall be non-appealable, final, and binding upon the Parties and the Claimants

6. The Class Action Settlement Administrator shall provide periodic updates to Class Counsel and to New Balance and New Balance's counsel regarding Claim Form submissions beginning not later than one week after notice is disseminated and continuing on a weekly basis thereafter.

7. The Class Action Settlement Administrator shall begin to pay timely, valid, and approved Claims commencing fourteen (14) days after the close of the Claim Period so long as this period is after the Final Settlement Date, or sooner upon New Balance and Plaintiffs' Counsel's joint direction, but not before the issuance of the Court's Final Order and Final Judgment approving the Settlement. In

-10-

the event the Final Settlement Date falls after the close of the Claim Period, then the Class Action Settlement Administrator shall begin to pay timely, valid, and approved Claims commencing fourteen (14) days after the Final Settlement Date. The Class Action Settlement Administrator shall have completed the payment to Class Members who have submitted timely, valid and approved Claims pursuant to the Claim Process no later than one hundred twenty (120) days after either the Final Settlement Date or the close of the Claim Period, whichever is later.

8.      Subject to Section III.C.1., below, the relief to be provided to eligible Class Members for each pair of "Made in USA" Shoes purchased by an eligible Class Member, shall be an amount of $10.00 cash ("Claim Amount").  In the event a Class Member has purchased more than one pair of the "Made in USA" Shoes, that Class Member may submit one Claim for each pair of "Made in USA" Shoes purchased, up to five pairs of "Made in the USA" Shoes. Thus, the maximum Claim Amount each Class Member can recover is $50.00 cash. In addition, the maximum Claim Amount per "Household" (defined as all persons residing at the same physical address) shall be limited to 10 pairs or $100.

9.      The Claim Amount will be paid in the form of a check.

C. Adjustments and Remaining Funds

1.  If the total of the timely, valid and approved Claims submitted by Class Members exceeds the available monetary relief in the Escrowed Fund, minus any fees, payments, and costs set forth in this Agreement, each eligible Class Member's Claim Amount shall be reduced on a *pro rata* basis.

2.  If there are any funds remaining in the Escrowed Fund after all Claims have been paid or any un-cashed checks made payable to eligible Class Members ("Residual Funds"), the Class Action Settlement Administrator shall equally distribute the remaining Escrowed Funds and/or the Residual Funds to the following non-profit organization: United Service Organization, which provides the Heroes Make America Program, which is a career skills training program that arms

-11-

transitioning service members with the unique qualifications and industry-specific certifications necessary to secure rewarding jobs in the manufacturing industry (("USO" or "Cy Pres Recipient") and/or other nonprofit organization(s) or foundation(s) that are agreed upon by the Parties and approved by the Court. No remaining funds in the Escrowed Fund or Residual Funds will be returned to Defendant. Defendant represents and warrants that any payment of Residual Funds to any charities, non-profit organizations, or governmental entit(ies) shall not reduce any of its donations or contributions to any entity, charity, charitable foundation or trust, and / or non-profit organization.

3. Checks issued to Class Members shall remain negotiable for ninety (90) days from the date they are mailed.

4. Any payments to the Cy Pres Recipient, whether they be remaining funds in the Escrowed Fund or Residual Funds, shall be issued to the Cy Pres Recipient within one hundred and twenty (120) days of the Final Settlement Date.

D. <u>Injunctive Relief</u>

New Balance agrees to implement the following changes to its business practices:

1. Going forward, for all "Made in USA" Shoes produced after the Final Settlement Date, the hangtag affixed to the "Made in USA" Shoes which contain less than 95% U.S. content will no longer include the phrase "Made in the USA" on the front of the tag. On the back, in clear readable font, the hangtag will include the following sentence, or words to similar effect, "New Balance 'made' is a premium collection that contains domestic value of 70% or greater" (the "Made Notice") unless and until a change in either federal or California law obviates the need for such clarification. New Balance may make any and all stylistic changes to the hangtag it desires so long as such changes are in accordance with the principles set forth in this paragraph.

-12-

2. Going forward, for all "Made in USA" Shoes produced after the Final Settlement Date, shoe boxes for the "Made in USA" Shoes which contain less than 95% U.S. content will not include the phrase "Made in the USA" on the outside top panel of the box. New Balance may indicate that the shoes are made in the United States on the side(s) of the shoe box if, on the end and/or side of the shoe box, in clear readable font, it states the following sentence, or words to similar effect, "New Balance 'made' is a premium collection that contains domestic value of 70% or greater" unless and until a change in either federal or California law obviates the need for such clarification. New Balance may make any and all stylistic changes to the shoe box it desires so long as such changes are in accordance with the principles set forth in this paragraph.

3. New Balance will implement a compliance and training program for a period of five years from the Final Settlement Date, intended to ensure that moving forward any advertising – including print, television, social media in the United States – include the Made Notice any time the "Made in USA" representation is made with respect to "Made in USA" Shoes which contain less than 95% U.S. content.

4. New Balance will implement reasonable policies and practices intended to ensure that the modified hangtag is physically affixed to each display shoe in all California retail stores. New Balance further agrees to implement a compliance training program for employees of its flagship and factory stores in California.

5. New Balance sales and marketing associates who work on advertising for the "Made in USA" Shoes shall receive training at least twice during the five years following the effective date of the Settlement Agreement regarding California's false advertising laws conducted by an attorney. New Balance will also appoint an attorney responsible for ensuring compliance with the above and implement a compliance program for this same five-year period.

6. New Balance agrees that it will maintain its current policy with

respect to any "Made in USA" statements on its U.S. ecommerce website. Specifically, (1) all banners saying "Made in USA" or displaying a "Made in USA" Shoe where the "Made in USA" label is showing must have the Made Notice in legible size and font, (2) the "Made in USA" Shoe landing page (*i.e.*, where all of New Balance's "Made in USA" Shoes are listed), must have the Made Notice listed under the "Made in USA" heading, and (3) all individual product display pages containing a "Made in USA" Shoe must have the Made Notice listed in same size and font as, and in close proximity to, the rest of the product description. New Balance acknowledges that various aspects of its e-commerce website relating to "Made in USA" Shoes were changed after this litigation commenced.

7. New Balance has calculated the approximate total monetary costs and expenditures associated with planning and printing materials containing the Made Notice in order to comply with all of the foregoing injunctive relief. New Balance will disclose via a publicly filed declaration in the form of Exhibit 6 an estimated projection, in the aggregate, of a dollar amount of the estimated costs for compliant Made in USA packaging, hangtags and compliance training for the next five years in support of securing approval of this settlement and/or a fee award.

## IV.   <u>NOTICE TO THE CLASS</u>

A. <u>Duties of the Class Action Settlement Administrator and the Notice Administrator</u>

1. The Parties shall jointly recommend and retain Heffler Claims Group to be the Class Action Settlement Administrator and the Notice Administrator to help implement the terms of this Agreement. Following the Court's preliminary approval of this Agreement and the Court's appointment of the proposed Class Action Settlement Administrator and the proposed Notice Administrator, the Notice Administrator shall disseminate notice to the Class as provided for in the Affidavit of the Notice Administrator, substantially in the form attached as Exhibit 7 to this Agreement, as specified in the Preliminary Approval Order and in this Agreement,

-14-

and in order to comply with all applicable laws, including, but not limited to, the Due Process Clause of the Constitution.

2. The Notice Administrator shall be responsible for, without limitation: (a) e-mailing the Class Notice to all Class Members for which New Balance has e-mail addresses; (b) arranging for the publication of the Summary Settlement Notice in relevant and widely circulated publications in California; (c) handling returned e-mail not delivered to Class Members; (d) arranging for banner advertising to be displayed on highly trafficked websites and social media such as Facebook geo-targeted to California; (e) attempting to obtain updated e-mail address information for any Class Notice returned without a forwarding e-mail address sending notice via U.S. Mail to such Class Members for whom New Balance has such records; (f) responding to requests for Class Notice; (g) receiving and maintaining on behalf of the Court any Class Member correspondence regarding requests for exclusion and objections to the Settlement; (h) forwarding written inquiries to the Parties or their designee for a response, if warranted; (i) establishing a post office box for the receipt of any correspondence; (j) responding to requests from the Parties' Counsel; (k) establishing a web site and toll-free voice response unit with message and live operator capabilities to which Class Members may refer for information about the Actions and the Settlement; and (l) otherwise implementing and/or assisting with the dissemination of the notice of the Settlement as directed by the Court and/or the Parties. The Class Action Settlement Administrator shall be responsible for, without limitation, implementing the terms of the Claim Process and related administrative activities. The Notice Administrator and/or the Class Action Settlement Administrator shall coordinate their activities to minimize costs in effectuating the terms of this Agreement.

3. If the Class Action Settlement Administrator and/or the Notice Administrator make a material or fraudulent misrepresentation to, or conceal requested material information from the Parties, then the Party to whom the

misrepresentation is made shall, in addition to any other appropriate relief, have the right to demand that the Class Action Settlement Administrator and/or the Notice Administrator, as applicable, immediately be replaced. If the Class Action Settlement Administrator and/or the Notice Administrator fail to perform adequately on behalf of New Balance or the Class, the Parties may agree to remove the Class Action Settlement Administrator and/or the Notice Administrator. The other Party shall not unreasonably withhold consent to remove the Class Action Settlement Administrator and/or the Notice Administrator, but this shall occur only after New Balance and Class Counsel have attempted to resolve any disputes regarding the retention or dismissal of the Class Action Settlement Administrator and/or the Notice Administrator in good faith, and, if they are unable to do so, after the matter has been referred to the Court for resolution.

4. The Class Action Settlement Administrator and/or the Notice Administrator may retain one or more persons to assist in the completion of his or her responsibilities.

5. Not later than fifteen (15) days before the date of the Fairness Hearing, the Notice Administrator shall provide the Parties with a declaration that contains: (a) a list of those persons who have opted out or excluded themselves from the Settlement; (b) a list of the Class Members who have submitted valid and timely Claim Forms; and (c) the details outlining the scope, methods and results of the notice program.

6. The Notice Administrator shall promptly after receipt provide copies of any requests for exclusion, objections, and/or related correspondence to Class Counsel and New Balance's Counsel.

B. Class Notice

1. Dissemination of the E-Mailed Class Notice:

a. No later than one (1) business day after the entry of the

-16-

Preliminary Approval Order, New Balance shall provide the Notice Administrator with the e-mail address and mailing address of each reasonably identifiable Class Member, subject to the existence of such information and its current possession, if at all, by New Balance.

b. Beginning not later than five (5) business days after entry of the Preliminary Approval Order and to be substantially completed not later than ten (10) days after entry of the Preliminary Approval Order, and subject to the requirements of the Preliminary Approval Order and the Settlement Agreement, the Notice Administrator shall send the Class Notice by Electronic Mail ("E-Mail") to each reasonably identifiable Class Member's last known E-Mail address, and shall otherwise comply with Fed. R. Civ. P. 23 and any other applicable statute, law, or rule, including but not limited to, the Due Process Clause of the United States Constitution.

c. No later than twenty (20) days after entry of the Preliminary Approval Order, the Notice Administrator shall send the Summary Settlement Notice by First Class U.S. Mail, proper postage prepaid, to each Class Member whose E-mail address returned a message as undeliverable, subject to the existence of such information as provided by New Balance pursuant to Section IV.B.1.a of this Agreement.

d. No later than thirty-five (35) days after entry of the Preliminary Approval Order, the Notice Administrator shall: (i) re-mail any Summary Settlement Notices returned

by the United States Postal Service with a forwarding address that are received by the Notice Administrator; (ii) by itself or using one or more address research firms, as soon as practicable following receipt of any returned Summary Settlement Notices that do not include a forwarding address, research any such returned mail for better addresses and promptly mail copies of the Summary Settlement Notice to the better addresses so found.

2.  Content of the Class Notice: The Claim Form and the Class Notice shall be in a form substantially similar to the document attached to this Agreement as Exhibits 1 and 2, respectively, and shall advise Class Members of the following:

a.  General Terms: The Class Notice shall contain a plain and concise description of the nature of the Action, the history of the litigation of the claims, the preliminary certification of the Class, and the proposed Settlement, how the proposed Settlement would provide relief to the Class and Class Members, what claims are released under the proposed Settlement and other relevant terms and conditions.

b.  Opt-Out Rights: The Class Notice shall inform Class Members that they have the right to opt out of the Settlement.   The Class Notice shall provide the deadlines and procedures for exercising this right.

c.  Objection to Settlement: The Class Notice shall inform Class Members of their right to object to the proposed Settlement and appear at the Fairness Hearing. The Class Notice shall provide the deadlines and procedures for

-18-

exercising these rights.

    d.  Fees and Expenses: The Class Notice shall inform Class Members about the amounts being sought by Plaintiffs' Counsel as Attorneys' Fees and Expenses and individual service awards to the Plaintiffs, and shall explain that New Balance will pay the fees and expenses awarded to Plaintiffs' Counsel in addition to amounts being made available for relief to Class Members and without reducing such relief amounts.

    e.  Claim Form:  The Class Notice shall include the Claim Form, which shall inform the Class Member that he or she must fully complete and timely return the Claim Form within the Claim Period to be eligible to obtain relief pursuant to this Agreement.

    3.  The Summary Settlement Notice: The Notice Administrator shall publish the Summary Settlement Notice not later than five (5) business days after entry of the Preliminary Approval Order, and shall substantially complete it no later than sixty-five (65) days after entry of the Preliminary Approval Order as described in the Affidavit of the Notice Administrator, and in such additional newspapers, magazines, and/or other media outlets in California as shall be agreed upon by the Parties. The form of Summary Settlement Notice agreed upon by the Parties is in the form substantially similar to the one attached to the Agreement as Exhibit 8.

    4.  Internet Website:  Prior to the dissemination of the Class Notice pursuant to Section IV.B.1 to Section IV.C, the Notice Administrator shall establish an Internet website that will inform Class Members of the terms of this Agreement, their rights, dates and deadlines and related information. The website shall include, in .pdf format, materials agreed upon by the Parties and/or required by the Court. Additionally, geo-located Banner ads on the Internet and Social Media shall direct

-19-

Class Members to the website.

5. Toll-Free Telephone Number: Prior to the dissemination of the Class Notice pursuant to Section IV.B.1 to Section IV.C, the Notice Administrator shall establish a toll-free telephone number that will provide Settlement-related information to Class Members.

C. Duties of New Balance

Within ten (10) days of the filing of the Motion for Preliminary Approval, New Balance shall serve upon the appropriate State and Federal officials a notice of the proposed settlement in accordance with 28 U.S.C. § 1715(b), and shall otherwise comply with Fed. R. Civ. P. 23 and any other applicable statute, law, or rule.

V. **REQUESTS FOR EXCLUSION**

A. Any Class Member who wishes to be excluded from the Class must mail a written request for exclusion to the Notice Administrator at the address provided in the Class Notice, postmarked no later than the final day of the Claim Period, or as the Court otherwise may direct, and specifying that he or she wants to be excluded. The written request must contain the person's name, mailing address, and email address, and contain a clear statement that person wishes to exclude themselves from the Settlement. The Notice Administrator shall forward copies of any written requests for exclusion to Class Counsel and New Balance's Counsel. A list reflecting all requests for exclusion shall be filed with the Court by the Parties no later than ten (10) days before the Fairness Hearing.

B. Any potential Class Member who does not submit a timely written request for exclusion as provided in the preceding Section V.A shall be bound by all subsequent proceedings, orders, and judgments, including, but not limited to, the Release, in the Action, even if he or she has litigation pending or subsequently initiates litigation against New Balance relating to the claims and transactions released in the Action.

## VI.   OBJECTIONS TO SETTLEMENT

A. Any Class Member who has not submitted a timely written request for exclusion and who wishes to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement, or to the award of Attorneys' Fees and Expenses, or the individual awards to Plaintiffs, or any other aspect of the Settlement, must file with the Court no later than the final day of the Claim Period, and mail to the Notice Administrator at the address provided in the Class Notice, postmarked no later than the final day of the Claim Period, or as the Court otherwise may direct, a written statement of the objections, as well as the specific reason(s), if any, for each objection, including any legal support the Class Member wishes to bring to the Court's attention, any evidence or other information the Class Member wishes to introduce in support of the objections, a statement of whether the Class Member intends to appear and argue at the Fairness Hearing, and list the Class Member's purchase(s) of the "Made in USA" Shoes. Class Members may do so either on their own or through an attorney retained at their own expense. The objection must include proof of purchase for the "Made in USA" Shoes. Acceptable proof of purchase includes a cash register receipt, a credit card receipt or a credit card statement that sufficiently indicates the purchase of the "Made in USA" Shoes. The Parties shall request that the Court allow any interested party to file a reply to any objection, as described in this Section VI.A, no later than seven (7) days before the Fairness Hearing.

B. Any Class Member who files and serves a written objection, as described in the preceding Section VI.A, may appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense, to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement, or to the award of Attorneys' Fees and Expenses or awards to the individual Plaintiffs. Class Members or their attorneys who intend to make an appearance at the Fairness Hearing must deliver a notice of intention to appear to the

-21-

Notice Administrator, and file said notice with the Court, no later than the final day of the Claim Period, or as the Court may otherwise direct.

C. Any Class Member who fails to comply with the provisions of Sections VI.A and VI.B above shall waive and forfeit any and all rights he or she may have to appear separately and/or to object, and shall be bound by all the terms of this Agreement and by all proceedings, orders and judgments, including, but not limited to, the Release, in the Action.

D. Any Class Member who objects to the Settlement shall be entitled to all of the benefits of the Settlement if this Agreement and the terms contained therein are approved, as long as the objecting Class Member complies with all requirements of this Agreement applicable to Class Members, including the timely submission of Claim Forms and other requirements discussed herein.

## VII. <u>RELEASE AND WAIVER</u>

A. The Parties agree to the following release and waiver, which shall take effect upon entry of the Final Order and Final Judgment.

B. "Released Claims": In consideration for the Settlement benefits described in this Agreement, Plaintiffs and the other members of the Class, on behalf of themselves, their heirs, guardians, assigns, executors, administrators, predecessors, and/or successors, will fully, finally and forever release, relinquish, acquit, and discharge the Released Parties from – and shall not now or hereafter institute, maintain, or assert on their own behalf, on behalf of the Class or on behalf of any other person or entity – any and all manner of claims, actions, causes of action, suits, rights, debts, sums of money, payments, obligations, reckonings, contracts, agreements, executions, promises, damages, liens, judgments and demands of whatever kind, type or nature and whatsoever, both at law and in equity, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, or any other source, or any claim that Plaintiffs or Class Members ever had, now have, may have, or hereafter can, shall or may ever have against the

-22-

Released Parties in any other court, tribunal, arbitration panel, commission, agency, or before any governmental and/or administrative body, or any other adjudicatory body, on the basis of, connected with, arising from or relating to the claims alleged in the complaint in the Action during the Class Period, including, but not limited to, communications, disclosures, nondisclosures, representations, statements, claims, omissions, messaging, design, testing, marketing, advertising, promotion, packaging, displays, brochures, studies, manufacture, distribution, operation, performance, functionality, notification, providing, offering, dissemination, replacement, sale and/or resale by the Released Parties of the "Made in USA" Shoes; any claims for rescission, restitution or unjust enrichment for all damages of any kind; violations of any state's deceptive, unlawful and/or unfair business and/or trade practices, false, misleading or fraudulent advertising, consumer fraud and/or consumer protection statutes; any violation of the Uniform Commercial Code, any breaches of express, implied and/or any other warranties, any similar federal, state or local statutes, codes, damages, costs, expenses, extra- contractual damages, compensatory damages, exemplary damages, special damages, penalties, punitive damages and/or damage multipliers, disgorgement, declaratory relief, expenses, interest, and/or attorneys' fees and costs against the Released Parties pertaining to or relating to the claims alleged in the complaint in the Action, notwithstanding that Plaintiffs and the Class acknowledge that they may hereafter discover facts in addition to or different from those that they now know or believe to be true concerning the subject matter of the Action and/or the Release herein. Released Claims do not include any claims that cannot be released as a matter of law.

C. Plaintiffs represent and warrant that they are the sole and exclusive owner of all claims that they personally are releasing under this Agreement. Plaintiffs further acknowledge that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Action, including

-23-

without limitation, any claim for benefits, proceeds or value under the Action, and that Plaintiffs are not aware of anyone other than themselves claiming any interest, in whole or in part, in the Action or in any benefits, proceeds or values under the Action. Class Members submitting a Claim Form shall represent and warrant therein that they are the sole and exclusive owner of all claims that they personally are releasing under the Settlement and that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Action, including without limitation, any claim for benefits, proceeds or value under the Action, and that such Class Member(s) are not aware of anyone other than themselves claiming any interest, in whole or in part, in the Action or in any benefits, proceeds or values under the Action.

D. Without in any way limiting its scope, and, except to the extent otherwise specified in the Agreement, this Release covers by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, costs or any other fees, costs, and/or disbursements incurred by Plaintiffs' Counsel, or by Plaintiffs or the Class Members.

E. In addition to the Released Claims, the Named Plaintiffs only agree to a general release, which includes a release of any unknown claims that they did not know or suspect to exist in their favor at the time of the general release, which, if known, might have affected their Settlement with, and general release of, the Released Parties. With respect to the general release, the Named Plaintiffs only stipulate and agree that, upon the execution of this Agreement, and by operation of the Final Judgment, they shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the Civil Code of the State of California, which provides that:

"a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the

-24-

release, which if known by him or her must have materially affected his or her settlement with the debtor."

Named Plaintiffs only hereby agree that the provisions of all such principles of law or similar federal or state laws, rights, rules, or legal principles are hereby knowingly and voluntarily waived, relinquished and released.

F. Nothing in this Release shall preclude any action to enforce the terms of the Agreement, including participation in any of the processes detailed therein.

G. Plaintiffs and Defendant hereby agree and acknowledge that the provisions of this Release together constitute an essential and material term of the Agreement and shall be included in any Final Order and Final Judgment entered by the Court.

## VIII. ATTORNEYS' FEES AND EXPENSES AND INDIVIDUAL PLAINTIFF AWARDS

A. Class Counsel will make and New Balance agrees not to oppose, an application for an award of Attorneys' Fees and Expenses in the Action that will not exceed $650,000 in fees and expenses incurred up to the submission of their expenses to the Court prior to the Fairness Hearing, which shall be the sole aggregate compensation paid by New Balance for all Class Counsel representing the Class. In addition to the payments set forth herein in Section III.A and New Balance's full and complete performance of any and all obligations, terms and conditions set forth in the Agreement, New Balance shall pay the Attorneys' Fees and Expenses awarded by the Court within ten (10) days after the occurrence of the Final Settlement Date.

B. Class Counsel, in their sole discretion, shall allocate and distribute this award of Attorneys' Fees and Expenses among all of the counsel who have acted on behalf of the Class, all of whom are the Class Counsel.

C. Class Counsel for Plaintiffs may petition the Court for class representative service awards of up to $5,000 per Plaintiff. The purpose of such awards shall be to compensate the Plaintiffs for efforts and risks taken by them on

-25-

behalf of the Class. Any class representative service awards made by the Court shall be paid out of the Escrowed Fund, as instructed by Class Counsel, within ten (10) days after the occurrence of the Final Settlement Date.

D. New Balance shall not be liable for or obligated to pay any fees, expenses, costs, or disbursements to, or incur any expense on behalf of, any person or entity, either directly or indirectly, in connection with the Actions or this Settlement Agreement, other than the amount or amounts expressly provided for in this Settlement Agreement.

E. New Balance will pay its own attorneys' fees and costs incurred in this Action.

## IX. PRELIMINARY APPROVAL ORDER, FINAL ORDER, FINAL JUDGMENT AND RELATED ORDERS

A. The Parties shall seek from the Court a Preliminary Approval Order in a form substantially similar to Exhibit 5. The Preliminary Approval Order shall, among other things:

1. Certify the Class, approve Plaintiffs Sheila Dashnaw, William Meier, and Sherryl Jones as Class Representatives and appoint Plaintiffs' Counsel as counsel for the class, pursuant to Fed. R. Civ. P. 23;

2. Preliminarily approve the Settlement;

3. Require the dissemination of the Notice and the taking of all necessary and appropriate steps to accomplish this task;

4. Determine that the notice complies with all legal requirements, including, but not limited to, the Due Process Clause of the United States Constitution;

5. Schedule a date and time for a Fairness Hearing to determine whether the Preliminary Approval Order should be finally approved by the Court;

6. Require Class Members who wish to exclude themselves to submit an appropriate and timely written request for exclusion as directed in the Agreement and Class Notice and that a failure to do so shall bind those Class Members

-26-

who remain in the Class;

7. Require Class Members who wish to object to the Agreement to submit an appropriate and timely written statement as directed in the Agreement and Class Notice;

8. Require Class Members who wish to appear to object to the Agreement to submit an appropriate and timely written statement as directed in the Agreement and Class Notice;

9. Require attorneys representing individual Class Members, at their own expense, to file a notice of appearance as directed in the Agreement and Class Notice;

10. Appoint the Class Action Settlement Administrator and/or the Notice Administrator;

11. Authorize New Balance to take all necessary and appropriate steps to establish the means necessary to implement the Agreement;

12. Issue an order requiring execution of a Confidentiality Agreement in the form attached hereto as Exhibit 9, governing Class Members or their counsel who file a motion for access to discovery, in the event that such motion is granted; and

13. Issue other related orders to effectuate the preliminary approval of the Agreement.

B. After the Fairness Hearing, the Parties shall seek to obtain from the Court a Final Order and Final Judgment in the forms substantially similar to Exhibits 3 and 4, respectively. The Final Order and Final Judgment shall, among other things:

1. Find that the Court has personal jurisdiction over all Class Members, the Court has subject matter jurisdiction over the claims asserted in the Amended Complaint and/or Action, and that venue is proper.

2. Finally approve the Agreement and Settlement, pursuant to Fed. R. Civ. P. 23;

-27-

3.    Finally certify the Class for settlement purposes only;

4.    Find that the notice and the notice dissemination methodology complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution;

5.    Dismiss the Action with prejudice;

6.    Incorporate the Release set forth in the Agreement and make the Release effective as of the date of the Final Order and Final Judgment;

7.    Authorize the Parties to implement the terms of the Agreement;

8.    Retain jurisdiction relating to the administration, consummation, enforcement, and interpretation of the Agreement, the Final Order and Final Judgment, and for any other necessary purpose; and

9.    Issue related Orders to effectuate the final approval of the Agreement and its implementation.

C. If necessary, within ten (10) days following the Final Settlement Date, Plaintiffs shall file a stipulation of dismissal with prejudice in the Action, in the form attached hereto as Exhibit 10.

## X.    MODIFICATION OR TERMINATION OF THIS AGREEMENT

A.    The terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however that, after entry of the Final Order and Final Judgment, the Parties may by written agreement effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Class or approval by the Court if such changes are consistent with the Court's Final Order and Final Judgment and do not limit the rights of Class Members under this Agreement.

B.    This Agreement shall terminate at the discretion of either New Balance or the Plaintiffs, through Class Counsel, if: (1) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Agreement or the

proposed Settlement that the terminating party in its (or their) sole judgment and discretion reasonably determine(s) is material, including, without limitation, the terms of relief, the findings, or conclusions of the Court, the provisions relating to notice, the definition of the Class, and/or the terms of the Release; or (2) the Court, or any appellate court(s), does not enter or completely affirm, or alters or expands, any portion of the Final Order and Judgment, or any of the Court's findings of fact or conclusions of law, that the terminating party in its (or their) sole judgment and discretion reasonably determine(s) is material. The terminating party must exercise the option to withdraw from and terminate this Agreement, as provided in this Section X, by a signed writing served on the other Parties no later than 20 days after receiving notice of the event prompting the termination. The Parties will be returned to their positions status quo ante.

C. If an option to withdraw from and terminate this Agreement arises under Section X.B above, neither New Balance nor Plaintiffs are required for any reason or under any circumstance to exercise that option and any exercise of that option shall be in good faith.

D. If this Agreement is terminated pursuant to Section X.B, above, then:

1. This Agreement shall be null and void and shall have no force or effect, and no Party to this Agreement shall be bound by any of its terms, except for the terms of Sections X.D herein;

2. The Parties will petition to have any stay orders entered pursuant to this Agreement lifted;

3. All of its provisions, and all negotiations, statements, and proceedings relating to it shall be without prejudice to the rights of New Balance, Plaintiffs or any Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Agreement, except that the Parties shall cooperate in requesting that the Court set a new scheduling order such that neither Party's substantive or procedural rights is prejudiced by the

-29-

attempted Settlement;

        4.   Released Parties, as defined in Section II, above, including, without limitation, New Balance, expressly and affirmatively reserve all defenses, arguments, and motions as to all claims that have been or might later be asserted in the Actions, including, without limitation, the argument that the Actions may not be litigated as a class action;

        5.   Plaintiffs and all other Class Members, on behalf of themselves and their heirs, assigns, executors, administrators, predecessors, and successors, expressly and affirmatively reserve and do not waive all motions as to, and arguments in support of, all claims, causes of actions or remedies that have been or might later be asserted in the Actions including, without limitation, any argument concerning class certification, consumer fraud, and treble or other damages;

        6.  Neither this Agreement, the fact of its having been made, nor the negotiations leading to it, nor any discovery or action taken by a Party or Class Member pursuant to this Agreement shall be admissible or entered into evidence for any purpose whatsoever;

        7.   Any Settlement-related order(s) or judgment(s) entered in this Action after the date of execution of this Agreement shall be deemed vacated and shall be without any force or effect;

        8.   All costs incurred in connection with the Settlement, including, but not limited to, notice, publication, and customer communications, will be paid from the Escrowed Funds. Neither Plaintiffs nor Class Counsel shall be responsible for any of these costs or other Settlement-related costs.  After all such costs are paid, any remaining Escrowed Funds shall be returned to New Balance as soon as practicable;

        9.   Any attorneys' fees and expenses previously paid to Plaintiffs' Counsel shall be returned to New Balance; and

        10.  Notwithstanding the terms of this paragraph, if Settlement is not

-30-

consummated, Plaintiffs' Counsel may include any time spent in Settlement efforts as part of any statutory fee petition filed at the conclusion of the case, and New Balance reserves the right to object to the reasonableness of such requested fees.

## XI. GENERAL MATTERS AND RESERVATIONS

A. The obligations of the Parties to conclude the proposed Settlement is and shall be contingent on the following:

1. Entry by the Court of the Final Order and Final Judgment approving the Settlement, from which the time to appeal has expired or which has remained unmodified after any appeal(s); and

2. New Balance's payments as set forth in Section III.A. and Section VIII.A. of this Settlement Agreement, and New Balance's full and complete performance of any and all obligations, terms and conditions set forth in the Agreement.

B. The Parties and their counsel agree to keep the existence and contents of this Agreement confidential until the date on which the Motion for Preliminary Approval is filed; *provided, however*, that this section shall not prevent New Balance from disclosing such information, prior to the date on which the Motion for Preliminary Approval is filed, to state and federal agencies, independent accountants, actuaries, advisors, financial analysts, insurers or attorneys, nor shall it prevent the Parties and their counsel from disclosing such information to persons or entities (such as experts, courts, co-counsel, and/or administrators) to whom the Parties agree disclosure must be made in order to effectuate the terms and conditions of this Agreement.

C. The Parties and their Counsel agree to release a joint statement in the form attached hereto as Exhibit 11, upon Plaintiffs' filing of the Motion for Preliminary Approval of Settlement. The Parties and their counsel further agree that any additional public statements regarding this Settlement shall be agreed upon by both Parties prior to any release of such statement.

D.  Plaintiffs and Class Counsel agree that the confidential information made available to them solely through the settlement process was made available, as agreed to, on the condition that neither Plaintiffs nor their counsel may disclose it to third parties (other than experts or consultants retained by Plaintiffs in connection with this case); that it not be the subject of public comment; that it not be used by Plaintiffs or Plaintiffs' Counsel in any way in this litigation should the Settlement not be achieved, and that it is to be returned if a Settlement is not concluded; *provided, however*, that nothing contained herein shall prohibit Plaintiffs from seeking such information through formal discovery if not previously requested through formal discovery or from referring to the existence of such information in connection with the Settlement of this litigation.

E.  All information marked as "Attorneys' Eyes Only" or "Confidential" provided by New Balance to Plaintiffs, Plaintiffs' Counsel, or any individual Class Member, counsel for any individual Class Member and/or administrators, pursuant to the implementation of this Agreement or by Court Order, constitutes trade secrets and highly confidential and proprietary business information and shall be deemed "Attorneys' Eyes Only" or "Confidential" pursuant to the protective orders that have been or will be entered in the Actions, and shall be subject to all of the provisions thereof. Any materials inadvertently produced shall, upon New Balance's request, be promptly returned to New Balance's Counsel, and there shall be no implied or express waiver of any privileges, rights, and defenses.

F.  Within ninety (90) days after the Final Settlement Date (unless the time is extended by agreement of the Parties), Plaintiffs' Counsel, and any expert or other consultant employed by them in such capacity or any other individual with access to documents provided by New Balance to Plaintiffs' Counsel shall either: (i) return to New Balance's Counsel, all such documents and materials (and all copies of such documents in whatever form made or maintained) produced by New Balance in the Actions and any and all handwritten notes summarizing, describing

-32-

or referring to such documents; or (ii) certify to New Balance's Counsel that all such documents and materials (and all copies of such documents in whatever form made or maintained) produced by New Balance in the Actions and any and all handwritten notes summarizing, describing or referring to such documents have been destroyed; provided, however, that this section shall not apply to any documents made part of the record in connection with a Claim, nor to any documents made part of a Court filing, nor to Plaintiffs' Counsel's work product. New Balance's Counsel agrees to hold all documents returned by Plaintiffs' Counsel, and any expert or other consultant or any other individual employed by Plaintiffs' Counsel in such capacity with access to documents provided by New Balance, until six months after the distribution of the Escrowed Funds to Class Members who submitted acceptable Claim Forms. Six months after the distribution of the Escrowed Funds to Class Members who submitted acceptable Claim Forms, the Class Action Settlement Administrator shall return all documents and materials to New Balance and/or Class Counsel that produced the documents and materials, except that it shall destroy any and all Claim Forms, including any and all information and/or documentation submitted by Class Members.

G.   New Balance's execution of this Agreement shall not be construed to release - and New Balance expressly does not intend to release - any claim New Balance may have or make against any insurer for any cost or expense incurred in connection with this Settlement, including, without limitation, for attorneys' fees and costs.

H.   Class Counsel represent that: (1) they are authorized by the Plaintiffs to enter into this Agreement on behalf of Plaintiffs, their respective present or past law firms and any other attorneys who have represented or who now represent Plaintiffs in these Actions with respect to the claims in these Actions; and (2) they are seeking to protect the interests of the Class.

I.  Plaintiffs represent and certify that: (1) they have agreed to serve as representatives of the Class proposed to be certified herein; (2) they are willing, able, and ready to perform all of the duties and obligations of representatives of the Class, including, but not limited to, being involved in discovery and fact finding; (3) they have read the substantive pleadings in the Actions, including the complaint and/or the Amended Complaints, or have had the contents of such pleadings described to them; (4) they are familiar with the results of the fact- finding undertaken by Class Counsel; (5) they have been kept apprised of settlement negotiations among the Parties, and have either read this Agreement, including the exhibits annexed hereto, or have received a detailed description of it from Class Counsel and they have agreed to its terms; (6) they have consulted with Class Counsel about the Actions and this Agreement and the obligations imposed on representatives of the Class; (7) they have authorized Class Counsel to execute this Agreement on their behalf; and (8) they shall remain and serve as representatives of the Class until the terms of this Agreement are effectuated, this Agreement is terminated in accordance with its terms, or the Court at any time determines that said Plaintiff(s) cannot represent the Class.

J.  New Balance represents and warrants that the individual(s) executing this Agreement is authorized to enter into this Agreement on behalf of New Balance.

K.  This Agreement, complete with its exhibits, sets forth the sole and entire agreement among the Parties with respect to its subject matter, and it may not be altered, amended, or modified except by written instrument executed by Class Counsel and New Balance's Counsel on behalf of New Balance. The Parties expressly acknowledge that no other agreements, arrangements, or understandings not expressed in this Agreement exist among or between them and that in deciding to enter into this Agreement, they rely solely upon their judgment and knowledge. This Agreement supersedes any prior agreements, understandings, or undertakings

-34-

(written or oral) by and between the Parties regarding the subject matter of this Agreement.

L. This Agreement and any amendments thereto shall be governed by and interpreted according to the law of the State of California, notwithstanding its conflict of laws provisions.

M. Any disagreement and/or action to enforce this Agreement shall be commenced and maintained only in the Court in which the Action is pending.

N. Whenever this Agreement requires or contemplates that one of the Parties shall or may give notice to the other, notice shall be provided by e-mail and/or next-day (excluding Saturdays, Sundays, and Federal Holidays) express delivery service as follows:

1. If to New Balance, then to:

R. David Hosp
FISH & RICHARDSON P.C.
1 Marina Park Drive
Boston, Massachusetts 02210
Tel.: 617.542.5070
Fax: 617.542.8906
E-Mail: hosp@fr.com

and

Erin Michael
New Balance Athletics, Inc.
100 Guest Street
Boston, Massachusetts 02135
Tel.: 617.779.7408
E-Mail: erin.michael@newbalance.com

With a copy to:

General Counsel
New Balance Athletics, Inc.
100 Guest Street
Boston, Massachusetts 02135
Fax: 617.787.9355

2. If to Plaintiffs, then to:

        Jason H. Kim
        SCHNEIDER WALLACE COTTRELL
        KONECKY & WOTKYNS LLP
        2000 Powell Street, Suite 1400
        Emeryville, California 94608
        Telephone: (415) 421-7100
        Facsimile: (415) 421-7105
        E-Mail: jkim@schneiderwallace.com

and

        Aubry Wand
        THE WAND LAW FIRM
        400 Corporate Pointe, Suite 300
        Culver City, California 90230
        Telephone: (310) 590-4503
        Facsimile: (310) 590-4596
        E-Mail: awand@wandlawfirm.com

O. All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided. In computing any period of time prescribed or allowed by this Agreement or by order of the Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a Federal Holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days. As used in this section "Federal Holiday" includes New Year's Day, Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Patriot's Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President or the Congress of the United States.

P. The Parties reserve the right, subject to the Court's approval, to agree

-36-

to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

Q. The Class, Plaintiffs, Class Counsel, New Balance and/or New Balance's Counsel shall not be deemed to be the drafter of this Agreement or of any particular provision, nor shall they argue that any particular provision should be construed against its drafter or otherwise resort to the *contra proferentem* canon of construction. All Parties agree that this Agreement was drafted by counsel for the Parties during extensive arm's length negotiations. No parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which this Agreement was made or executed.

R. The Parties expressly acknowledge and agree that this Agreement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, and correspondence, constitute an offer of compromise and a compromise within the meaning of Federal Rule of Evidence 408 and any equivalent rule of evidence in any state. In no event shall this Agreement, any of its provisions or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Actions, any other action, or in any judicial, administrative, regulatory or other proceeding, except in a proceeding to enforce this Agreement or the rights of the Parties or their counsel. Without limiting the foregoing, neither this Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, the Released Parties, Plaintiffs, or the Class or as a waiver by the Released Parties, Plaintiffs or the Class of any applicable privileges, claims or defenses.

S. Plaintiffs expressly affirm that the allegations contained in the

Amended Complaints were made in good faith and have a basis in fact, but consider it desirable for the Actions to be settled and dismissed because of the substantial benefits that the proposed Settlement will provide to Class Members.

T. The Parties, their successors and assigns, and their counsel undertake to implement the terms of this Agreement in good faith, and to use good faith in resolving any disputes that may arise in the implementation of the terms of this Agreement.

U. The waiver by one Party of any breach of this Agreement by another Party shall not be deemed a waiver of any prior or subsequent breach of this Agreement.

V. If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

W. The Parties, their successors and assigns, and their counsel agree to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to use their best efforts to effect the prompt consummation of this Agreement and the proposed Settlement.

X. This Agreement may be signed with a facsimile signature and in counterparts, each of which shall constitute a duplicate original.

APPROVED AND AGREED TO BY THE PLAINTIFFS IN THEIR INDIVIDUAL
CAPACITIES

By: _Sheila Dashnaw_      Date: _4/22/18_

    SHEILA DASHNAW

By: _William Meier_      Date: _4/22/18_

    WILLIAM MEIER

By: _____      Date: _4/21/18_

    SHERRYL JONES

APPROVED AND AGREED TO·BY CLASS COUNSEL

By: _____      Date: _4/22/10_

    Jason H. Kim

    Schneider Wallace Cottrell Konecky
    & Wotkyns LLP

By: _____      Date: _4/21/228_

    Aubry Wand

    The Wand Law Firm, P.C.

-39-

APPROVED AND AGREED TO BY NEW BALANCE ATHLETICS, INC.

By: ~~Paul R Newton~~        Date: _APRIL 23, 2018_

APPROVED AND AGREED TO BY COUNSEL FOR NEW BALANCE
ATHLETICS, INC..

By: _____        Date: _____

    R. David Hosp, Fish & Richardson P.C.

-40-

APPROVED AND AGREED TO BY NEW BALANCE ATHLETICS, INC.

By: _____          Date: _____


APPROVED AND AGREED TO BY COUNSEL FOR NEW BALANCE

ATHLETICS, INC..

By: _____          Date: 4/23/18

     R. David Hosp, Fish & Richardson P.C.

# Exhibit 1

# New Balance Shoe Class Action Settlement

## Claim Form

Use this claim form only if you bought eligible New Balance "Made in USA" shoes in California from **December 27, 2012 to [DATE]**. The eligible New Balance shoes are listed below.

**All claim forms must be electronically submitted no later than [DATE] or postmarked no later than [DATE] to:**

New Balance Settlement
[ADDRESS]
[ADDRESS]
[ADDRESS]

| CLAIM INFORMATION |
|---|
| **CLASS MEMBER INFORMATION** |
| |
| Name: |
| |
| Mailing Address: |
| Number and Street |
| City: State: Zip Code: |
| Best Telephone Number: E-Mail Address: |

| PURCHASE INFORMATION – NEW BALANCE SHOES | | |
|---|---|---|
| **Eligible New Balance Shoe Models** | **Quantity Purchased** | **Location Purchased** |
| 601 | | |
| M1140 | | |
| M1290 | | |
| M1300 | | |
| M1400 | | |
| M1540 | | |
| M1700 | | |
| M2040 | | |
| M3040 | | |
| M498 | | |
| M574 | | |
| M585 | | |
| M587 | | |

| PURCHASE INFORMATION – NEW BALANCE SHOES | | |
|---|---|---|
| Eligible New Balance Shoe Models | Quantity Purchased | Location Purchased |
| M770 | | |
| M990 | | |
| M991 | | |
| M995 | | |
| M996 | | |
| M997 | | |
| M9975 | | |
| M998 | | |
| MK706 | | |
| ML1300 | | |
| ML1978 | | |
| ML996 | | |
| ML997 | | |
| MR1105 | | |
| MR993 | | |
| MW812 | | |
| PM15 | | |
| PM16 | | |
| US574 | | |
| US576 | | |
| US990 | | |
| US993 | | |
| US998 | | |
| W1140 | | |
| W1290 | | |
| W1400 | | |
| W1540 | | |
| W3040 | | |
| W498 | | |
| W587 | | |
| W990 | | |
| W998 | | |
| WK706 | | |
| WR993 | | |
| WW812 | | |

Payment amounts to eligible Class Members will vary depending upon the number and amounts claimed by all Class Members and other adjustments and deductions as specified in the Settlement Agreement. The amount could be up to $10 for each pair of Made in the USA shoes purchased. Eligible Class Members may submit a claim for up to five (5) pairs. If your claim is approved, the Claim Amount will be paid by check.

**Please note: Class Members shall not initially be required to submit proof of purchase for <u>one</u> pair of shoes; however, if a Class Member wishes to submit a claim for more than one pair of shoes (up to five total), proof of purchase will be required.**

**In order to provide valid proof of purchase, you must include with this Claim Form a copy of either a receipt, credit card transaction, or dated photograph of the shoes that shows the shoe model. If you are submitting a receipt or credit card transaction, please be sure to black out or remove any extra information you do not want the Class Action Settlement Administrator to see.**

**Additionally, the Class Action Settlement Administrator may, at its discretion, request proof of purchase to validate any claim. If the total amount of all claims submitted by all class members exceeds the total available relief, subject to any and all applicable deductions, the Class Action Settlement Administrator may request proof of purchase to validate your claim. If requested, you must provide proof of purchase or your claim will be reduced or denied and you may not appeal the reduction or denial.**

| AFFIRMATION |
|---|

I declare or affirm, under penalty of perjury, that the information in this claim form is true and correct to the best of my knowledge and that I purchased the applicable product(s) claimed above between December 27, 2012 and **[DATE].** I understand that the decision of the Class Action Settlement Administrator is final and binding. I understand that my claim form may be subject to audit, verification, and Court review.

Signature**:** _____ Date: _____

---

**Claim Forms must be electronically submitted no later than [DATE] or postmarked no later than [DATE].**

**Questions? Visit [<u>WEBSITE</u>] or call, toll-free, [NUMBER].**

# Exhibit 2

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA DASHNAW, WILLIAM MEIER, and SHERRYL JONES, individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>NEW BALANCE ATHLETICS, INC., a corporation; and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No. 3:17-cv-00159-L-JLB<br><br>**NOTICE OF CLASS ACTION, PROPOSED SETTLEMENT, AND FAIRNESS HEARING** |

*A Federal Court authorized this notice. This is not a solicitation from a lawyer.*

**YOU ARE <u>NOT</u> BEING SUED.**

**If you purchased any of the New Balance "Made in USA" labeled shoes listed below in California from December 27, 2012 up to and including [DATE], the proposed settlement of a class action lawsuit may affect your rights.**

- The settlement will provide $750,000 to pay claims from those who purchased New Balance "Made in USA" Shoes, in the State of California, at any time from December 27, 2012 to [DATE], as well as the costs of administering claims.
- To qualify, you must have purchased at least one pair of the New Balance "Made in USA" Shoes, listed on page 7 of this Notice.

Your legal rights may be affected whether you act or not. **Read this Notice carefully because it explains decisions you must make and actions you must take <u>now</u>.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | | |
|---|---|---|
| **DO NOTHING** | You get no payment. You give up your rights. | |
| **SUBMIT A CLAIM FORM** | This is the only way to get a payment. | The Claim Form, which is attached to this Notice, must be completed and electronically submitted not later than [DATE] or mailed **postmarked** no later than [DATE]. One Claim Form may be submitted identifying each pair of eligible shoes purchased. |
| **EXCLUDE YOURSELF** | You get no payment under the settlement. This is the only choice that will allow you to sue New Balance on your own about the claims discussed in this Notice. | An exclusion request must be in writing and mailed to the Settlement Administrator **postmarked** on or before [DATE]. |
| **OBJECT TO THE SETTLEMENT** | You can write to the Court about why you do not agree with any aspect of the settlement. | An objection must be in writing, filed with the Court, and mailed to the Settlement Administrator **postmarked** on or before [DATE]. |
| **GO TO A HEARING** | You can ask to speak to the Court about the "fairness" of the settlement, after you submit your objection. | If you wish to appear and speak to the Court, you must submit a Notice of Intention to Appear form, in writing, and file it with the Court on or before [DATE] in addition to submitting a timely objection. |

- These rights and options – **and the deadlines to exercise them** – are explained in this Notice.

- The Court still has to decide whether to approve the settlement. Payments will be distributed if the Court approves the settlement and after appeals, if any, are resolved in favor of the settlement. Please be patient.

- If you do not exclude yourself from the Class, the proposed settlement (if finally approved) will release certain claims, which are reprinted in full in Appendix A to this Notice, and will affect your right to start or continue any other lawsuit or proceeding involving "Made in USA" Shoes.

PART I.  WHY YOU HAVE RECEIVED THIS NOTICE ........................................................5

    1.  WHY DID I RECEIVE THIS NOTICE? ..............................................................5

    2.  WHAT IS THIS LAWSUIT ABOUT AND WHY DID IT SETTLE? ............................5

    3.  WHAT DOES THE SETTLEMENT PROVIDE? ......................................................6

PART II.  DESCRIPTION OF THE CLASS ....................................................................6

    4.  WHY IS THIS A "CLASS ACTION"? ..............................................................6

    5.  AM I A MEMBER OF THE CLASS? ................................................................6

    6.  ARE THERE EXCEPTIONS TO BEING INCLUDED? ...........................................7

    7.  WHAT ARE THE "MADE IN USA" SHOES? .....................................................7

    8.  I'M STILL NOT SURE IF I'M INCLUDED. ......................................................8

PART III.  DECISIONS YOU MUST MAKE NOW ...........................................................8

    9.  WHAT DO I NEED TO DO NOW? ................................................................8

    10.  WHAT DO I GIVE UP IF I CHOOSE TO STAY IN THE CLASS? .........................8

    11.  WHAT IF I DO NOTHING? ......................................................................9

PART IV.  SETTLEMENT BENEFITS – WHAT YOU CAN GET ............................................9

    12.  WHAT CAN I GET FROM THE SETTLEMENT? ...............................................9

    13.  HOW CAN I MAKE A CLAIM? .................................................................10

    14.  WHAT IS THE CLAIM PROCESS? .............................................................10

    15.  HOW MUCH IS THE CLAIM PROCESS WORTH TO THE CLASS? ....................11

    16.  WHAT HAPPENS AFTER ALL CLAIMS ARE PROCESSED AND THERE ARE

        FUNDS REMAINING? ..........................................................................11

    17.  WHEN WILL I GET MY PAYMENT, IF ANY? ...............................................12

PART V.  CAN I FILE A LATER LAWSUIT MAKING SIMILAR CLAIMS? ........................12

PART VI.  THE LAWYERS REPRESENTING THE CLASS ................................................13

    18.  DO I HAVE A LAWYER IN THIS CASE? .....................................................13

19. WILL THE LAWYERS AND CLASS REPRESENTATIVES IN THE ACTION BE PAID?........................................................................................14

PART VII. EXCLUDING YOURSELF FROM THE SETTLEMENT.........................................14

20. HOW DO I GET OUT OF OR EXCLUDE MYSELF FROM THE SETTLEMENT?..................................................................................14

21. WHAT HAPPENS IF I EXCLUDE MYSELF FROM THE CLASS?.......................15

22. IF I DON'T EXCLUDE MYSELF, CAN I SUE NEW BALANCE LATER?...........15

PART VIII. OBJECTING TO THE SETTLEMENT.................................................15

23. HOW CAN I OBJECT TO THE PROPOSED SETTLEMENT?.............................16

24. WHAT IS THE DIFFERENCE BETWEEN "OBJECTING" AND "EXCLUDING"?..................................................................................17

PART IX. THE COURT'S FAIRNESS HEARING...............................................17

25. WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?..................................................................17

26. DO I HAVE TO COME TO THE HEARING?....................................................18

27. MAY I SPEAK AT THE FAIRNESS HEARING?.............................................18

28. WHAT DO I HAVE TO DO TO SPEAK AT THE FAIRNESS HEARING?...........18

PART X. GETTING ADDITIONAL INFORMATION............................................18

Case No. 3:17-cv-00159-L-JLB

**1.        WHY DID I RECEIVE THIS NOTICE?**

You received this notice because you may be a Class Member able to receive payment from a proposed settlement of a class action. This lawsuit was brought on behalf of persons who purchased "Made in USA" Shoes (more fully described below) in California from New Balance Athletics, Inc. f/k/a New Balance Athletic Shoe, Inc. ("New Balance"), and/or its Authorized Retailers.

The Court approved this notice because you have a right to know about the proposed settlement, and about your rights and options, before the Court decides whether to approve the settlement. You will be informed of the progress of this settlement and may receive payment if you are a Class Member and submit a completed and timely Claim Form.

This package explains: (1) this lawsuit, (2) the proposed settlement, (3) your legal rights, (4) what payments are available, (5) who is eligible for what payments under the settlement, (6) how to get a payment, and (7) other important information.  Information about the settlement is summarized below. The Settlement Agreement, available on the settlement website, gives greater detail on the rights and duties of the parties. If there is any conflict between this notice and the Settlement Agreement, the Settlement Agreement controls.

**2.        WHAT IS THIS LAWSUIT ABOUT AND WHY DID IT SETTLE?**

The lawsuit, *Sheila Dashnaw, et al. v. New Balance Athletics, Inc.*, Case Number 3:17-cv-00159-L-JLB (S.D. Cal) (the "Action"), concerns claims that New Balance violated certain California state laws and consumer protection statutes in connection with the marketing and sale of "Made in USA" Shoes since December 27, 2012. Plaintiffs claim that New Balance labelled certain shoes as "Made in the U.S.A." when the domestic content did not meet the amounts required under California statutes for such a claim. New Balance denies any and all claims of wrongdoing and does not admit any fault, wrongdoing or liability.

The plaintiffs in the Action, through their attorneys, thoroughly investigated the facts and law relating to the issues in the Action. The parties believe that the settlement is fair, reasonable, and adequate and will provide substantial benefit to the Class. The Court has not decided whether

the plaintiffs' claims or New Balance's defenses have any merit, and it will not do so if the proposed settlement is approved. The proposed settlement does not suggest that New Balance has or has not done anything wrong, or that the plaintiffs and the Class would or would not win their case if it were to go to trial.

**3.     WHAT DOES THE SETTLEMENT PROVIDE?**

The settlement provides that New Balance will create a fund of $750,000. This will be used to resolve all approved Claims submitted through the Claim Process. The fund is subject to certain terms, requirements, and deductions, as further described below in Question 16. New Balance is also agreeing to make certain disclosures and follow certain procedures in its marketing. Each of the three (3) named Class Representatives will be paid an amount not to exceed $5,000, as awarded by the Court, to be paid from the $750,000 fund. The notice and administration costs for this settlement, in an estimated amount of $200,000, will also be paid from the $750,000 fund. In addition to the $750,000 fund, New Balance has agreed to pay attorneys' fees and costs, separately, in a total amount not to exceed $650,000, as awarded by the Court.

## PART II.  DESCRIPTION OF THE CLASS

**4.     WHY IS THIS A "CLASS ACTION"?**

In a class action, one or more people, called Class Representatives (in this case, Sheila Dashnaw, William Meier, and Sherryl Jones), sue on behalf of themselves and other people who have similar claims. All these people are Plaintiffs and Class Members. The company they sue, in this case New Balance, is called the Defendant. One Court resolves the issues for all Class Members in a Class Action, except for those who exclude themselves from the Class. The Court in charge of this case is the United States District Court for the Southern District of California, located at the following address: 221 West Broadway, San Diego, California, 92101.

**5.     AM I A MEMBER OF THE CLASS?**

Except as noted below, the Class includes all persons who bought any and all "Made in USA" Shoes from New Balance and/or its Authorized Retailers in California from December 27, 2012 through [DATE].

**6.    ARE THERE EXCEPTIONS TO BEING INCLUDED?**

The Class does <u>not</u> include the following persons, entities, or claims:

- New Balance's board members or employees, including its attorneys;
- Persons who purchased the "Made in USA" Shoes primarily for purposes of resale;
- Distributors or re-sellers of "Made in USA" Shoes;
- The judge and magistrate judge and their immediate families presiding over the Action;
- Governmental entities; and
- Persons or entities who or which timely and properly exclude themselves from the Class as provided in the Settlement Agreement.

**7.    WHAT ARE THE "MADE IN USA" SHOES?**

"Made in USA" Shoes means the New Balance "Made in USA" shoes listed below:

| ELIGIBLE NEW BALANCE SHOE MODELS | |
|---|---|
| 601 | ML996 |
| M1140 | ML997 |
| M1290 | MR1105 |
| M1300 | MR993 |
| M1400 | MW812 |
| M1540 | PM15 |
| M1700 | PM16 |
| M2040 | US574 |
| M3040 | US576 |
| M498 | US990 |
| M574 | US993 |
| M585 | US998 |
| M587 | W1140 |
| M770 | W1290 |
| M990 | W1400 |
| M991 | W1540 |
| M995 | W3040 |
| M996 | W498 |
| M997 | W587 |
| M9975 | W990 |
| M998 | W998 |
| MK706 | WK706 |
| ML1300 | WR993 |

| **ELIGIBLE NEW BALANCE SHOE MODELS** | |
|---|---|
| ML1978 | WW812 |

### 8. I'M STILL NOT SURE IF I'M INCLUDED.

If you do not understand whether or not you are a Class Member, you can visit our web site, [WEBSITE], call [TOLL FREE NUMBER] or you can contact Class Counsel.

### PART III. DECISIONS YOU MUST MAKE NOW

### 9. WHAT DO I NEED TO DO **NOW**?

**FIRST**, you must decide whether you wish to remain in the Class or exclude yourself from the Class. If you want to be excluded from the Class, you must write to the Class Action Settlement Administrator as described below in Question 21 no later than [DATE].

**SECOND**, if you remain in the Class, you may object to any part of the proposed settlement by filing a written objection with the Court. You must also provide a copy to Class Counsel and New Balance's Counsel, as described in Question 24. The Court and the parties must receive your written objection no later than [DATE].

Additionally, if you file an objection, you may also request to appear and speak at the Court's Fairness Hearing. If you wish to appear and speak you must submit an objection and, also, file and serve a Notice of Intention to Appear at the Fairness Hearing, by [DATE]. See Question 29 for more information.

**THIRD**, if you remain a Class Member, you can submit a Claim Form, as described below. Claim Forms may be submitted online no later than [DATE] or mailed, postmarked no later than [DATE]. You may submit one Claim Form identifying each pair of eligible "Made in USA" Shoes purchased.

### 10. WHAT DO I GIVE UP IF I CHOOSE TO STAY IN THE CLASS?

If you choose to remain in the Class, you may submit a Claim Form and may receive payment under the settlement. You will be deemed to give New Balance and the Released Parties the Release and Waiver of Claims set forth in Appendix A. You will also be bound by all Court

8

actions and judgments entered. You will not be able to sue or otherwise proceed against New Balance on any claims related to this lawsuit.

### 11.     WHAT IF I DO NOTHING?

**If you are a Class Member and do nothing, you will <u>not</u> get any payment from the settlement, but will be bound by the settlement's release and waiver of claims.** You must complete and submit a Claim Form on or before the deadline, which is [DATE], in order to be considered for payment under the settlement.

Unless you exclude yourself from the Class, if the settlement is approved all of the Court's orders will apply to you and you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against New Balance about the claims in this lawsuit, ever again, regardless of whether you submit a Claim Form.

<div style="background:black;color:white;text-align:center;">

**PART IV.  SETTLEMENT BENEFITS – WHAT YOU CAN GET**

</div>

### 12.     WHAT CAN I GET FROM THE SETTLEMENT?

Your payment in this settlement depends upon the approval of your claim and the total sum of all approved Claims submitted by all other Class Members and other factors specified in the Settlement Agreement and in this Class Notice. As a result, the amount of relief available to eligible Class Members may vary.

If the total value of all approved Claims submitted by Class Members exceeds the amount of money available to pay claims (*i.e.*, $750,000 less any fees, costs, and payments specified in the Settlement Agreement), each eligible Class Member's award shall be reduced on a pro rata basis. In the event a Class Member purchased more than one pair of the "Made in USA" Shoes, that Class Member may submit one Claim for each eligible pair of "Made in USA" Shoes purchased, up to a maximum of five (5) pairs.

In addition, New Balance has agreed to make certain changes in their marketing and sale of "Made in USA" shoes to make the disclosures regarding the domestic content of its shoes more prominent. In particular, among other steps: (1) Going forward the hangtag that affixed to the "Made in USA" Shoes will no longer include the phrase "Made in the USA" on the front of the tag.  On the back, in clear readable font, the hangtag will include the following sentence, or words

9

to similar effect, "New Balance 'made' is a premium collection that contains domestic value of 70% or greater" unless and until a change in either federal or California law obviates the need for such clarification.  (2) Going forward shoe boxes for the "Made in USA" Shoes will not include the phrase "Made in the USA" on the outside top panel of the box.  New Balance may indicate that the shoes are made in the United States on the side(s) of the shoe box if, on the end and/or side of the shoe box, in clear readable font, it states the following sentence, or words to similar effect, "New Balance 'made' is a premium collection that contains domestic value of 70% or greater" unless and until a change in either federal or California law obviates the need for such clarification.  Please see the settlement agreement for further information.

**13.    HOW CAN I MAKE A CLAIM?**

To receive a payment under the settlement, you must send in a Claim Form. A Claim Form and directions are attached as Appendix B to this Class Notice. You may also obtain and print a Claim Form and other relevant documents by visiting [WEBSITE]. Please read the instructions and certification carefully, and fill out the form completely and accurately. Claim forms must be electronically submitted no later than [DATE] or mailed postmarked no later than [DATE] and addressed to:

<div align="center">

New Balance Settlement

[ADDRESS]

[ADDRESS]

[ADDRESS]

</div>

One Claim Form can be used for more than one pair of eligible shoes purchased.

**14.    WHAT IS THE CLAIM PROCESS?**

The Class Action Settlement Administrator will review each Claim Form. You may be requested to verify your purchase of "Made in USA" Shoes, by providing receipt(s) or other documentation. If you do not respond to these requests, it may result in the denial of your Claim. You will have thirty-five (35) days from the date of the Settlement Administrator's request to respond.

If a Claim is not contested, you will receive payment for that Claim in accordance with the terms of the Settlement Agreement. The Claim Amount will be paid in the form of a check. The Administrator may require proof of purchase to verify any claims, though proof of purchase will not be required in the first instance for claims limited to a single purchase. If the total Claims submitted by one person exceed $10.00, proof of purchase to validate the claims will be required. Finally, all usual and customary steps to prevent fraud and abuse in the Claim Process will be taken. This includes denying claims in whole or in part to prevent fraud or abuse. Class Counsel and New Balance will be provided a report on the denial of any claim due to insufficient documentation and may recommend additional action including payment.

The payment of approved Claims shall begin ten (10) days after the close of the Claim Period so long as this period is after the date the settlement is final and approved, including any appeals that must be resolved in favor of the settlement (the "Final Settlement Date"). Please see the Settlement Agreement and Question 17 for further information on how the Final Settlement Date is determined. The payment process shall be completed with approved Claims within one hundred twenty (120) days from its beginning.

### 15. HOW MUCH IS THE CLAIM PROCESS WORTH TO THE CLASS?

The settlement will provide a fund of $750,000 that will be used to pay (i) the costs and expenses associated with the notice and claims administration; (ii) incentive payments of up to $5,000 to each named plaintiff, as ordered by the court; and (iii) valid and approved Claims submitted by Class Members pursuant to the Claim Process. The fund will not be used to pay New Balance's attorneys' fees and costs or Class Counsels' attorneys' fees and costs.

### 16. WHAT HAPPENS AFTER ALL CLAIMS ARE PROCESSED AND THERE ARE FUNDS REMAINING?

If there are any funds remaining after all claims are processed, those funds shall be awarded *cy pres* and distributed to the following non-profit organizations: United Service Organization, which provides the Heroes Make America Program, which is a career skills training program that arms transitioning service members with the unique qualifications and industry-

specific certifications necessary to secure rewarding jobs in the manufacturing industry. No remaining funds will be returned to New Balance.

### 17.    WHEN WILL I GET MY PAYMENT, IF ANY?

The Court will hold a Fairness Hearing on [DATE] at [TIME] to decide whether or not to approve the proposed settlement. The Court must finally approve the proposed settlement before any payments can be made. The Court will grant its approval only if it finds that the proposed settlement is fair, reasonable, and adequate. In addition, the Court's order may be subject to appeals. It is always uncertain whether these appeals can be resolved, and resolving them takes time, sometimes more than a year. Finally, there remains a possibility that this settlement may be terminated for other reasons. Everyone who sends in a Claim Form will be informed of the progress of the settlement. Please be patient. **The payment of approved Claims will begin ten (10) days after the close of the Claim Period so long as this is after the Final Settlement Date. It may begin sooner if agreed to by Plaintiffs' Counsel and New Balance. In the event the Final Settlement Date falls after the close of the Claim Period, then payments of approved Claims will begin ten (10) days after the Final Settlement Date.**

**The Class Action Settlement Administrator shall have completed the payment to Class Members who have submitted timely, valid, and approved Claims, no later than one hundred and twenty (120) days after the Final Settlement Date or the close of the Claim Period, whichever is later.**

## PART V.   CAN I FILE A LATER LAWSUIT MAKING SIMILAR CLAIMS?

**No.  If you remain a member of the Class and the settlement is finally approved, you will be automatically prohibited from starting or continuing any lawsuit or other proceeding against New Balance if those claims have been (or could have been) asserted in this lawsuit.**

As part of this settlement, the Court has preliminary stopped all Class Members and/or their representatives (who do not timely exclude themselves from the Class) from filing, participating in, or continuing litigation as Class Members or otherwise against New Balance (or against any of its related parties or affiliates), and/or from receiving any benefits from any lawsuit,

administrative, or regulatory proceeding or order in any jurisdiction, based on or relating to the claims or causes of actions or the facts, and circumstances relating thereto, in the class action.

The Court has also preliminary stopped all persons from filing, beginning, or prosecuting a lawsuit against New Balance (or against any of its related parties or affiliates) as a class action, a separate class, or group for purposes of pursuing a putative class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) on behalf of Class Members who do not timely exclude themselves from the Class, based on or relating to the claims, facts, and/or circumstances of the class action.

Upon final approval of the settlement, Plaintiffs and New Balance will ask the Court to enter a permanent ruling forbidding all Class Members and/or their representatives and/or personnel from engaging in the activities described above. All Class Members will be bound by this order.

## PART VI. THE LAWYERS REPRESENTING THE CLASS

### 18. DO I HAVE A LAWYER IN THIS CASE?

The Court has designated attorneys Jason H. Kim of Schneider Wallace Cottrell Konecky Wotkyns LLP and Aubry Wand of The Wand Law Firm to represent you and the other Class Members in this lawsuit. The lawyers representing you and the Class Members are called "Class Counsel." You will not be charged for the services of the Class Counsel. No later than fourteen (14) days prior to the objection deadline (see Part VIII), Class Counsel shall submit a request to the Court for payment of attorneys' fees and costs not to exceed $650,000. Any fees and costs awarded by the Court will be paid by New Balance and will not reduce the settlement relief available to Class Members.

You may contact Class Counsel about this lawsuit at the following address:

The Wand Law Firm, P.C.
Aubry Wand
400 Corporate Pointe, Suite 300
Culver City, CA 90230
Telephone: (310) 590-4503

Schneider Wallace Cottrell Konecky & Wotkyns LLP
Jason H. Kim
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100

Email: newbalancesettlement@gmail.com

13

You have the right to retain your own lawyer to represent you in this case, but you are not obligated to do so. If you do hire your own lawyer, you will have to pay his or her fees and expenses. You also have the right to represent yourself before the Court without a lawyer.

**19.    WILL THE LAWYERS AND CLASS REPRESENTATIVES IN THE ACTION BE PAID?**

Class Counsel have prosecuted this case on a completely contingent fee and have not been paid anything to date for their services. Class Counsel will request attorneys' fees and expenses not to exceed $650,000 to be paid directly by New Balance and outside of the Settlement Fund.

Class Counsel will petition the Court for service awards of up to $5,000 for each of the named plaintiffs, Sheila Dashnaw, William Meier, and Sherryl Jones. The purpose of such awards is to compensate for efforts and risks taken by them on behalf of the Class. Any such amount awarded by the Court as a service award for the named plaintiffs will be paid out of the $750,000 fund.

## PART VII. EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want to keep the right to sue or continue to sue New Balance on your own about the legal issues in this case, then you must take steps to get out of the Class. This is called excluding yourself or "opting out" of the Class.

**20.    HOW DO I GET OUT OF OR EXCLUDE MYSELF FROM THE SETTLEMENT?**

If you want to be excluded from the Class, you must write to the Class Action Settlement Administrator. To exclude yourself from the settlement, you must send a letter by mail. Your exclusion request letter must be postmarked no later than [DATE]. Send your letter to:

<div align="center">

New Balance Settlement

[ADDRESS]

[ADDRESS]

[ADDRESS]

</div>

Your letter requesting exclusion does not need to be in any particular form, but it shall include the following information in order to be effective:

(1) your name;

(2) your address;

(3) your telephone number;

(4) the "Made in USA" Shoes for which you are requesting exclusion;

(5) a statement that you wish to be excluded from the Class;

(6) your signature; and

(7) the case name and case numbers: *Sheila Dashnaw, et al. v. New Balance Athletics, Inc.,* Case Number 3:17-cv-00159-L-JLB (S.D. Cal.)

Please write "EXCLUSION REQUEST" on the lower left-hand corner of the front of the envelope.

### 21. WHAT HAPPENS IF I EXCLUDE MYSELF FROM THE CLASS?

If you request exclusion from the Class, then for each of the excluded "Made in USA" Shoes:

- You will **not** be eligible for payment under the proposed settlement;
- You will **not** be allowed to object to the terms of the proposed settlement; and
- You will **not** be bound by any subsequent rulings entered in this case if the proposed settlement is finally approved.

**However, if your request for exclusion is <u>late or deficient</u>, you will still be a part of the Class, you will be bound by the settlement and all other orders and judgments in this lawsuit, and you will not be able to participate in any other lawsuits based on the claims in this case.**

### 22. IF I DON'T EXCLUDE MYSELF, CAN I SUE NEW BALANCE LATER?

**No.** If the Court approves the proposed settlement and you do not exclude yourself form the Class, you release (give up) all claims that have been or could have been asserted in this lawsuit relating to your "Made in USA" Shoes.

### PART VIII. OBJECTING TO THE SETTLEMENT

You have the right to tell the Court that you do not agree with the settlement or any or all of its terms.

**23. HOW CAN I OBJECT TO THE PROPOSED SETTLEMENT?**

If you choose to remain a Class Member, you have a right to object to any part of the proposed settlement. The Court will consider your views.

To object, you must send a letter to the Class Action Settlement Administrator saying you object to *Sheila Dashnaw, et al. v. New Balance Athletics, Inc.*, Case Number 3:17-cv-00159-L-JLB (S.D. Cal.). Your written objection must include:

      (1) your name;

      (2) your address;

      (3) your telephone number;

      (4) proof of purchase of "Made in USA" Shoes, such as a cash register receipt, a credit card receipt, or a credit card statement that sufficiently indicates the purchase of the "Made in USA" Shoes;

      (5) a written statement of your objection(s), including any legal support and/or supporting evidence you wish to introduce;

      (6) a statement of whether you intend to appear at the Fairness Hearing;

      (7) your signature; and

      (8) the case name and case numbers: *Sheila Dashnaw, et al. v. New Balance Athletics, Inc.*, Case Number 3:17-cv-00159-L-JLB (S.D. Cal.)

If you choose to object, in order to be considered by the Court, your written objection must be **filed with the Court, and copies must be <u>received</u> by all of the following recipients no later than [DATE]:**

| COURT | CLAIMS ADMINISTRATOR |
|---|---|
| Clerk of the Court<br>United States District Court<br>Southern District of California<br>Edward J. Schwartz U.S. Courthouse<br>221 West Broadway<br>San Diego, California 92101 | Heffler Claims Group<br>1515 Market Street<br>Suite 1700<br>Philadelphia, PA 19102 |

If you file objections, but the Court approves the settlement as proposed, you can still complete a Claim Form to be eligible for payment under the settlement, subject to the terms and conditions discussed in this Notice and in the Settlement Agreement.

**24.    WHAT IS THE DIFFERENCE BETWEEN "OBJECTING" AND "EXCLUDING"?**

Objecting is simply a way of telling the Court that you don't like something about the settlement. You can only object if you stay in the Class.

If you object to the settlement, you still remain a member of the Class and you will still be eligible to submit a Claim Form. You will also be bound by any subsequent rulings in this case and you will not be able to file or participate in any other lawsuit or proceeding based upon or relating to the claims, causes of action, facts, or circumstances of this case. Excluding yourself is telling the Court that you don't want to be a part of the Class. If you exclude yourself, you have no basis to object to the settlement and appear at the Fairness Hearing because it no longer affects you.

<div style="background-color:#404040;color:white;text-align:center;padding:4px;">

**PART IX.  THE COURT'S FAIRNESS HEARING**

</div>

The Court will hold a final hearing (called a Fairness Hearing) to decide whether to finally approve the settlement. You may attend and ask to speak, but you don't have to.

**25.    WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?**

On [DATE], at [TIME], the Court will hold a Fairness Hearing at the United States District Court for the Southern District of California, before the Honorable M. James Lorenz, in Courtroom 5B, Edward J. Schwartz U.S. Courthouse, 221 West Broadway, San Diego, California 92101.

At the hearing, the Court will consider whether to grant final certification to the Class for settlement purposes, whether to approve the proposed settlement as fair, reasonable, and adequate, and will make a final ruling on all related settlement issues. The Court will also decide whether to award attorneys' fees and costs, as well as Class Representatives awards.

**26. DO I HAVE TO COME TO THE HEARING?**

No. Class Counsel will answer questions the Court may have at the Fairness Hearing. But you are welcome to come at your own expense. Please note that the Court has the right to change the date and/or time of the Fairness Hearing without further notice. If you are planning to attend the hearing, you should confirm the date and time before going to the Court.

**27. MAY I SPEAK AT THE FAIRNESS HEARING?**

Yes, if you have filed an objection, you may ask the Court for permission to speak at the hearing. To do so, you must submit an objection and also file a document called a "Notice of Intention to Appear."

**28. WHAT DO I HAVE TO DO TO SPEAK AT THE FAIRNESS HEARING?**

If you are a member of the Class, and you (or your attorney) want to appear and speak at the Fairness Hearing, you (or your attorney) must have submitted an objection and must file a **Notice of Intention to Appear at the Fairness Hearing** with the Clerk of the Court, and deliver that Notice to the attorneys for both sides, at the addresses listed above. **Your Notice of Intention to Appear at the Fairness Hearing must be filed and <u>received</u> by the Court, New Balance's Counsel, and Class Counsel, at the addresses specified in Question 24 no later than [DATE].**

If you file objections and appear at the Fairness Hearing, but the Court approves the settlement as proposed, you can still complete a Claim Form to be eligible for payment under the settlement, subject to the terms and conditions discussed in this Notice and in the Settlement Agreement.

## PART X. GETTING ADDITIONAL INFORMATION

This Notice and the accompanying documents summarize the proposed settlement. More details are contained in the Settlement Agreement. The full Settlement Agreement is on file with the Clerk of the Court. For a more detailed statement of the matters involved in this case, you may review the complaint and the other papers and Court orders on file in the Clerk's office at any time during normal business hours, Monday through Friday, 7:00 a.m. to 6:00 p.m. PST.

If you have questions after reading this notice, you can visit [WEBSITE] to obtain additional information about the proposed settlement and the Claim Form or you can call, toll-

18

free, [PHONE NUMBER] to obtain additional information about the settlement. You may also direct your questions about the settlement to Class Counsel, whose names and addresses are listed in Question 20 of this Notice.

**PLEASE DO NOT CALL THE COURT OR THE CLERK OF THE COURT**

Dated:  [DATE]                                        Clerk of the Court for the United States

District Court for the Southern District of

California

APPENDIX A

Release And Waiver of Claims

1. The Parties agree to the following release and waiver, which shall take effect upon entry of the Final Order and Final Judgment.

2. "Released Parties" means New Balance, its past, present, and future parents (including but not limited to New Balance, Inc., and any intermediary and/or ultimate parents), officers, directors, employees, stockholders, agents, attorneys, administrators, successors, suppliers, distributors, reorganized successors, spin-offs, assigns, holding companies, related companies, subsidiaries, affiliates, joint-ventures, partners, members, divisions, predecessors, and Authorized Retailers of "Made in USA" Shoes for resale.

3. In consideration for the Settlement benefits described in this Agreement, Plaintiffs and the other members of the Class, on behalf of themselves, their heirs, guardians, assigns, executors, administrators, predecessors, and/or successors, will fully, finally and forever release, relinquish, acquit, and discharge the Released Parties from – and shall not now or hereafter institute, maintain, or assert on their own behalf, on behalf of the Class or on behalf of any other person or entity – any and all manner of claims, actions, causes of action, suits, rights, debts, sums of money, payments, obligations, reckonings, contracts, agreements, executions, promises, damages, liens, judgments and demands of whatever kind, type or nature and whatsoever, both at law and in equity, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, or any other source, or any claim that Plaintiffs or Class Members ever had, now have, may have, or hereafter can, shall or may ever have against the Released Parties in any other court, tribunal, arbitration panel, commission, agency, or before any governmental and/or administrative body, or any other adjudicatory body, on the basis of, connected with, arising from or relating to the claims alleged in the complaint in the Action during the Class Period, including, but not limited to, communications, disclosures, nondisclosures, representations, statements, claims, omissions, messaging, design, testing, marketing, advertising, promotion,

packaging, displays, brochures, studies, manufacture, distribution, operation, performance, functionality, notification, providing, offering, dissemination, replacement, sale and/or resale by the Released Parties of the "Made in USA" Shoes; any claims for rescission, restitution or unjust enrichment for all damages of any kind; violations of any state's deceptive, unlawful and/or unfair business and/or trade practices, false, misleading or fraudulent advertising, consumer fraud and/or consumer protection statutes; any violation of the Uniform Commercial Code, any breaches of express, implied and/or any other warranties, any similar federal, state or local statutes, codes, damages, costs, expenses, extra-contractual damages, compensatory damages, exemplary damages, special damages, penalties, punitive damages and/or damage multipliers, disgorgement, declaratory relief, expenses, interest, and/or attorneys' fees and costs against the Released Parties pertaining to or relating to the claims alleged in the complaint in the Action, notwithstanding that Plaintiffs and the Class acknowledge that they may hereafter discover facts in addition to or different from those that they now know or believe to be true concerning the subject matter of the Action and/or the Release herein. Released Claims do not include any claims that cannot be released as a matter of law.

4. Plaintiffs represent and warrant that they are the sole and exclusive owner of all claims that they personally are releasing under this Agreement. Plaintiffs further acknowledge that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Action, including without limitation, any claim for benefits, proceeds or value under the Action, and that Plaintiffs are not aware of anyone other than themselves claiming any interest, in whole or in part, in the Action or in any benefits, proceeds or values under the Action. Class Members submitting a Claim Form shall represent and warrant therein that they are the sole and exclusive owner of all claims that they personally are releasing under the Settlement and that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or

21

claim arising out of or in any way whatsoever pertaining to the Action, including without limitation, any claim for benefits, proceeds or value under the Action, and that such Class Member(s) are not aware of anyone other than themselves claiming any interest, in whole or in part, in the Action or in any benefits, proceeds or values under the Action.

5. Without in any way limiting its scope, and, except to the extent otherwise specified in the Agreement, this Release covers by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, costs or any other fees, costs, and/or disbursements incurred by Plaintiffs' Counsel, or by Plaintiffs or the Class Members.

6. In addition to the Released Claims, the Named Plaintiffs only agree to a general release, which includes a release of any unknown claims that they did not know or suspect to exist in their favor at the time of the general release, which, if known, might have affected their Settlement with, and general release of, the Released Parties. With respect to the general release, the Named Plaintiffs only stipulate and agree that, upon the execution of this Agreement, and by operation of the Final Judgment, they shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the Civil Code of the State of California, which provides that:

> "a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

Named Plaintiffs only hereby agree that the provisions of all such principles of law or similar federal or state laws, rights, rules, or legal principles are hereby knowingly and voluntarily waived, relinquished and released.

7. Nothing in this Release shall preclude any action to enforce the terms of the Agreement, including participation in any of the processes detailed therein.

8. Plaintiffs and Defendant hereby agree and acknowledge that the provisions of this Release together constitute an essential and material term of the Agreement and shall be included in any Final Order and Final Judgment entered by the Court.

Claim Form

*New Balance Shoe Class Action Settlement*
*Claim Form*

Use this claim form only if you bought eligible New Balance "Made in USA" shoes in California from **December 27, 2012 to [DATE]**. The eligible New Balance shoes are listed below.

**All claim forms must be electronically submitted no later than [DATE] or postmarked no later than [DATE] to:**

New Balance Settlement
[ADDRESS]
[ADDRESS]
[ADDRESS]

| CLAIM INFORMATION |
|---|
| **CLASS MEMBER INFORMATION** |

| | |
|---|---|
| Name: | |
| Mailing Address: | |
| | Number and Street |
| City: | State: | Zip Code: |
| Best Telephone Number: | E-Mail Address: |

| *PURCHASE INFORMATION – NEW BALANCE SHOES* | | |
|---|---|---|
| *Eligible New Balance Shoe Models* | *Quantity Purchased* | *Location Purchased* |
| 601 | | |
| M1140 | | |
| M1290 | | |
| M1300 | | |
| M1400 | | |
| M1540 | | |
| M1700 | | |
| M2040 | | |

23

| PURCHASE INFORMATION – NEW BALANCE SHOES | | |
|---|---|---|
| **Eligible New Balance Shoe Models** | **Quantity Purchased** | **Location Purchased** |
| M3040 | | |
| M498 | | |
| M574 | | |
| M585 | | |
| M587 | | |
| M770 | | |
| M990 | | |
| M991 | | |
| M995 | | |
| M996 | | |
| M997 | | |
| M9975 | | |
| M998 | | |
| MK706 | | |
| ML1300 | | |
| ML1978 | | |
| ML996 | | |
| ML997 | | |
| MR1105 | | |
| MR993 | | |
| MW812 | | |
| PM15 | | |
| PM16 | | |
| US574 | | |
| US576 | | |
| US990 | | |
| US993 | | |
| US998 | | |
| W1140 | | |
| W1290 | | |
| W1400 | | |
| W1540 | | |
| W3040 | | |
| W498 | | |
| W587 | | |
| W990 | | |
| W998 | | |
| WK706 | | |
| WR993 | | |
| WW812 | | |

Payment amounts to eligible Class Members will vary depending upon the number and amounts claimed by all Class Members and other adjustments and deductions as specified in the Settlement Agreement. The amount could be up to $10 for each pair of Made in the USA shoes purchased. Eligible Class Members may submit a claim for up to five (5) pairs. If your claim is approved, the Claim Amount will be paid by check.

**Please note: Class Members shall not initially be required to submit proof of purchase for <u>one</u> pair of shoes; however, if a Class Member wishes to submit a claim for more than one pair of shoes (up to five total), proof of purchase will be required.**

**In order to provide valid proof of purchase, you must include with this Claim Form a copy of either a receipt, credit card transaction, or dated photograph of the shoes that shows the shoe model. If you are submitting a receipt or credit card transaction, please be sure to black out or remove any extra information you do not want the Class Action Settlement Administrator to see.**

**Additionally, the Class Action Settlement Administrator may, at its discretion, request proof of purchase to validate any claim. If the total amount of all claims submitted by all class members exceeds the total available relief, subject to any and all applicable deductions, the Class Action Settlement Administrator may request proof of purchase to validate your claim. If requested, you must provide proof of purchase or your claim will be reduced or denied and you may not appeal the reduction or denial.**

| **AFFIRMATION** |
| --- |

I declare or affirm, under penalty of perjury, that the information in this claim form is true and correct to the best of my knowledge and that I purchased the applicable product(s) claimed above between December 27, 2012 and **[DATE].** I understand that the decision of the Class Action Settlement Administrator is final and binding. I understand that my claim form may be subject to audit, verification, and Court review.

Signature**:** _____ Date: _____

| **Claim Forms must be electronically submitted no later than [DATE] or postmarked no later than [DATE].**<br><br>**Questions? Visit [WEBSITE] or call, toll-free, [NUMBER].** |
| --- |

Case No. 3:17-cv-00159-L-JLB

# Exhibit 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SHEILA DASHNAW, WILLIAM MEIER, and SHERRYL JONES, individually, and on behalf of all others similarly situated,

     Plaintiffs,

     v.

NEW BALANCE ATHLETICS, INC., a corporation; and DOES 1 through 50, inclusive,

     Defendants.

Case No. 3:17-cv-00159-L-JLB

**FINAL ORDER APPROVING CLASS ACTION SETTLEMENT**

     This motion for final approval, having been brought before the Court jointly by the Parties pursuant to their Settlement Agreement, with its attached exhibits (collectively, the "Settlement Agreement"), signed and filed with this Court on [DATE], to settle *Sheila Dashnaw et al. v. New Balance Athletics, Inc.*, Case Number 3:17-cv-00159-L-JLB (S.D. Cal.) (the "Action"); and

The Court having entered an Order dated [DATE] (the "Preliminary Approval Order"), preliminarily certifying the putative class in this action for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3), ordering individual and publication notice to potential Class Members, scheduling a Fairness Hearing for [DATE], providing potential Class Members with an opportunity either to exclude themselves from the settlement class or to object to the proposed settlement and issuing related Orders; and

The Court having held a Fairness Hearing on [DATE] to determine whether to grant final approval of the proposed settlement and issue related relief; and

The Court having considered the papers submitted by the Parties and by all other persons who timely submitted papers in accordance with the Preliminary Approval Order, and having heard oral presentations by the Parties and all persons who complied with the Preliminary Approval Order, and based on all of the foregoing, together with this Court's familiarity with the Action, it is hereby

**ORDERED, ADJUDGED AND DECREED** as follows:

1.     **Incorporation of Other Documents.** This Final Order Approving Class Action Settlement incorporates and makes a part hereof: (a) the Settlement Agreement, including all amendments and exhibits thereto, and definitions included therein, which was signed and filed with this Court on **[DATE]**; (b) the briefs, affidavits, declarations, and other materials filed in support of the settlement and Class Counsel's request for an award of attorneys' fees and reimbursement of expenses; (c) the record at the Fairness Hearing; (d) the documents listed on the docket sheet or otherwise submitted to the Court; and (e) all prior proceedings in the Action.

2.     **Jurisdiction.** Because due, adequate, and the best practicable notice has been disseminated and all potential Class Members have been given the opportunity to exclude themselves from or object to this class action settlement, the Court has personal jurisdiction over all Class Members (as defined below). The Court has

subject-matter jurisdiction over the claims asserted in the complaint and/or the Action pursuant to 28 U.S.C. §§ 1332 and 1367, including, without limitation, jurisdiction to approve the proposed settlement and the Settlement Agreement and all exhibits attached thereto, grant final certification to the Class, dismiss the Action on the merits and with prejudice, and issue related orders. The Court finds that venue is proper in this district pursuant to 28 U.S.C. § 1391. The Magistrate Judge shall retain jurisdiction over all disputes between and among the parties arising out of the Settlement Agreement, including but not limited to the interpretation and enforcement of the terms of the Settlement Agreement.

1. **Final Class Certification.** The Class preliminarily certified by this Court is hereby finally certified for settlement purposes only under Fed. R. Civ. P. 23(a), (b)(3), and (c)(2), the Court finding that the Class fully satisfies all the applicable requirements of Fed. R. Civ. P. 23 and due process. The Class shall consist of all persons who purchased any and all "Made in USA" Shoes from New Balance and/or its Authorized Retailers, from December 27, 2012, up to and including **[DATE]** (the "Class Period") in California. Excluded from the Class are: (a) New Balance's Board members and employees, including its attorneys; (b) any persons who purchased the "Made in USA" Shoes for the purposes of resale; (c) distributors or re-sellers of "Made in USA" Shoes; (d) the judge and magistrate judge and their immediate families presiding over the Action; (e) governmental entities; and (f) persons or entities who or which timely and properly exclude themselves from the Class as provided in the Settlement Agreement. "'Made in USA' Shoes" means the New Balance "Made in USA" labeled shoes purchased as new by Class Members during the Class Period in California, listed below:

| ELIGIBLE NEW BALANCE SHOE MODELS | |
|---|---|
| 601 | ML996 |
| M1140 | ML997 |

| ELIGIBLE NEW BALANCE SHOE MODELS | |
|---|---|
| M1290 | MR1105 |
| M1300 | MR993 |
| M1400 | MW812 |
| M1540 | PM15 |
| M1700 | PM16 |
| M2040 | US574 |
| M3040 | US576 |
| M498 | US990 |
| M574 | US993 |
| M585 | US998 |
| M587 | W1140 |
| M770 | W1290 |
| M990 | W1400 |
| M991 | W1540 |
| M995 | W3040 |
| M996 | W498 |
| M997 | W587 |
| M9975 | W990 |
| M998 | W998 |
| MK706 | WK706 |
| ML1300 | WR993 |
| ML1978 | WW812 |

2.     **Requests for Exclusion.**  The Court finds that only those persons and entities for the specific "Made in USA" Shoes listed in Exhibit A to the Affidavit of Jeanne Finegan and filed with the Court have submitted timely and valid requests for exclusion from the Class and are therefore not bound by this Final Order and accompanying Final Judgment. Class Counsel and New Balance's Counsel may mutually agree to allow additional Class Members to exclude themselves or to withdraw their exclusion requests by filing an appropriate notice with the Court.

3.     **Fairness of Settlement**. The Court finds that the Settlement was made and entered into in good faith and hereby approves the Settlement as fair, adequate and reasonable to all Class Members.

4.     **Notice**. Notice to Class Members, as set forth in the Settlement Agreement, has been completed in conformity with the Preliminary Approval Order

as to all Class Members who could be identified through reasonable effort. The Court finds that said notice was the best notice practicable under the circumstances. The Class Notice provided due and adequate notice to Class Members of the proceedings and of the matters set forth therein, including the Settlement, and the manner by which objections to the Settlement could be made and Class Members could opt out of the Settlement. The Class Notice and Notice Plan fully satisfied the requirements of due process.

5. **Monetary Payments to the Class**. The Court finds the compensation to the Class is fair and reasonable, and authorizes the Claims Administrator to pay the Claim Amounts to the Class Members in accordance with the terms of the Settlement Agreement.

6. **Injunctive Relief**. The Court finds the injunctive relief provided under the Settlement is fair and reasonable and Defendant shall comply with the terms of injunctive relief in accordance with the terms of the Settlement Agreement. The changes to its business practices undertaken by New Balance in Section III.D. of the Settlement Agreement are appropriate and sufficient to avoid future violations of Cal. Bus. & Prof. Code §§ 17200 *et seq.*, 17500 *et seq.*, 17533.7(a); Cal. Civ. Code § 1750; breach of express warranty; negligent misrepresentation; and/or unjust enrichment.

7. **Class Representative Service Awards**. Named Plaintiffs and Class Representatives Sheila Dashnaw, William Meier, and Sherryl Jones shall each be paid a Service Award in the amount of $_____ for their time and effort in bringing and presenting the action and for releasing their Released Claims.

8. **Class Counsel's Attorneys' Fees and Costs**. Class Counsel is awarded $_____ for their reasonable attorneys' fees and $_____ for their reasonable costs incurred in the action, the factual and legal basis of which is set forth in the Court's order granting Plaintiffs' Motion for Attorneys' Fees and Costs.

1    9.    **Implementation**. The Parties shall implement the Settlement according

2    to its terms.

3

4

5    _____

6    Hon. M. James Lorenz
     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 4

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SHEILA DASHNAW, WILLIAM
MEIER, and SHERRYL JONES,
individually, and on behalf of all others
similarly situated,

     Plaintiffs,

     v.

NEW BALANCE ATHLETICS, INC., a
corporation; and DOES 1 through 50,
inclusive,

     Defendants.

Case No. 3:17-cv-00159-L-JLB

**FINAL JUDGMENT**

IT IS on this ____ day of _____, _____, HEREBY ADJUDGED AND DECREED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 58 THAT:

1. The settlement of this class action on the terms set forth in the Parties' Settlement Agreement, with exhibits (collectively, the "Settlement Agreement"), and definitions included therein, signed and filed with this Court on **[DATE]**, is finally approved, and the following class is granted final certification for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3): all persons who purchased any and all "Made in USA" Shoes from New Balance and/or its Authorized Retailers in California from December 27, 2012 up to and including **[DATE]** (the "Class Period"). Excluded from the Class are: (a) New Balance's Board members and employees, including its attorneys; (b) any persons who purchased the "Made in USA" Shoes for the purposes of resale; (c) distributors or re-sellers of "Made in USA" Shoes; (d) the judge and magistrate judge and their immediate families presiding over the Actions; (e) governmental entities; and (f) persons or entities who or which timely and properly exclude themselves from the Class as provided in the Settlement Agreement. "'Made in USA' Shoes" means the New Balance "Made in USA" labeled shoes, purchased as new by Class Members during the Class Period in California, listed below:

| ELIGIBLE NEW BALANCE SHOE MODELS | |
|---|---|
| 601 | ML996 |
| M1140 | ML997 |
| M1290 | MR1105 |
| M1300 | MR993 |
| M1400 | MW812 |
| M1540 | PM15 |
| M1700 | PM16 |
| M2040 | US574 |
| M3040 | US576 |
| M498 | US990 |
| M574 | US993 |
| M585 | US998 |

| ELIGIBLE NEW BALANCE SHOE MODELS | |
|---|---|
| M587 | W1140 |
| M770 | W1290 |
| M990 | W1400 |
| M991 | W1540 |
| M995 | W3040 |
| M996 | W498 |
| M997 | W587 |
| M9975 | W990 |
| M998 | W998 |
| MK706 | WK706 |
| ML1300 | WR993 |
| ML1978 | WW812 |

2.  The Court finds that only those persons and entities listed in Exhibit ___ to the Affidavit of Jeanne Finegan, and filed with the Court have submitted timely and valid requests for exclusion from the Class and are therefore not bound by this Final Judgment and accompanying Final Order. Class Counsel and New Balance's Counsel may mutually agree to allow additional Class Members to exclude themselves or to withdraw their exclusion requests by filing an appropriate notice with the Court.

3.  The Class Notice, the Summary Settlement Notice, the web site, the toll-free telephone number, and all other notices in the Settlement Agreement and the Declaration of the Notice Administrator, and the notice methodology implemented pursuant to the Settlement Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Actions, the terms of the settlement, and their rights under the settlement, including, but not limited to, their right to object to or exclude themselves from the proposed settlement and to appear at the Fairness Hearing; (c) were reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (d) met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 28 U.S.C. § 1715, and the Due Process Clause(s) of the United States

Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices.

4. All Class Members and/or their representatives who have not been timely excluded from the Class with respect to the "Made in USA" Shoes are permanently barred and enjoined from bringing, filing, commencing, prosecuting, maintaining, intervening in, participating (as class members or otherwise) in, or receiving any benefits from any other lawsuit (including putative class action lawsuits), arbitration, administrative, regulatory, or other proceeding, order, or cause of action in law or equity in any jurisdiction that is covered by the Release. In addition, all Class Members and all persons in active concert or participation with Class Members are permanently barred and enjoined from organizing Class Members who have not been excluded from the Class into a separate class for purposes of pursuing, as a purported class action, any lawsuit (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) that is covered by the Release. Pursuant to 28 U.S.C. §§ 1651(a) and 2283, the Court finds that issuance of this permanent injunction is necessary and appropriate in aid of the Court's continuing jurisdiction and authority over the Actions.

5. New Balance shall take all steps necessary and appropriate to provide Class Members with the benefits to which they are entitled under the terms of the Settlement Agreement and pursuant to the Orders of the Court.

6. Class Counsel shall be awarded _____ in attorneys' fees and costs, which amount is approved as fair and reasonable, the factual and legal basis of which is set forth in the Court's order granting Plaintiffs' Motion for Attorneys' Fees and Costs, and in accordance with the terms of the Settlement Agreement.

7.  Each of the named Plaintiffs, Sheila Dashnaw, William Meier, and Sherryl Jones, shall each be awarded _____ as service awards in their capacity as representative Plaintiffs in the Actions.

8.  The Court will retain continuing jurisdiction over the Actions for the reasons and purposes set forth in this Court's Final Approval Order.

_____

Hon. M. James Lorenz
United States District Judge

# Exhibit 5

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA DASHNAW, WILLIAM MEIER, and SHERRYL JONES, individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>NEW BALANCE ATHLETICS, INC., a corporation; and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No. 3:17-cv-00159-L-JLB<br><br>**ORDER PRELIMINARILY CERTIFYING A CLASS FOR SETTLEMENT PURPOSES, PRELIMINARILY APPROVING THE CLASS SETTLEMENT, APPOINTING CLASS COUNSEL, DIRECTING THE ISSUANCE OF NOTICE TO THE CLASS, SCHEDULING A FAIRNESS HEARING, AND ISSUING RELATED ORDERS** |

This motion having been brought before the Court jointly by Plaintiffs and New Balance Athletics, Inc. ("New Balance"); and

*Sheila Dashnaw et al. v. New Balance Athletics, Inc.*, Case Number 3:17-cv-00159-L-JLB, having been filed on December 27, 2016 in California state court and removed to the United States District Court for the Southern District of California on January 26, 2017 (the "Action"); and

The Action alleges, on behalf of a purported class of California consumers, that New Balance violated California's False Advertising Law ("FAL") (Cal. Bus. & Prof. Code § 17500, et seq.), California's Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1750, et seq.), Cal. Bus. & Prof. Code § 17533.7, California's Unfair Competition law ("UCL") (Cal. Bus. & Prof. Code § 17204), and for breach of express warranty, negligent misrepresentation, and unjust enrichment regarding New Balance's marketing campaign relating to its "Made in USA" Shoes and seeking individual restitution, restitutionary disgorgement, economic, monetary, actual, consequential, and compensatory damages, declaratory and injunctive relief, reasonable attorneys' fees and costs, statutory pre- and post-judgment interest, and any other relief that the Court deems just and proper; and

Class Counsel has conducted a thorough examination, investigation, and evaluation of the relevant law, facts, and allegations to assess the merits of the claims and potential claims to determine the strength of both defenses and liability sought in the Action; and

Class Counsel, on behalf of Plaintiffs and the other members of the Class having engaged in extensive class discovery including, but not limited to, receiving and reviewing over 15,000 pages of documents; and

The Parties having entered into a Settlement Agreement in which the Parties have agreed to settle the Action, pursuant to the terms of the Settlement Agreement, subject to the approval and determination of the Court as to the fairness,

reasonableness, and adequacy of the settlement which, if approved, will result in a final judgment and final order, pursuant to the terms and conditions of the Settlement Agreement, being issued in the Action, and dismissal of the Action with prejudice; and

This Order Preliminarily Certifying A Class For Settlement Purposes, Preliminarily Approving The Class Settlement, Appointing Class Counsel, Directing The Issuance Of Notice To The Class, Scheduling A Fairness Hearing, And Issuing Related Orders shall hereafter be referred to as the "Preliminary Approval Order"; and

The Court having read and considered the Motion for Preliminary Approval and Memorandum in support thereof, the Settlement Agreement, including the exhibits attached thereto (together, the "Settlement Agreement") and all prior proceedings herein, and good cause appearing based on the record, hereby orders as follows:

IT IS on this ____ day of _____, 2018, ORDERED, ADJUDGED, AND DECREED as follows (all capitalized terms being defined as they are defined in the Settlement Agreement unless otherwise specified or defined herein):

1. **Stay of the Actions.** All non-settlement-related proceedings in the Action are hereby stayed and suspended until further order of this Court.

2. **Preliminary Class Certification for Settlement Purposes Only.** The Action is preliminarily certified as a class action for settlement purposes only, pursuant to Fed. R. Civ. P. 23(a) and (b)(3). The Court preliminarily finds for settlement purposes that: (a) the Class certified herein numbers at least in the thousands of persons, and that joinder of all such persons would be impracticable, (b) there are issues of law and fact that are typical and common to the Class, and that those issues predominate over individual questions; (c) a class action on behalf of the certified Class is superior to other available means of adjudicating this dispute; and

(d) as set forth in paragraph 4, below, Plaintiffs Sheila Dashnaw, William Meier, and Sherryl Jones, and Class Counsel are adequate representatives of the Class. New Balance retains all rights to assert that this action may not be certified as a class action, except for settlement purposes only.

3. **Class Definition.** The Class shall consist of all persons who purchased any and all "Made in USA" Shoes from New Balance and/or its Authorized Retailers in California from December 27, 2012 up to and including the date the Court grants preliminary approval of the class settlement ("Class Period"). Excluded from the Class are: (a) New Balance's board members and employees, including its attorneys; (b) any persons who purchased the "Made in USA" Shoes for the purposes of resale (c) distributors or re-sellers of "Made in USA" Shoes; (d) the judge and magistrate judge and their immediate families presiding over the Action; (e) governmental entities; and (f) persons or entities who or which timely and properly exclude themselves from the Class as provided in this Agreement. "'Made in USA' Shoes" means the New Balance's "Made in USA" labeled shoes purchased as new by Class Members during the Class Period, in California listed below:

| ELIGIBLE NEW BALANCE SHOE MODELS | |
|---|---|
| 601 | ML996 |
| M1140 | ML997 |
| M1290 | MR1105 |
| M1300 | MR993 |
| M1400 | MW812 |
| M1540 | PM15 |
| M1700 | PM16 |
| M2040 | US574 |
| M3040 | US576 |
| M498 | US990 |
| M574 | US993 |
| M585 | US998 |
| M587 | W1140 |
| M770 | W1290 |

-4-

| ELIGIBLE NEW BALANCE SHOE MODELS | |
|---|---|
| M990 | W1400 |
| M991 | W1540 |
| M995 | W3040 |
| M996 | W498 |
| M997 | W587 |
| M9975 | W990 |
| M998 | W998 |
| MK706 | WK706 |
| ML1300 | WR993 |
| ML1978 | WW812 |

4.     **Class Representatives and Class Counsel.** Plaintiffs Sheila Dashnaw, William Meier, and Sherryl Jones are designated as representatives of the conditionally certified Class. The Court preliminarily finds that these individuals are similarly situated to absent Class Members and therefore typical of the Class, and will be adequate Class representatives. Jason H. Kim of Schneider Wallace Cottrell Konecky Wotkyns LLP and Aubry Wand of The Wand Law Firm, P.C. are experienced and adequate Class Counsel, whom the Court preliminarily finds are experienced and adequate counsel, are hereby designated as Class Counsel.

5.     **Preliminary Settlement Approval.** Upon preliminary review, the Court finds that the Settlement Agreement and the settlement it incorporates, appear fair, reasonable and adequate. Manual for Complex Litigation (Fourth) § 21.632 (2004). Accordingly, the Settlement Agreement is preliminarily approved and is sufficient to warrant sending notice to the Class.

6.     **Jurisdiction.** The Court has subject-matter jurisdiction over the Action pursuant to 28 U.S.C. §§ 1332 and 1367, and personal jurisdiction over the Parties before it. Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391.

7.     **Fairness Hearing.** A Fairness Hearing shall be held on _____ at _____ at the United States District Court for the Southern District of California, 221 West Broadway, San Diego, California, 92101, to

ORDER PRELIMINARILY CERTIFYING A CLASS FOR
SETTLEMENT PURPOSES AND ISSUING RELATED ORDERS
CASE NO. 17-CV-00159-L-JLB

determine, among other things: (a) whether the Action should be finally certified as a class action for settlement purposes pursuant to Fed. R. Civ. P. 23(a), and (b)(3); (b) whether the settlement of the Action should be approved as fair, reasonable and adequate, and finally approved pursuant to Fed. R. Civ. P. 23(e); (c) whether a final order and final judgment should be entered in the Action pursuant to the terms of the Settlement Agreement, including a dismissal of the Action with prejudice; (d) whether Class Members should be bound by the release set forth in the Settlement Agreement; (e) whether Class Members and related persons should be subject to a permanent injunction; (f) whether the application of Class Counsel for an award of Attorneys' Fees and Expenses should be approved pursuant to Fed. R. Civ. P. 23(h); and (g) whether the application of the named Plaintiffs for service awards should be approved. The submissions of the Parties in support of the settlement, including Plaintiffs' applications for Attorneys' Fees and Expenses and incentive awards, shall be filed with the Court no later than fourteen (14) days prior to the deadline for the submission of objections and may be supplemented up to seven (7) days prior to the Fairness Hearing.

8. **Administration**. In consultation with and approval of Class Counsel, New Balance or its designee is hereby authorized to establish the means necessary to administer the proposed settlement and implement the Claim Process, in accordance with the terms of the Agreement.

9. **Class Notice.** The proposed Class Notice, Summary Settlement Notice and the notice methodology described in the Settlement Agreement and the Declaration of the Notice Administrator are hereby approved. The Court hereby authorizes the Class Action Settlement Administrator and Notice Administrator to provide notice to the Class as set forth in the Settlement Agreement.

(a)   Pursuant to the Settlement Agreement, the Court appoints Heffler Claims Group to be the Class Action Settlement Administrator and to be the Notice Administrator to help implement the terms of the Settlement Agreement.

(b)   Beginning not later than five (5) business days after entry of the Preliminary Approval Order and to be substantially completed not later than ten (10) days after entry of the Preliminary Approval Order and subject to the requirements of the Preliminary Approval Order, the Settlement Agreement and the Declaration of the Notice Administrator, the Notice Administrator shall commence sending the Class Notice by Electronic Mail ("E-mail) to each reasonably identifiable Class Member's last known E-mail address, subject to the existence of such information and its current possession, if at all, by New Balance, which addresses shall be provided to the Notice Administrator by New Balance, no later than one (1) business day after the day of entry of the Preliminary Approval Order, subject to the existence of such information, and shall otherwise comply with Fed. R. Civ. P. 23 and any other applicable statute, law, or rule, including, but not limited to, the Due Process Clause of the United States Constitution.

(c)   Within ten (10) days of the filing of the Motion for Preliminary Approval, New Balance shall serve upon the appropriate State and Federal officials a notice of the proposed settlement in accordance with 28 U.S.C. § 1715(b), and shall otherwise comply with Fed. R. Civ. P. 23 and any other applicable statute, law, or rule.

(d)   The Notice Administrator shall have the publication of the Summary Settlement Notice substantially completed no later than sixty-five (65) days after entry of the Preliminary Approval Order. The Notice Administrator shall publish the Summary Settlement Notice as described in the Declaration of Jeanne Finegan and in such additional newspapers, magazines, and/or other media outlets in California as shall be agreed upon by the Parties.

(e)  No later than twenty (20) days after entry of the Preliminary Approval Order, the Notice Administrator shall send the Summary Settlement Notice by First Class U.S. Mail, proper postage prepaid, to each Class Member whose E-mail address returned a message as undeliverable, subject to the existence of such information as provided by New Balance pursuant to Section IV.B.1.a of this Agreement. The Notice Administrator shall: (i) re-mail any Summary Settlement Notices returned by the United States Postal Service with a forwarding address that are received by the Notice Administrator no later than thirty-five (35) days after entry of the Preliminary Approval Order; (ii) by itself or using one or more address research firms, as soon as practicable following receipt of any returned Summary Settlement Notices that do not include a forwarding address, research any such returned mail for better addresses and promptly mail copies of the Summary Settlement Notices to the better addresses so found.

(f)  Prior to the dissemination of the Class Notice as set forth above in paragraphs 9(a) to 9(d), the Notice Administrator shall establish an Internet website that will inform Class Members of the terms of this Agreement, their rights, dates and deadlines, and related information. The web site shall include, in PDF format, materials agreed upon by the Parties and as further ordered by this Court.

(g)  Prior to the dissemination of the Class Notice as set forth above in paragraphs 9(a) to 9(d), the Notice Administrator shall establish a toll-free telephone number that will provide Settlement-related information to Class Members.

(h)  The Notice Administrator shall timely disseminate any remaining notice, as stated in the Settlement Agreement and/or the Declaration of the Notice Administrator.

(i)  Not later than fifteen (15) days before the date of the Fairness Hearing, the Notice Administrator shall file with the Court: (a) a list of those persons who have

opted out or excluded themselves from the Settlement; and (b) the details outlining the scope, methods, and results of the notice program.

10. **Findings Concerning Notice.** The Court finds that the notices described in Paragraph 9 of this order: (a) constitute the best practicable notice; (b) are reasonably calculated, under the circumstances, to apprise the Class Members of the pendency of the Action, the terms of the proposed settlement, and their rights under the proposed settlement, including, but not limited to, their right to object to or exclude themselves from the proposed settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including, but not limited to, 28 U.S.C. § 1715, Fed. R. Civ. P. 23(c) and (e) and the Due Process Clause(s) of the United States Constitution. The Court further finds that all of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices.

11. **Exclusion from Class**. Any Class Member who wishes to be excluded from the Class must mail a written request for exclusion stating such a request for exclusion and containing the information set forth in the Class Notice, postmarked no later than the final day of the Claim Period, or as the Court otherwise may direct, to the Notice Administrator, in care of the address provided in the Class Notice. The Notice Administrator shall forward copies of any written requests for exclusion to Class Counsel and New Balance's Counsel. A list reflecting all requests for exclusion shall be filed with the Court by the Notice Administrator no later than ten (10) days before the Fairness Hearing. If the proposed settlement is finally approved, any Class Member who has not submitted a timely written request for exclusion from the Class shall be bound by all subsequent proceedings, orders, and judgments in the Action, even if the Class Member previously initiated or subsequently initiates against any or

all of the Released Parties any litigation or other proceeding encompassed by the Release and the claims released in the Settlement Agreement. Persons who properly exclude themselves from the Class shall not be entitled to participate in the benefits of the Settlement Agreement.

12. **Objections and Appearances.** Any Class Member or counsel hired at any Class Member's own expense who complies with the requirements of this paragraph may object to any aspect of the proposed settlement.

(a) Any Class Member who has not submitted a timely written request for exclusion and who wishes to object to the fairness, reasonableness, or adequacy of the Settlement Agreement, the proposed Settlement, the award of Attorneys' Fees and Expenses, or the individual awards to Plaintiffs, must deliver to the Class Counsel identified in the Class Notice and to New Balance's Counsel, and file with the Court, no later than the final day of the Claim Period, a written statement of objections, as well as the specific reason(s), if any, for each objection, including any legal support the Class Member wishes to bring to the Court's attention and any evidence or other information the Class Member wishes to introduce in support of the objections, a statement of whether the Class Member intends to appear and argue at the Fairness Hearing, and list the Class Member's purchase(s) of either "Made in USA" Shoes, or be forever barred from so objecting. The objection must include proof of purchase of the "Made in USA" Shoes. Acceptable proof of purchase includes a cash register receipt, a credit card receipt or a credit card statement that sufficiently indicates the purchase of the "Made in USA" Shoes in California.

(b) Any Class Member who files and serves a written objection, as described above, may appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense, to object to the fairness, reasonableness, or adequacy of the Settlement Agreement or the proposed Settlement, or to the award of Attorneys' Fees and Expenses or awards to the individual Plaintiffs. Class Members

or their attorneys who intend to make an appearance at the Fairness Hearing must deliver a notice of intention to appear to one of the Class Counsel identified in the Class Notice and to New Balance's Counsel, and file said notice with the Court, no later than the final day of the Claim Period. Any Class Member who fails to comply with the provisions in this section shall waive and forfeit any and all rights he or she may have to appear separately and/or to object, and shall be bound by all the terms of the Settlement Agreement, this Order, and by all proceedings, orders, and judgments, including, but not limited to, the Release in the Action.

(c) Any interested party may file a reply to any written objection, as described in Section 12(a). herein. A reply to an objection must be served and filed no later than seven (7) days before the Fairness Hearing.

13. **<u>Preliminary Injunction</u>.** All Class Members and/or their representatives who do not timely exclude themselves from the Class are hereby preliminarily barred and enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in, conducting, or continuing litigation as class members, putative class members, or otherwise against New Balance (or against any of its related parties or affiliates), and/or from receiving any benefits from, any lawsuit, administrative, or regulatory proceeding or order in any jurisdiction, based on or relating to the claims or causes of actions or the facts, and circumstances relating thereto, relating to the "Made in USA" Shoes, the Action, and/or the Release. In addition, all such persons are hereby preliminarily barred and enjoined from filing, commencing, or prosecuting a lawsuit against New Balance (or against any of its related parties or affiliates) as a class action, a separate class, or group for purposes of pursuing a putative class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) on behalf of Class Members who do not timely exclude themselves from the Class, arising out of, based on or relating to the claims, causes

-11-

of action, facts, and/or circumstances relating thereto, relating to the "Made in USA" Shoes, the Action and/or the Release. Pursuant to 28 U.S.C. §§ 1651(a) and 2283, the Court finds that issuance of this preliminary injunction is necessary and appropriate in aid of the Court's continuing jurisdiction and authority over this Action.

14. **Disclosure of Objections.** The Notice Administrator, New Balance's Counsel, and Class Counsel shall promptly furnish to each other copies of any and all objections or written requests for exclusion that might come into their possession.

15. **Termination of Settlement.** This Order shall become null and void and shall be without prejudice to the rights of the parties, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order, if: (a) the settlement is not finally approved by the Court, or does not become final, pursuant to the terms of the Settlement Agreement; (b) the settlement is terminated in accordance with the Settlement Agreement; or (c) the settlement does not become effective as required by the terms of the Settlement Agreement for any other reason. In such event, the settlement and Settlement Agreement shall become null and void and be of no further force and effect, and neither the Settlement Agreement nor the Court's orders, including this Order, relating to the settlement shall be used or referred to for any purpose whatsoever.

16. **Use of Order.** This Order shall be of no force or effect if the settlement does not become final and shall not be construed or used as an admission, concession, or declaration by or against New Balance of any fault, wrongdoing, breach, or liability. Nor shall the Order be construed or used as an admission, concession, or declaration by or against Plaintiffs or the other Class Members that their claims lack merit or that the relief requested is inappropriate, improper, or unavailable, or as a waiver by any party of any defenses or claims he, she, or it may have in these Action or in any other lawsuit.

17.    **Access to Documents.** During the pendency of this Court's consideration of the proposed Settlement Agreement, if Class Members and/or their attorneys file a motion for discovery and such motion is granted for good cause shown and under the applicable standards, such persons shall not be given access to these materials unless and until they enter into the Confidentiality Agreement, which is attached as Exhibit 9 to the Settlement Agreement. The terms and conditions of the Confidentiality Agreement are incorporated herein by reference and if breached may be the basis for a finding of contempt of Court.

18.    **Retaining Jurisdiction.** This Court shall maintain continuing jurisdiction over these settlement proceedings to assure the effectuation thereof for the benefit of the Class.

19.    **Continuance of Hearing.** The Court reserves the right to adjourn or continue the Fairness Hearing without further written notice.

_____
Hon. M. James Lorenz
United States District Judge

# Exhibit 6

Garrett K. Sakimae (SBN 288453)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070
sakimae@fr.com

Elizabeth Brenckman (Pro Hac Vice)
    Minnesota State Bar No. 0388871
601 Lexington Avenue, 52nd Floor
New York, NY 10022
Tel: (212) 765-5070
Fax: (212) 258-2291
brenckman@fr.com

*Attorneys for Defendant*
NEW BALANCE ATHLETICS, INC.

R. David Hosp (Pro Hac Vice)
    Massachusetts BBO 634091
Sheryl Koval Garko (Pro Hac Vice)
    Massachusetts BBO 657735
Mark S. Puzella (Pro Hac Vice)
    Massachusetts BBO 644850
Laura B. Najemy (Pro Hac Vice)
    Massachusetts BBO 678756
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Tel: (617) 542-5070
hosp@fr.com; garko@fr.com;
puzella@fr.com; najemy@fr.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA DASHNAW, WILLIAM MEIER, and SHERRYL JONES, individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NEW BALANCE ATHLETICS, INC., a corporation; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No. 3:17-cv-00159-L-JLB <br><br> **DECLARATION OF ERIN MICHAEL IN SUPPORT OF SETTLEMENT AGREEMENT** <br><br> Judge: Hon. M. James Lorenz <br><br> Magistrate Judge: Hon. Jill L. Burkhardt |

## Declaration of Erin Michael

Pursuant to 28 U.S.C. § 1746, I, Erin Michael, hereby declare as follows:

1.      I am Senior Counsel for New Balance Athletics, Inc. ("New Balance"), Defendant in the above-captioned Action. I submit this Declaration in support of New Balance and Plaintiffs Sheila Dashnaw, William Meir, and Sherryl Jones ("Plaintiffs") (collectively, "the Parties") Settlement Agreement.

2.      In my position, I report directly to Paul Gauron, Executive Vice President and General Counsel for New Balance, and am familiar with the financial, advertising, marketing, and manufacturing strategies at New Balance.

3.      All capitalized terms or phrases used in this Declaration are to be interpreted as they have been specifically defined in the Settlement Agreement.

4.      On March 8, 2018, counsel for Plaintiffs and counsel for New Balance entered into a Memorandum of Understanding Regarding Proposed Class Action Settlement ("MOU"). The Parties have formalized the MOU into a Settlement Agreement.

5.      New Balance expressly denies any wrongdoing, but considers it desirable for this case to be settled to avoid the substantial expense, burdens, and uncertainties associated with the continued litigation of these claims.

6.      In addition to monetary relief, for all "Made in USA" Shoes produced after the Final Settlement Date, New Balance has agreed to update its hangtag that is affixed to the "Made in USA" Shoes to no longer include the phrase "Made in the USA" on the front of the tag. In addition, on the back, in clear readable font, the hangtag will include the following sentence, or words to similar effect, "New Balance 'made' is a premium collection that contains domestic value of 70% or greater" (the "Made Notice") unless and until a change in either federal or California law obviates the need for such clarification.

7.      New Balance estimates that it will spend approximately $35,000 per year on the production of these hangtags over the next five years.

1

1    8.    New Balance will also update its shoeboxes for the "Made in USA"

2    Shoes to not include the phrase "Made in the USA" on the outside top panel of the

3    box. New Balance may indicate that the shoes are made in the United States on the

4    side(s) of the shoe box if, on the end and/or side of the shoe box, in clear readable

5    font, it states the following sentence, or words to similar effect, "New Balance

6    'made' is a premium collection that contains domestic value of 70% or greater"

7    unless and until a change in either federal or California law obviates the need for

8    such clarification.

9    9.    New Balance estimates that it will spend approximately $1.2M per year

10   on the production of shoes boxes that include the agreed-upon disclosure over the

11   next five years. This excludes the costs associated with the design of the boxes.

12   10.    New Balance will implement a compliance and training program for a

13   period of five years from the effective date of the Settlement Agreement intended to

14   ensure that moving forward any advertising – including print, television, social

15   media in the United States – include the Made Notice any time the "Made in USA"

16   representation is made. This will include training for sales and marketing associates

17   who work on advertising for the "Made in USA" Shoes at least twice during the five

18   years following the effective date of the Settlement Agreement regarding

19   California's false advertising laws conducted by an attorney.

20   11.    New Balance estimates that its in-house legal team will spend

21   approximately 50 hours on the implementation of this training program over the

22   next five years.

23   12.    New Balance will implement reasonable policies and practices intended

24   to ensure that the modified hangtag is physically affixed to each display shoe in all

25   California retail stores. New Balance further agrees to implement a compliance

26   training program for employees of its flagship and factory stores in California.

27   13.    New Balance estimates that its in-house legal team will spend

28   approximately 50 hours on the implementation of this training program over the

2

1   next five years.

2       14.   New Balance agrees that it will maintain its current policy with respect

3   to any "Made in USA" statements on its United States ecommerce website.

4   Specifically, (1) all banners saying "Made in USA" or displaying a "Made in USA"

5   Shoe where the "Made in USA" label is showing must have the Made Notice in

6   legible size and font, (2) the "Made in USA" Shoe landing page (i.e., where all of

7   New Balance's "Made in USA" Shoes are listed), must have the Made Notice listed

8   under the "Made in USA" heading, and (3) all individual product display pages

9   containing a "Made in USA" Shoe must have the Made Notice listed in same size

10   and font as, and in close proximity to, the rest of the product description.

11       15.   New Balance has reviewed the available sales data relating to its "Made

12   in USA" Shoes. Because the majority of New Balance's sales are to third party

13   retailers, New Balance cannot know definitively how many sales are ultimately

14   made in California. However, based on New Balance shipments to customers and

15   resale outlets in California, New Balance estimates that total sales of "Made in

16   USA" Shoes in California during the Class Period are likely less than one million

17   pairs.

18       16.   New Balance has also reviewed its records and believes that it has

19   either E-Mail addresses or physical mailing addresses for at least 80,000 sales to

20   potential class members during the Class Period in California.

21

22     I declare under penalty of perjury under the laws of the United States of America

23   that the foregoing is true and correct to the best of my knowledge.

24

25     Executed this 23rd day of April, 2018, in Boston, Massachusetts.

26

27

28                     Erin Michael

# **Exhibit 7**

| | |
|---|---|
| SHELIA DASHNAW, WILLIAM MEIER, and SHERRYL JONES, individually, and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>NEW BALANCE ATHLETICS, INC., a corporation: and DOES 1 through 50, inclusive,<br><br>      Defendants. | )<br>)<br>) CASE NO.: 17:cv-00159-L-JLB<br>)<br>) Magistrate Judge: Hon. Jill L. Burkhardt<br>)<br>) Judge: Hon. M. James Lorenz<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF JEANNE C. FINEGAN, APR CONCERNING PROPOSED CLASS MEMBER NOTIFICATION PROGRAM

I, JEANNE C. FINEGAN declare as follows:

# INTRODUCTION

1.        I am President and Chief Media Officer of HF Media, LLC, Inc. ("HF") a division of Heffler Claims Group LLC ("Heffler"). This Declaration is based upon my personal knowledge as well as information provided to me by my associates and staff, including information reasonably relied upon in the fields of advertising media and communications.

2.        Pursuant to the Settlement Agreement Section II.A.10, Heffler has been engaged by Defendants, with the consent of Plaintiffs, to develop and implement a proposed legal notice program as part of the parties' proposed class action settlement. This program is highly targeted and well-designed to reach Class Members, employing best in breed tools and technology, to apply the most modern approach to notice by combining direct mail, traditional media, online and social with cross device targeting desktop and mobile and a press release.

3.        This Declaration describes my experience in designing and implementing notices and notice programs, as well as my credentials to opine on the overall adequacy

of the notice effort. This Declaration will also describe the proposed notice program and address why this comprehensive proposed program is consistent with, and indeed exceeds, other best practicable court-approved notice programs and the requirement of Fed. Civ. P. 23(c)(2)(B) and the Federal Judicial Center ("FJC") guidelines[1] for adequate notice.

4. The notice program, described hereinafter, is estimated to reach more than 70 percent of the target audience, *i.e.*, people who have purchased New Balance Shoes who live in California, with an average frequency of 4.1 times.

## QUALIFICATIONS

5. My credentials that qualify me to provide an expert opinion include more than 30 years of communications and advertising experience. I am the only Notice Expert accredited in Public Relations (APR) by the Universal Accreditation Board, a program administered by the Public Relations Society of America. Further, I have provided testimony before Congress on issues of notice. Also, I have lectured, published and been cited extensively on various aspects of legal noticing, product recall and crisis communications and have served the Consumer Product Safety Commission (CPSC) as an expert to determine ways in which the CPSC can increase the effectiveness of its product recall campaigns. More recently, I have been extensively involved as a contributing author for *"Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions"* to be published by Duke University School of Law later this year. I have worked with the Special Settlement Administrator's team to assist with the outreach strategy for the historic Auto Airbag Settlement, *In* re: *Takata Airbag Products Liability Litigation* MDL 2599.

6. I have served as an expert, with day-to-day operational responsibilities, directly responsible for the design and implementation of hundreds of class action notice programs, some of which are the largest and most complex programs ever implemented in both the United States and in Canada. My work includes a wide range of class actions and regulatory and consumer matters that include product liability, construction defect, antitrust, asbestos, medical, pharmaceutical, human rights, civil rights,

---

[1] Notice Checklist and Plain Language Guide (2010) ("Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide").

telecommunications, media, environmental, securities, banking, insurance and bankruptcy.

7.    As further reference, in evaluating the adequacy and effectiveness of my notice programs, courts have repeatedly recognized my work as an expert.  For example, in:

(a)    *Carter v Forjas Taurus S.S., Taurus International Manufacturing, Inc.,* Case No. 1:13-CV-24583 PAS (S.D. Fl. 2016). In her Final Order and Judgment Granting Plaintiffs Motion for Final Approval of Class Action Settlement, the Honorable Patricia Seitz stated:

*"The Court considered the extensive experience of Jeanne C. Finegan and the notice program she developed. ...There is no national firearms registry and Taurus sale records do not provide names and addresses of the ultimate purchasers... Thus the form and method used for notifying Class Members of the terms of the Settlement was the best notice practicable. ...The court-approved notice plan used peer-accepted national research to identify the optimal traditional, online, mobile and social media platforms to reach the Settlement Class Members."*

8.    Additionally, in the January 20, 2016, Transcript of Class Notice Hearing, p. 5 Judge Seitz, gave accolades to Ms. Finegan, noting:

*"I would like to compliment Ms. Finegan and her company because I was quite impressed with the scope and the effort of communicating with the Class."*

(b)    *In Re:  Blue Buffalo Company, Ltd., Marketing and Sales Practices Litigation,* Case No. 4:14-MD-2562 RWS (E.D. Mo. 2015), (Hearing for Final Approval, May 19, 2016 transcript p. 49).  During the Hearing for Final Approval, the Honorable Rodney Sippel said:

*"It is my finding that notice was sufficiently provided to class members in the manner directed in my preliminary approval order and that notice met all applicable requirements of due process and any other applicable law and considerations."*

(c)    *In re: Skechers Toning Shoes Products Liability Litigation*, No. 3:11-MD-2308-TBR (W.D. Ky. 2012). In his Final Order and Judgment granting the Motion for Preliminary Approval of Settlement, the Honorable Thomas B. Russell stated:

*"... The comprehensive nature of the class notice leaves little doubt that, upon receipt, class members will be able to make an informed and intelligent decision about participating in the settlement."*

(d)    ***Quinn v. Walgreen Co., Wal-Mart Stores Inc.,*** **7:12 CV-8187-VB** (S.D.N.Y.) (Jt Hearing for Final App, March. 5, 2015, transcript page 40-41). During the Hearing on Final Approval of Class Action, the Honorable Vincent L. Briccetti gave accolades to Ms. Finegan, noting:

*"The notice plan was the best practicable under the circumstances. ... [and] the proof is in the pudding. ... So the notice has reached a lot of people and a lot of people have made claims."*

(e)    ***DeHoyos, et al. v. Allstate Ins. Co.,*** **No. SA-01-CA-1010** (W.D. Tx. 2001). In the Amended Final Order and Judgment Approving Class Action Settlement, the Honorable Fred Biery stated:

*"[T]he undisputed evidence shows the notice program in this case was developed and implemented by a nationally recognized expert in class action notice programs. ... This program was vigorous and specifically structured to reach the African-American and Hispanic class members. Additionally, the program was based on a scientific methodology which is used throughout the advertising industry and which has been routinely embraced routinely [sic] by the Courts. Specifically, in order to reach the identified targets directly and efficiently, the notice program utilized a multi-layered approach which included national magazines; magazines specifically appropriate to the targeted audiences; and newspapers in both English and Spanish."*

9.    Additionally, I have published extensively on various aspects of legal noticing, including the following publications and articles:

(a)    Author, "Creating a Class Notice Program that Satisfies Due Process" Law360 New York (February 13, 2018 12:58 PM ET).

(b)    Author, "3 Considerations for Class Action Notice Brand Safety," Law360 New York (October 2, 2017 12:24 PM ET).

(c)    Author, "What Would Class Action Reform Mean for Notice?" Law360, New York, (April 13, 2017 11:50 AM ET).

(d)    Author, "Bots Can Silently Steal your Due Process Notice." Wisconsin Law Journal, April 2017.

(e)    Author, "*Don't Turn a Blind Eye to Bots.* Ad Fraud and Bots are a Reality of the Digital Environment." LinkedIn article March 6, 2107.

(f)    Co-Author, "Modern Notice Requirements Through the Lens of Eisen and Mullane" – *Bloomberg BNA Class Action Litigation Report.* 17 CLASS 1077. (October 14, 2016).

(g)     Author, "Think All Internet Impressions are the Same? Think Again" – Law360.com, New York (March 16, 2016).

(h)     Author, "Why Class Members Should See An Online Ad More Than Once" – Law360.com, New York (December 3, 2015).

(i)      Author, 'Being 'Media-Relevant' — What It Means And Why It Matters - Law360.com, New York (September 11, 2013, 2:50 PM ET).

(j)     Co-Author, "New Media Creates New Expectations for Bankruptcy Notice Programs," ABI Journal, Vol. XXX, No 9, November 2011.

(k)     Quoted Expert, "Effective Class Action Notice Promotes Access to Justice: Insight from a New U.S. Federal Judicial Center Checklist," Canadian Supreme Court Law Review, (2011), 53 S.C.L.R. (2d).

(l)     Co-Author, with Hon. Dickran Tevrizian, "Expert Opinion: It's More Than Just a Report…Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape," BNA Class Action Litigation Report, 12 CLASS 464, 5/27/11.

(m)     Co-Author, with Hon. Dickran Tevrizian, "Your Insight: It's More Than Just a Report…Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape, TXLR, Vol. 26, No. 21, 5/26/2011.

(n)     Author, Five Key Considerations for a Successful International Notice Program, BNA Class Action Litigation Report, 4/9/10 Vol. 11, No. 7 p. 343.

(o)     Quoted: Technology Trends Pose Novel Notification Issues for Class Litigators, BNA Electronic Commerce and Law Report, 15, ECLR 109, 1/27/10.

(p)     Author, Legal Notice: R U ready 2 adapt?  BNA Class Action Litigation Report, Vol. 10, No. 14, 7/24/2009, pp. 702-703.

(q)     Author, On Demand Media Could Change the Future of Best Practicable Notice, BNA Class Action Litigation Report, Vol. 9, No. 7, 4/11/2008, pp. 307-310.

(r)     Quoted in, Warranty Conference: Globalization of Warranty and Legal Aspects of Extended Warranty, Warranty Week, February 28, 2007, available at www.warrantyweek.com/archive/ww20070228.html.

(s)     Co-Author, Approaches to Notice in State Court Class Actions, For The Defense, Vol. 45, No. 11, November, 2003.

(t)     Author, The Web Offers Near, Real-Time Cost Efficient Notice, American Bankruptcy Institute Journal, Vol. XXII, No. 5, 2003.

(u)     Author, Determining Adequate Notice in Rule 23 Actions, For The Defense, Vol. 44, No. 9, September, 2002.

(v)     Co-Author, The Electronic Nature of Legal Noticing, American Bankruptcy Institute Journal, Vol. XXI, No. 3, April, 2002.

(w)     Author, Three Important Mantras for CEO's and Risk Managers in 2002, International Risk Management Institute, irmi.com/, January, 2002.

(x)     Co-Author, Used the Bat Signal Lately, The National Law Journal, Special Litigation Section, February 19, 2001.

(y)     Author, How Much is Enough Notice, Dispute Resolution Alert, Vol. 1, No. 6, March, 2001.

(z)     Author, High-Profile Product Recalls Need More Than the Bat Signal, International Risk Management Institute, irmi.com/, July 2001.

(aa)    Author, The Great Debate - How Much is Enough Legal Notice? American Bar Association -- Class Actions and Derivatives Suits Newsletter, Winter 1999.

(bb)    Author, What are the best practicable methods to give notice? Georgetown University Law Center Mass Tort Litigation Institute, CLE White Paper: Dispelling the communications myth -- A notice disseminated is a notice communicated, November 1, 2001.

10.     In addition, I have lectured or presented extensively on various aspects of legal noticing.  A sample list includes the following:

a) American Bar Association Faculty Panelist, 4th Annual Western Regional CLE Class Actions: "Big Brother, Information Privacy, and Class Actions: How Big Data and Social Media are Changing the Class Action Landscape," San Francisco, CA, June, 2017.

b) Miami Law Class Action & Complex Litigation Forum, Faculty Panelist, "Settlement and Resolution of Class Actions." Miami. FL, December 2, 2016.

c) The Knowledge Group, Faculty Panelist, "Class Action Settlements: Hot Topics 2016 and Beyond," Live Webcast, www.theknowledgegroup.org/, October 2016.

d) BA National Symposium, Faculty Panelist, "Ethical Considerations in Settling Class Actions," New Orleans, LA March 2016.

e) SF Banking Attorney Association, Speaker, "How a Class Action Notice can Make or Break your Client's Settlement," San Francisco, CA May 2015.

f) Perrin Class Action Conference, Faculty Panelist, "Being Media Relevant, What it Means and Why It Maters – The Social Media Evolution: Trends Challenges and Opportunities," Chicago, IL May 2015

g) Bridgeport Continuing Ed. Faculty Panelist, "Media Relevant in the Class Notice Context," April 2014.

h) CASD 5th Annual Speaker, "The Impact of Social Media on Class Action Notice." Consumer Attorneys of San Diego Class Action Symposium, San Diego, California, September 2012.

i) Law Seminars International, Speaker, "Class Action Notice: Rules and Statutes Governing FRCP (b)(3) Best Practicable… What constitutes a best practicable notice? What practitioners and courts should expect in the new era of online and social media." Chicago, IL, October 2011.

(j) CLE International, Faculty Panelist, Building a Workable Settlement Structure, CLE International, San Francisco, California May, 2011.

(k) Consumer Attorneys of San Diego (CASD), Faculty Panelist, "21st Century Class Notice and Outreach," 2nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2010.

(l) Consumer Attorneys of San Diego (CASD), Faculty Panelist, "The Future of Notice," 2nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2009.

(m) American Bar Association, Speaker, 2008 Annual Meeting, "Practical Advice for Class Action Settlements: The Future of Notice In the United States and Internationally – Meeting the Best Practicable Standard."

(n) American Bar Association, Section of Business Law Business and Corporate Litigation Committee – Class and Derivative Actions Subcommittee, New York, NY, August 2008.

(o) Faculty Panelist, Women Lawyers Association of Los Angeles (WLALA) CLE Presentation, "The Anatomy of a Class Action." Los Angeles, CA, February 2008.

(p) Faculty Panelist, Practicing Law Institute (PLI) CLE Presentation, 11th Annual Consumer Financial Services Litigation. Presentation: Class Action Settlement Structures -- "Evolving Notice Standards in the Internet Age." New

York/Boston (simulcast) March, 2006; Chicago, April, 2006; and San Francisco, May 2006.

(q) Expert Panelist, U.S. Consumer Product Safety Commission. I was the only legal notice expert invited to participate as an expert to the Consumer Product Safety Commission to discuss ways in which the CPSC could enhance and measure the recall process. As an expert panelist, I discussed how the CPSC could better motivate consumers to take action on recalls and how companies could scientifically measure and defend their outreach efforts. Bethesda, MD, September 2003.

(r.) Expert Speaker, American Bar Association. Presentation: "How to Bullet-Proof Notice Programs and What Communication Barriers Present Due Process Concerns in Legal Notice," ABA Litigation Section Committee on Class Actions & Derivative Suits, Chicago, August 6, 2001.

11.     I have particularly relevant experience successfully implementing similar Court Approved matters related to athletic footwear class action settlements, two of which also involved parallel Federal Trade Commission enforcement actions, including a previous settlement for New Balance.

*In re: Skechers Toning Shoes Products Liability Litigation*, No. 3:11-MD-2308-TBR (W.D. Ky. 2012). In his Final Order and Judgment granting the Motion for Preliminary Approval of Settlement, the Honorable Thomas B. Russell stated:

… The comprehensive nature of the class notice leaves little doubt that, upon receipt, class members will be able to make an informed and intelligent decision about participating in the settlement.

*In re: Reebok Easytone Litigation*, No. 10-CV-11977 (D. MA. 2011). The Honorable F. Dennis Saylor IV stated in the Final Approval Order:

The Court finds that the dissemination of the Class Notice and [Ms. Finegan's] Declaration and the notice dissemination methodology implemented pursuant to the Settlement Agreement and this Court's

Preliminary Approval Order... constituted the best practicable notice to Class Members under the circumstances of the Actions.

*Pashmova v. New Balance Athletic Shoes, Inc.*, 1:11-cv-10001-LTS (D. Mass.). The Honorable Leo T. Sorokin stated in the Final Approval Order:

The Class Notice, the Summary Settlement Notice, the web site, and all other notices in the Settlement Agreement and the Declaration of [Ms Finegan], and the notice methodology implemented pursuant to the Settlement Agreement: ... met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 28 U.S.C. § 1715, and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices.

12.     A comprehensive description of my credentials and experience that qualify me to provide expert opinions on the adequacy of class action notice programs is attached as **Exhibit A**.

## NOTICE PROGRAM SUMMARY

13.     This notice program is designed to inform Class Members of the proposed class action settlement between Plaintiffs and Defendants as described in the Settlement Agreement.  In the Settlement Agreement, the class is:

All persons who, during the Class Period, purchased any and all "Made in USA" Shoes from New Balance and/or its Authorized Retailers, in California.  Excluded from the Class are: (a) New Balance's Board members or employees, including its attorneys; (b) any persons who purchased "Made in USA" shoes for purposes of resale; (c) distributors or re-sellers of the "Made in USA" Shoes; (d) the judge and magistrate judge presiding over the Action and their immediate families; (e) governmental entities; and (f) persons or entities who or which timely and properly exclude themselves from the Class as provided in this Agreement.

14.     The proposed notice program includes the following components:

- CAFA Notice to appropriate state and federal government officials;

- Direct e-mail or first-class U.S. mail notice to reasonably and readily identifiable Class Members;;

- Publication in the Los Angeles Times, published 4 times weekly on Sundays, covering a one month period.

- Online display banner advertising specifically targeted to reach Class Members;

- A press release (California and California Hispanic Newslines);

- Social media through Facebook and Instagram;

- An informational website, on which the notices and other important Court documents will be posted; and

- A toll-free information line, by which Class Members can call 24/7 for more information about the Settlement, including, but not limited to, requesting copies of the Long Form Notice or Claim Form.

## CAFA

15.     I have been informed by Defendant's Counsel that New Balance will provide notice of the proposed Settlement under CAFA 28 U.S.C. § 1715(b) to appropriate state and federal government officials.

## DIRECT NOTICE

16.     Heffler Claims will send direct notice to approximately 56,000 Class Members through email addresses provided by New Balance. Using information obtained from previous online purchase records, direct email notice will be sent to approximately 8% of the Class, which is estimated not to exceed 1,000,000 Class Members. In the event emailed notice receives a hard bounce and is undeliverable, a postcard Notice will be re-mailed via U.S. First Class Mail to those for whom the Defendant has a physical address on record. Upon completion of these duties, Heffler will provide a detailed report on the results of these efforts, which will be filed with this Court upon completion of the Notice Plan.

## METHODOLOGY FOR PUBLICATION/INTERNET NOTICE

17.     To appropriately design and target the publication component of the notice program, HF Media utilized a methodology accepted by the advertising industry and embraced by courts in the United States.

18.     Accordingly, we are guided by well-established principles of communication and utilize best-in-class nationally syndicated media research data provided by GfK Mediamark Research and Intelligence, LLC,[2] and online measurement currency comScore[3], among others, to provide media consumption habits and audience delivery verification of the potentially affected population. These data resources are used by advertising agencies nationwide as the basis to select the most appropriate media to reach specific target audiences. The resulting key findings are instrumental in our selection of media channels and outlets for determining the estimated net audience reached through this legal notice program. Specifically, this research identifies which media channels are favored by the target audience (*i.e.*, the Class Members). For instance, browsing behaviors on the Internet, social media channels that are used, and which magazines Class Members are reading.

19.     For this program, HF Media employs the best-in-class tools and technology in order to appropriately target Class Members and appropriately measure and validate audience delivery using Media Ratings Counsel accepted third-party validation of all media. By utilizing media research tools such as GfK Mediamark Research and Intelligence, LLC and comScore, we can create target audience characteristics or segments, and then select the most appropriate media and communication methods to best reach them.

20.     This media research technology allows us to fuse data and accurately report to the Court the percentage of the target audience that will be reached by the notice component and how many times the target audience had the opportunity to see the message. In advertising, this is commonly referred to as a "Reach and Frequency" analysis, where "Reach" refers to the estimated percentage of the unduplicated audience exposed to the campaign, and "Frequency" refers to how many times, on average, the

---

[2] GfK MRI's *Survey of the American Consumer®* ("MRI") is the industry standard for magazine audience ratings in the U.S. and is used in the majority of media and marketing agencies in the country. MRI provides comprehensive reports on demographic, lifestyle, product usage and media exposure.

[3] comScore is a global Internet information provider on which leading companies and advertising agencies rely for consumer behavior insight and Internet usage data. comScore maintains a proprietary database of more than 2 million consumers who have given comScore permission to monitor their browsing and transaction behavior, including online and offline purchasing. This data includes and fuses 1st party, (website data), second party (data shared by websites for marketing purposes) and 3rd party data, tied to offline purchasing behavior.

target audience had the opportunity to see the message. The calculations are used by advertising and communications firms worldwide, and have become a critical element to help provide the basis for determining adequacy of notice in class actions.

21.     Additionally, we have been the first notice experts to actively monitor, mitigate and cull non-human (ad fraud bot traffic) from digital notice programs. Consistent with our recent successfully implemented court approved notice programs for *Landes v. Sony Mobile Communications* Case No. 2:17-cv-2264-JFB-SL (E.D.N.Y.), and *N.P. v Standard Innovation Corp.,* Case No. 1:16-cv-8655 (N.D. Ill.), we will take active steps on multiple levels to monitor, mitigate and adjust for this type of traffic. This non-human traffic will be identified and culled from our final reach calculations reported to the court.

## TARGET AUDIENCE MEDIA USE AND KEY INSIGHTS

22.     According to nationally syndicated media research data provided by GfK Mediamark Research and Intelligence, LLC, this audience is heavily online with nearly 89 percent using the internet over the last 30 days and 79 percent using their smartphone to go online. Additionally, nearly 80 percent have visited a social website such as Facebook in the last 30 days.

## PUBLICATION ELEMENTS - INTERNET

23.     Here, HF Media will incorporate the most cutting edge data and technology to appropriately deliver ads to people who have purchased New Balance Shoes who live in California. HF Media intends to serve over 14 million highly targeted online and social media impressions for this campaign. To ensure the highest degree of quality advertising inventory, HF media will employ, among other tactics, hand-selected whitelists of pre-approved and vetted websites for this campaign and actively monitor for ad fraud in multiple layers, including click fraud and impression fraud. This campaign targets individuals who fit the primary demographic profile of New Balance purchasers, targeting California adults 35+ with a household income of $75k+ across multiple exchanges as well as New Balance shoe purchasers in California. Based on insights provided by our media research, we are including the same keywords and search phrases

that New Balance has previously selected to market this product. In consideration of the demographics, online display ads will run in English and Spanish. Additionally, the notice program will employ social media platforms Facebook and Instagram. Newsfeed ads will target followers of New Balance's Facebook page who live in California and California adults 35+ with a household income of $75k+. The program will also include retargeting, or reminders to those who visit the settlement website, but did not complete a claim.

## PRINT

24.    Our research indicates that the Los Angeles Times ("LAT") is the most efficient print title with 4 insertions providing excellent target audience reach. In fact, the LAT far outstrips any other print title in reader inclination or index[4]. Consumers who live in California and purchase New Balance are an order of magnitude more likely than the average person to read the paper. As noted above, the print newspaper buy is expanded through the Los Angeles Times digital website which is viewed by consumers throughout the state. The summary notice will appear as a 1/8th page ad unit and will be placed in 4 consecutive Sunday issues of the paper (not in classifieds). The print ad will include a Spanish sub headline directing Spanish speakers to the website for more information.

## PRESS RELEASE

25.    A news release will be released over PR Newswire's California and California Hispanic Newslines. PR Newswire delivers to thousands of print and broadcast newsrooms nationwide, as well as websites, databases and online services including featured placement in news sections of leading portals

## MEDIA MONITORING

26.    HF Media intends to monitor various media channels for subsequent news articles and various social mentions as a result of the press release efforts. A complete

---

[4] An index is a measure of inclination. An index of 130 would mean that the audience is 30 percent more likely than the average person to read or watch a media channel.

report on the results will be filed with the Court upon completion of the notice program.

## OFFICIAL SETTLEMENT WEBSITE

27.    An informational website will be established and maintained by the Administrator.

28.    The website will serve as a "landing page for the banner advertising," where Class Members may get information about the Settlement and obtain and/or submit a Claim Form, along with other information which includes information about the class action, their rights, download the Long Form Notice, the Claim Form, and related information, including the Settlement Agreement, Court Orders, and Plaintiff's Motion for Approval of Fees, Expenses, and Incentive Awards.

## TOLL FREE INFORMATION LINE

29.    Additionally, the Administrator will establish and maintain a 24-hour toll-free Interactive Voice Response ("IVR") telephone line, where callers may obtain information about the class action.

## CONCLUSION

30.    In my opinion, the outreach efforts described above reflect a particularly appropriate, highly targeted and contemporary way to employ notice to this class. Through a multi-media channel approach to notice, which employs direct notice, digital, social and mobile media, an estimated 70 percent of targeted Class Members will be reached by the notice program, on average, 4.1 times. In my opinion, the efforts to be used in this proposed notice program are of the highest modern communication standards, are reasonably calculated to provide notice, and are consistent with best practicable court-approved notice programs in similar matters and the Federal Judicial Center's guidelines concerning appropriate reach.

31.     I declare under the penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.  Executed on April 23 2018 in Tigard, Oregon.

Jeanne C. Finegan, APR

# Exhibit A



# JEANNE C. FINEGAN, APR

### BIOGRAPHY



Jeanne Finegan, APR, is President and Chief Media Officer of HF Media, LLC. (a division of Heffler Claims Group), named by *Diversity Journal* as one of the "Top 100 Women Worth Watching," has more than 30 years of communications and advertising experience and is a distinguished legal notice and communications expert. During her tenure, she has planned and implemented over 1,000 high-profile, complex legal notice communication programs. She is a recognized notice expert in both the United States and in Canada, with extensive international notice experience spanning more than 140 countries and over 40 languages.

Ms. Finegan has lectured, published and has been cited extensively on various aspects of legal noticing, product recall and crisis communications. She has served the Consumer Product Safety Commission (CPSC) as an expert to determine ways in which the Commission can increase the effectiveness of its product recall campaigns. Further, she has planned and implemented large-scale government enforcement notice programs for the Federal Trade Commission (FTC) and the Securities and Exchange Commission (SEC). More recently, she has been extensively involved as a contributing author for *"Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions"* to be published by Duke University School of Law in 2018. Further, she has worked with the Special Settlement Administrator's team to assist with the outreach strategy for the historic Auto Airbag Settlement, In re: *Takata Airbag Products Liability Litigation* MDL 2599.

Ms. Finegan is accredited in Public Relations (APR) by the Universal Accreditation Board, which is a program administered by the Public Relations Society of America (PRSA), and is also a recognized member of the Canadian Public Relations Society (CPRS). She has served on examination panels for APR candidates and worked *pro bono* as a judge for prestigious PRSA awards.

Ms. Finegan has provided expert testimony before Congress on issues of notice, and expert testimony in both state and federal courts regarding notification campaigns. She has conducted numerous media audits of proposed notice programs to assess the adequacy of those programs under Fed R. Civ. P. 23(c)(2) and similar state class action statutes.

She was an early pioneer of plain language in notice (as noted in a RAND study,[1]) and continues to set the standard for modern outreach as the first notice expert to integrate social and mobile media into court approved legal notice programs.

---

1 Deborah R. Hensler et al., CLASS ACTION DILEMAS, PURSUING PUBLIC GOALS FOR PRIVATE GAIN. RAND (2000).



In the course of her class action experience, courts have recognized the merits of, and admitted expert testimony based on, her scientific evaluation of the effectiveness of notice plans. She has designed legal notices for a wide range of class actions and consumer matters that include product liability, construction defect, antitrust, medical/pharmaceutical, human rights, civil rights, telecommunication, media, environment, government enforcement actions, securities, banking, insurance, mass tort, restructuring and product recall.

<u>**JUDICIAL COMMENTS AND LEGAL NOTICE CASES**</u>

In evaluating the adequacy and effectiveness of Ms. Finegan's notice campaigns, courts have repeatedly recognized her excellent work. The following excerpts provide some examples of such judicial approval.

***Carter v Forjas Taurus S.S., Taurus International Manufacturing***, Inc., Case No. 1:13-CV-24583 PAS (S.D. Fl. 2016). In her Final Order and Judgment Granting Plaintiffs Motion for Final Approval of Class Action Settlement, the Honorable Patricia Seitz stated:

> *The Court considered the extensive experience of Jeanne C. Finegan and the notice program she developed. …There is no national firearms registry and Taurus sale records do not provide names and addresses of the ultimate purchasers… Thus the form and method used for notifying Class Members of the terms of the Settlement was the best notice practicable. …The court-approved notice plan used peer-accepted national research to identify the optimal traditional, online, mobile and social media platforms to reach the Settlement Class Members.*

Additionally, in January 20, 2016, Transcript of Class Notice Hearing, p. 5 Judge Seitz, gave accolades to Ms. Finegan, noting:

> *I would like to compliment Ms. Finegan and her company because I was quite impressed with the scope and the effort of communicating with the Class.*

***Cook et. al v. Rockwell International Corp. and the Dow Chemical Co,*** *No. 90-cv-00181- KLK (D.Colo. 2017)., aka, Rocky Flats Nuclear Weapons Plant Contamination***.** In the Order Granting Final Approval, dated April 28, 2017, p.3, the Honorable John L. Kane said:

> *The Court-approved Notice Plan, which was successfully implemented by [HF Media- emphasis added] (see Doc. 2432), constituted the best notice practicable under the circumstances. In making this determination, the Court finds that the Notice Plan that was implemented, as set forth in Declaration of Jeanne C. Finegan, APR Concerning Implementation and Adequacy of Class Member Notification (Doc. 2432), provided for individual notice to all members of the Class whose identities and addresses were identified through reasonable efforts, … and a comprehensive national publication notice program that included, inter alia, print, television, radio and*



*internet banner advertisements. …Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, the Court finds that the Notice Plan provided the best notice practicable to the Class.*

***Warner et al. v. Toyota Motor Sales, U.S.A. Inc., Case No 2:15-cv-02171-FMO FFMx (C.D. Cal. 2017).*** In the Order Re: Final Approval of Class Action Settlement; Approval of Attorney's Fees, Costs & Service Awards, dated May 21, 2017, the Honorable Fernanedo M. Olguin stated:

> *Finegan, the court-appointed settlement notice administrator, has implemented the mutliprong notice program. …the court finds that the class notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the class members' right to exclude themselves from the action, and their right to object to the proposed settlement. (See Dkt. 98, PAO at 25-28).*

***Michael Allagas, et al., v. BP Solar International, Inc., et al., BP Solar Panel Settlement***, Case No. 3:14-cv-00560- SI (N.D. Cal., San Francisco Div. 2016). In the Order Granting Final Approval, Dated December 22, 2016, The Honorable Susan Illston stated:

> *Class Notice was reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice; and d. fully satisfied the requirements of the Federal Rules of Civil Procedure, including Fed. R. Civ. P. 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law*.

***In re: Skechers Toning Shoes Products Liability Litigation***, No. 3:11-MD-2308-TBR (W.D. Ky. 2012). In his Final Order and Judgment granting the Motion for Preliminary Approval of Settlement, the Honorable Thomas B. Russell stated:

> *… The comprehensive nature of the class notice leaves little doubt that, upon receipt, class members will be able to make an informed and intelligent decision about participating in the settlement.*

***Brody v. Merck & Co., Inc., et al,*** No. 3:12-cv-04774-PGS-DEA (N.J.) (Jt Hearing for Prelim App, Sept. 27, 2012, transcript page 34). During the Hearing on Joint Application for Preliminary Approval of Class Action, the Honorable Peter G. Sheridan praised Ms. Finegan, noting:

> *Ms. Finegan did a great job in testifying as to what the class administrator will do. So, I'm certain that all the class members or as many that can be found, will be given some very adequate notice in which they can perfect their claim.*



*Quinn v. Walgreen Co., Wal-Mart Stores Inc.,* 7:12 CV-8187-VB (NYSD) (Jt Hearing for Final App, March. 5, 2015, transcript page 40-41). During the Hearing on Final Approval of Class Action, the Honorable Vincent L. Briccetti gave accolades to Ms. Finegan, noting:

> *"The notice plan was the best practicable under the circumstances. … [and] "the proof is in the pudding. This settlement has resulted in more than 45,000 claims which is 10,000 more than the Pearson case and more than 40,000 more than in a glucosamine case pending in the Southern District of California I've been advised about. So the notice has reached a lot of people and a lot of people have made claims."*

*In Re: TracFone Unlimited Service Plan Litigation, No. C-13-3440 EMC (ND Ca).* In the Final Order and Judgment Granting Class Settlement, July 2, 2015, the Honorable Edward M. Chen noted:

> *"…[D]epending on the extent of the overlap between those class members who will automatically receive a payment and those who filed claims, the total claims rate is estimated to be approximately 25-30%. This is an excellent result...*

*In Re: Blue Buffalo Company, Ltd., Marketing and Sales Practices Litigation*, Case No. 4:14-MD-2562 RWS (E.D. Mo. 2015), (Hearing for Final Approval, May 19, 2016 transcript p. 49). During the Hearing for Final Approval, the Honorable Rodney Sippel said:

> *It is my finding that notice was sufficiently provided to class members in the manner directed in my preliminary approval order and that notice met all applicable requirements of due process and any other applicable law and considerations.*

*DeHoyos, et al. v. Allstate Ins. Co.*, No. SA-01-CA-1010 (W.D.Tx. 2001). In the Amended Final Order and Judgment Approving Class Action Settlement, the Honorable Fred Biery stated:

> *[T]he undisputed evidence shows the notice program in this case was developed and implemented by a nationally recognized expert in class action notice programs. … This program was vigorous and specifically structured to reach the African-American and Hispanic class members. Additionally, the program was based on a scientific methodology which is used throughout the advertising industry and which has been routinely embraced routinely [sic] by the Courts. Specifically, in order to reach the identified targets directly and efficiently, the notice program utilized a multi-layered approach which included national magazines; magazines specifically appropriate to the targeted audiences; and newspapers in both English and Spanish.*

*In re: Reebok Easytone Litigation*, No. 10-CV-11977 (D. MA. 2011). The Honorable F. Dennis Saylor IV stated in the Final Approval Order:

> *The Court finds that the dissemination of the Class Notice, the publication of the Summary Settlement Notice, the establishment of a website containing settlement-related materials, the establishment of a toll-free telephone number, and all other*


*notice methods set forth in the Settlement Agreement and [Ms. Finegan's] Declaration and the notice dissemination methodology implemented pursuant to the Settlement Agreement and this Court's Preliminary Approval Order… constituted the best practicable notice to Class Members under the circumstances of the Actions.*

**Bezdek v. Vibram USA and Vibram FiveFingers** LLC, No 12-10513 (D. MA) The Honorable Douglas P. Woodlock stated in the Final Memorandum and Order:

*…[O]n independent review I find that the notice program was robust, particularly in its online presence, and implemented as directed in my Order authorizing notice. …I find that notice was given to the Settlement class members by the best means "practicable under the circumstances." Fed.R.Civ.P. 23(c)(2).*

***Gemelas v. The Dannon Company Inc.,*** No. 08-cv-00236-DAP (N.D. Ohio).  In granting final approval for the settlement, the Honorable Dan A. Polster stated:

*In accordance with the Court's Preliminary Approval Order and the Court-approved notice program, [Ms. Finegan] caused the Class Notice to be distributed on a nationwide basis in magazines and newspapers (with circulation numbers exceeding 81 million) specifically chosen to reach Class Members. … The distribution of Class Notice constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. 1715, and any other applicable law.*

***Pashmova v. New Balance Athletic Shoes, Inc.***, 1:11-cv-10001-LTS (D. Mass.). The Honorable Leo T. Sorokin stated in the Final Approval Order:

*The Class Notice, the Summary Settlement Notice, the web site, and all other notices in the Settlement Agreement and the Declaration of  [Ms Finegan], and the notice methodology implemented pursuant to the Settlement Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Actions, the terms of the Settlement and their rights under the settlement … met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 28 U.S.C. § 1715, and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices.*

***Hartless v. Clorox Company***, No. 06-CV-2705 (CAB) (S.D.Cal.).  In the Final Order Approving Settlement, the Honorable Cathy N. Bencivengo found:

*The Class Notice advised Class members of the terms of the settlement; the Final Approval Hearing and their right to appear at such hearing; their rights to remain in or opt out of the Class and to object to the settlement; the procedures for exercising such rights; and the binding effect of this Judgment, whether favorable or unfavorable, to the Class. The distribution of the notice to the Class constituted the best notice*



*practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. §1715, and any other applicable law.*

**McDonough et al v. Toys 'R' Us et al,** No. 09:-cv-06151-AB (E.D. Pa.).  In the Final Order and Judgment Approving Settlement, the Honorable Anita Brody stated:

*The Court finds that the Notice provided constituted the best notice practicable under the circumstances and constituted valid, due and sufficient notice to all persons entitled thereto.*

**In re: Pre-Filled Propane Tank Marketing & Sales Practices Litigation,** No. 4:09-md-02086-GAF (W.D. Mo.)  In granting final approval to the settlement, the Honorable Gary A. Fenner stated:

*The notice program included individual notice to class members who could be identified by Ferrellgas, publication notices, and notices affixed to Blue Rhino propane tank cylinders sold by Ferrellgas through various retailers. ... The Court finds the notice program fully complied with Federal Rule of Civil Procedure 23 and the requirements of due process and provided to the Class the best notice practicable under the circumstances.*

**Stern v. AT&T Mobility Wireless**, No. 09-cv-1112 CAS-AGR (C.D.Cal. 2009).  In the Final Approval Order, the Honorable Christina A. Snyder stated:

*[T]he Court finds that the Parties have fully and adequately effectuated the Notice Plan, as required by the Preliminary Approval Order, and, in fact, have achieved better results than anticipated or required by the Preliminary Approval Order.*

**In re: Processed Egg Prods. Antitrust Litig.**, MDL No. 08-md-02002 (E.D.P.A.).  In the Order Granting Final Approval of Settlement, Judge Gene E.K. Pratter stated:

*The Notice appropriately detailed the nature of the action, the Class claims, the definition of the Class and Subclasses, the terms of the proposed settlement agreement, and the class members' right to object or request exclusion from the settlement and the timing and manner for doing so.… Accordingly, the Court determines that the notice provided to the putative Class Members constitutes adequate notice in satisfaction of the demands of Rule 23.*

**In re Polyurethane Foam Antitrust Litigation**, 10- MD-2196 (N.D. OH). In the Order Granting Final Approval of Voluntary Dismissal and Settlement of Defendant Domfoam and Others, the Honorable Jack Zouhary stated:

*The notice program included individual notice to members of the Class who could be identified through reasonable effort, as well as extensive publication of a summary*


*notice. The Notice constituted the most effective and best notice practicable under the circumstances of the Settlement Agreements, and constituted due and sufficient notice for all other purposes to all persons and entities entitled to receive notice.*

***Rojas v Career Education Corporation***, No. 10-cv-05260 (N.D.E.D. IL) In the Final Approval Order dated October 25, 2012, the Honorable Virgina M. Kendall stated:

*The Court Approved notice to the Settlement Class as the best notice practicable under the circumstance including individual notice via U.S. Mail and by email to the class members whose addresses were obtained from each Class Member's wireless carrier or from a commercially reasonable reverse cell phone number look-up service, nationwide magazine publication, website publication, targeted on-line advertising, and a press release.  Notice has been successfully implemented and satisfies the requirements of the Federal Rule of Civil Procedure 23 and Due Process.*

***Golloher v Todd Christopher International, Inc. DBA Vogue International (Organix)***, *No. C 1206002 N.D CA*.  In the Final Order and Judgment Approving Settlement, the Honorable Richard Seeborg stated:

*The distribution of the notice to the Class constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. §1715, and any other applicable law.*

***Stefanyshyn v. Consolidated Industries***, No. 79 D 01-9712-CT-59 (Tippecanoe County Sup. Ct., Ind.). In the Order Granting Final Approval of Settlement, Judge Randy Williams stated:

*The long and short form notices provided a neutral, informative, and clear explanation of the Settlement. … The proposed notice program was properly designed, recommended, and implemented … and constitutes the "best practicable" notice of the proposed Settlement. The form and content of the notice program satisfied all applicable legal requirements. … The comprehensive class notice educated Settlement Class members about the defects in Consolidated furnaces and warned them that the continued use of their furnaces created a risk of fire and/or carbon monoxide. This alone provided substantial value.*

***McGee v. Continental Tire North America, Inc. et al***, No. 06-6234-(GEB) (D.N.J.).

*The Class Notice, the Summary Settlement Notice, the web site, the toll-free telephone number, and all other notices in the Agreement, and the notice methodology implemented pursuant to the Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Action, the terms of the settlement and their rights under the settlement, including, but not limited to, their right to object to*



*or exclude themselves from the proposed settlement and to appear at the Fairness Hearing; (c) were reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notification; and (d) met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 20 U.S.C. Sec. 1715, and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices,*

*Varacallo, et al. v. Massachusetts Mutual Life Insurance Company, et al*., No. 04-2702 (JLL) (D.N.J.).  The Court stated that:

[A]*ll of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices. … By working with a nationally syndicated media research firm, [Finegan's firm] was able to define a target audience for the MassMutual Class Members, which provided a valid basis for determining the magazine and newspaper preferences of the Class Members.  (Preliminary Approval Order at p. 9).  . . .  The Court agrees with Class Counsel that this was more than adequate.  (Id. at § 5.2).*

*In re: Nortel Network Corp., Sec. Litig.*, No. 01-CV-1855 (RMB) Master File No. 05 MD 1659 (LAP) (S.D.N.Y.).  Ms. Finegan designed and implemented the extensive United States and Canadian notice programs in this case.  The Canadian program was published in both French and English, and targeted virtually all investors of stock in Canada.  *See* www.nortelsecuritieslitigation.com.  Of the U.S. notice program, the Honorable Loretta A. Preska stated:

*The form and method of notifying the U.S. Global Class of the pendency of the action as a class action and of the terms and conditions of the proposed Settlement … constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.*

Regarding the B.C. Canadian Notice effort: *Jeffrey v. Nortel Networks*, [2007] BCSC 69 at para. 50, the Honourable Mr. Justice Groberman said:

*The efforts to give notice to potential class members in this case have been thorough. There has been a broad media campaign to publicize the proposed settlement and the court processes.  There has also been a direct mail campaign directed at probable investors.  I am advised that over 1.2 million claim packages were mailed to persons around the world.  In addition, packages have been available through the worldwide web site nortelsecuritieslitigation.com on the Internet.  Toll-free telephone lines have been set up, and it appears that class counsel and the Claims Administrator have received innumerable calls from potential class members. In short, all reasonable efforts have been made to ensure that potential members of the class have had notice*


*of the proposal and a reasonable opportunity was provided for class members to register their objections, or seek exclusion from the settlement.*

**Mayo v. Walmart Stores and Sam's Club**, No. 5:06 CV-93-R (W.D.Ky.).  In the Order Granting Final Approval of Settlement, Judge Thomas B. Russell stated:

> *According to defendants' database, the Notice was estimated to have reached over 90% of the Settlement Class Members through direct mail. The Settlement Administrator … has classified the parties' database as 'one of the most reliable and comprehensive databases [she] has worked with for the purposes of legal notice.'… The Court thus reaffirms its findings and conclusions in the Preliminary Approval Order that the form of the Notice and manner of giving notice satisfy the requirements of Fed. R. Civ. P. 23 and affords due process to the Settlement Class Members.*

**Fishbein v. All Market Inc**., (d/b/a **Vita Coco**) No. 11-cv-05580  (S.D.N.Y.).  In granting final approval of the settlement, the Honorable J. Paul Oetken stated:

> *"The Court finds that the dissemination of Class Notice pursuant to the Notice Program…constituted the best practicable notice to Settlement Class Members under the circumstances of this Litigation … and was reasonable and constituted due, adequate and sufficient notice to all persons entitled to such notice, and fully satisfied the requirements of the Federal Rules of Civil Procedure, including Rules 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable laws."*

**Lucas, et al. v. Kmart Corp**., No. 99-cv-01923 (D.Colo.), wherein the Court recognized Jeanne Finegan as an expert in the design of notice programs, and stated:

> *The Court finds that the efforts of the parties and the proposed Claims Administrator in this respect go above and beyond the "reasonable efforts" required for identifying individual class members under F.R.C.P. 23(c)(2)(B).*

***In re: Johns-Manville Corp.* (Statutory Direct Action Settlement, Common Law Direct Action and Hawaii Settlement)**, No 82-11656, 57, 660, 661, 665-73, 75 and 76 (BRL) (Bankr. S.D.N.Y.). The nearly half-billion dollar settlement incorporated three separate notification programs, which targeted all persons who had asbestos claims whether asserted or unasserted, against the Travelers Indemnity Company.  In the Findings of Fact and Conclusions of a Clarifying Order Approving the Settlements, slip op. at 47-48 (Aug. 17, 2004), the Honorable Burton R. Lifland, Chief Justice, stated:

> *As demonstrated by Findings of Fact (citation omitted), the Statutory Direct Action Settlement notice program was reasonably calculated under all circumstances to apprise the affected individuals of the proceedings and actions taken involving their interests, Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950), such*


*program did apprise the overwhelming majority of potentially affected claimants and far exceeded the minimum notice required. . . . The results simply speak for themselves.*

***Pigford v. Glickman and U.S. Department of Agriculture***, No. 97-1978. 98-1693 (PLF) (D.D.C.). This matter was the largest civil rights case to settle in the United States in over 40 years. The highly publicized, nationwide paid media program was designed to alert all present and past African-American farmers of the opportunity to recover monetary damages against the U.S. Department of Agriculture for alleged loan discrimination.  In his Opinion, the Honorable Paul L. Friedman commended the parties with respect to the notice program, stating;

> *The parties also exerted extraordinary efforts to reach class members through a massive advertising campaign in general and African American targeted publications and television stations. . . . The Court concludes that class members have received more than adequate notice and have had sufficient opportunity to be heard on the fairness of the proposed Consent Decree.*

***In re: Louisiana-Pacific Inner-Seal Siding Litig.***, Nos. 879-JE, and 1453-JE (D.Or.).  Under the terms of the Settlement, three separate notice programs were to be implemented at three-year intervals over a period of six years.  In the first notice campaign, Ms. Finegan implemented the print advertising and Internet components of the Notice program.  In approving the legal notice communication plan, the Honorable Robert E. Jones stated:

> *The notice given to the members of the Class fully and accurately informed the Class members of all material elements of the settlement…[through] a broad and extensive multi-media notice campaign.*

Additionally, with regard to the third-year notice program for Louisiana-Pacific, the Honorable Richard Unis, Special Master, commented that the notice was:

> *…well formulated to conform to the definition set by the court as adequate and reasonable notice.  Indeed, I believe the record should also reflect the Court's appreciation to Ms. Finegan for all the work she's done, ensuring that noticing was done correctly and professionally, while paying careful attention to overall costs.  Her understanding of various notice requirements under Fed. R. Civ. P. 23, helped to insure that the notice given in this case was consistent with the highest standards of compliance with Rule 23(d)(2).*

***In re: Expedia Hotel Taxes and Fees Litigation***, No. 05-2-02060-1 (SEA) (Sup. Ct. of Wash. in and for King County).  In the Order Granting Final Approval of Class Action Settlement, Judge Monica Benton stated:

> *The Notice of the Settlement given to the Class … was the best notice practicable under the circumstances.  All of these forms of Notice directed Class Members to a*



*Settlement Website providing key Settlement documents including instructions on how Class Members could exclude themselves from the Class, and how they could object to or comment upon the Settlement. The Notice provided due and adequate notice of these proceeding and of the matters set forth in the Agreement to all persons entitled to such notice, and said notice fully satisfied the requirements of CR 23 and due process.*

**Thomas A. Foster and Linda E. Foster v. ABTco Siding Litigation**, No. 95-151-M (Cir. Ct., Choctaw County, Ala.). This litigation focused on past and present owners of structures sided with Abitibi-Price siding. The notice program that Ms. Finegan designed and implemented was national in scope and received the following praise from the Honorable J. Lee McPhearson:

*The Court finds that the Notice Program conducted by the Parties provided individual notice to all known Class Members and all Class Members who could be identified through reasonable efforts and constitutes the best notice practicable under the circumstances of this Action. This finding is based on the overwhelming evidence of the adequacy of the notice program. … The media campaign involved broad national notice through television and print media, regional and local newspapers, and the Internet (see id. ¶¶9-11) The result: over 90 percent of Abitibi and ABTco owners are estimated to have been reached by the direct media and direct mail campaign.*

**Wilson v. Massachusetts Mut. Life Ins. Co.**, No. D-101-CV 98-02814 (First Judicial Dist. Ct., County of Santa Fe, N.M.). This was a nationwide notification program that included all persons in the United States who owned, or had owned, a life or disability insurance policy with Massachusetts Mutual Life Insurance Company and had paid additional charges when paying their premium on an installment basis. The class was estimated to exceed 1.6 million individuals. www.insuranceclassclaims.com. In granting preliminary approval to the settlement, the Honorable Art Encinias found:

*[T]he Notice Plan [is] the best practicable notice that is reasonably calculated, under the circumstances of the action. …[and] meets or exceeds all applicable requirements of the law, including Rule 1-023(C)(2) and (3) and 1-023(E), NMRA 2001, and the requirements of federal and/or state constitutional due process and any other applicable law.*

**Sparks v. AT&T Corp.**, No. 96-LM-983 (Third Judicial Cir., Madison County, Ill.). The litigation concerned all persons in the United States who leased certain AT&T telephones during the 1980's. Ms. Finegan designed and implemented a nationwide media program designed to target all persons who may have leased telephones during this time period, a class that included a large percentage of the entire population of the United States.
In granting final approval to the settlement, the Court found:

*The Court further finds that the notice of the proposed settlement was sufficient and furnished Class Members with the information they needed to evaluate whether to*



*participate in or opt out of the proposed settlement. The Court therefore concludes that the notice of the proposed settlement met all requirements required by law, including all Constitutional requirements.*

***In re: Georgia-Pacific Toxic Explosion Litig.***, No. 98 CVC05-3535 (Ct. of Common Pleas, Franklin County, Ohio).  Ms. Finegan designed and implemented a regional notice program that included network affiliate television, radio and newspaper.  The notice was designed to alert adults living near a Georgia-Pacific plant that they had been exposed to an air-born toxic plume and their rights under the terms of the class action settlement.  In the Order and Judgment finally approving the settlement, the Honorable Jennifer L. Bunner stated:

> *[N]otice of the settlement to the Class was the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The Court finds that such effort exceeded even reasonable effort and that the Notice complies with the requirements of Civ. R. 23(C).*

***In re: American Cyanamid***, No*.* CV-97-0581-BH-M (S.D.Al.).  The media program targeted Farmers who had purchased crop protection chemicals manufactured by American Cyanamid. In the Final Order and Judgment, the Honorable Charles R. Butler Jr. wrote:

> *The Court finds that the form and method of notice used to notify the Temporary Settlement Class of the Settlement satisfied the requirements of Fed. R. Civ. P. 23 and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all potential members of the Temporary Class Settlement.*

***In re: First Alert Smoke Alarm Litig.***, No. CV-98-C-1546-W (UWC) (N.D.Al.).  Ms. Finegan designed and implemented a nationwide legal notice and public information program.  The public information program ran over a two-year period to inform those with smoke alarms of the performance characteristics between photoelectric and ionization detection.  The media program included network and cable television, magazine and specialty trade publications.  In the Findings and Order Preliminarily Certifying the Class for Settlement Purposes, Preliminarily Approving Class Settlement, Appointing Class Counsel, Directing Issuance of Notice to the Class, and Scheduling a Fairness Hearing, the Honorable C.W. Clemon wrote that the notice plan:

> *…constitutes due, adequate and sufficient notice to all Class Members; and (v) meets or exceeds all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Alabama State Constitution, the Rules of the Court, and any other applicable law.*

***In re: James Hardie Roofing Litig.,*** No. 00-2-17945-65SEA (Sup. Ct. of Wash., King County). The nationwide legal notice program included advertising on television, in print and on the Internet.  The program was designed to reach all persons who own any structure with JHBP roofing products.  In the Final Order and Judgment, the Honorable Steven Scott stated:


*The notice program required by the Preliminary Order has been fully carried out… [and was] extensive. The notice provided fully and accurately informed the Class Members of all material elements of the proposed Settlement and their opportunity to participate in or be excluded from it; was the best notice practicable under the circumstances; was valid, due and sufficient notice to all Class Members; and complied fully with Civ. R. 23, the United States Constitution, due process, and other applicable law.*

*Barden v. Hurd Millwork Co. Inc., et al,* No. 2:6-cv-00046 (LA) (E.D.Wis.) (*"The Court approves, as to form and content, the notice plan and finds that such notice is the best practicable under the circumstances under Federal Rule of Civil Procedure 23(c)(2)(B) and constitutes notice in a reasonable manner under Rule 23(e)(1)."*)

*Altieri v. Reebok*, No. 4:10-cv-11977 (FDS) (D.C.Mass.) (*"The Court finds that the notices … constitute the best practicable notice... The Court further finds that all of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices."*)

*Marenco v. Visa Inc.,* No. CV 10-08022 (DMG) (C.D.Cal.) (*"[T]he Court finds that the notice plan…meets the requirements of due process, California law, and other applicable precedent. The Court finds that the proposed notice program is designed to provide the Class with the best notice practicable, under the circumstances of this action, of the pendency of this litigation and of the proposed Settlement's terms, conditions, and procedures, and shall constitute due and sufficient notice to all persons entitled thereto under California law, the United States Constitution, and any other applicable law."*)

*Palmer v. Sprint Solutions, Inc.,* No. 09-cv-01211 (JLR) (W.D.Wa.) (*"The means of notice were reasonable and constitute due, adequate, and sufficient notice to all persons entitled to be provide3d with notice."*)

*In re: Tyson Foods, Inc., Chicken Raised Without Antibiotics Consumer Litigation*, No. 1:08-md-01982 RDB (D. Md. N. Div.) (*"The notice, in form, method, and content, fully complied with the requirements of Rule 23 and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons entitled to notice of the settlement."*)

*Sager v. Inamed Corp. and McGhan Medical Breast Implant Litigation*, No. 01043771 (Sup. Ct. Cal., County of Santa Barbara) (*"Notice provided was the best practicable under the circumstances."*).

*Deke, et al. v. Cardservice Internat'l,* Case No. BC 271679, slip op. at 3 (Sup. Ct. Cal., County of Los Angeles) (*"The Class Notice satisfied the requirements of California Rules of Court 1856*


*and 1859 and due process and constituted the best notice practicable under the circumstances."*).

*Levine, et al. v. Dr. Philip C. McGraw, et al*., Case No. BC 312830 (Los Angeles County Super. Ct., Cal.) (*"[T]he plan for notice to the Settlement Class … constitutes the best notice practicable under the circumstances and constituted due and sufficient notice to the members of the Settlement Class … and satisfies the requirements of California law and federal due process of law."*).

*In re: Canadian Air Cargo Shipping Class Actions*,  Court File No. 50389CP, Ontario Superior Court of Justice, Supreme Court of British Columbia, Quebec Superior Court (*"I am satisfied the proposed form of notice meets the requirements of s. 17(6) of the CPA  and the proposed method of notice is appropriate."*).

*Fischer et al v. IG Investment Management, Ltd. et al*, Court File No. 06-CV-307599CP, Ontario Superior Court of Justice.

*In re: Vivendi Universal, S.A. Securities Litigation*, No. 02-cv-5571 (RJH)(HBP) (S.D.N.Y.).

*In re: Air Cargo Shipping Services Antitrust Litigation*, No. 06-MD-1775 (JG) (VV) (E.D.N.Y.).

*Berger, et al., v. Property ID Corporation, et al.*, No. CV 05-5373-GHK (CWx) (C.D.Cal.).

*Lozano v. AT&T Mobility Wireless*, No. 02-cv-0090 CAS (AJWx) (C.D.Cal.).

*Howard A. Engle, M.D., et al., v. R.J. Reynolds Tobacco Co., Philip Morris, Inc., Brown & Williamson Tobacco Corp.,* No. 94-08273 CA (22) (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

*In re: Royal Dutch/Shell Transport Securities Litigation,* No. 04 Civ. 374 (JAP) (Consolidated Cases) (D. N.J.).

*In re: Epson Cartridge Cases, Judicial Council Coordination Proceeding*, No. 4347 (Sup. Ct. of Cal., County of Los Angeles).

*UAW v. General Motors Corporation*, No: 05-73991 (E.D.MI).

*Wicon, Inc. v. Cardservice Intern'l, Inc.*, BC 320215 (Sup. Ct. of Cal., County of Los Angeles).

*In re: SmithKline Beecham Clinical Billing Litig.*, No. CV. No. 97-L-1230 (Third Judicial Cir., Madison County, Ill.).  Ms. Finegan designed and developed a national media and Internet site notification program in connection with the settlement of a nationwide class action concerning billings for clinical laboratory testing services.



***MacGregor v. Schering-Plough Corp.,*** No. EC248041 (Sup. Ct. Cal., County of Los Angeles).  This nationwide notification program was designed to reach all persons who had purchased or used an aerosol inhaler manufactured by Schering-Plough.  Because no mailing list was available, notice was accomplished entirely through the media program.

***In re: Swiss Banks Holocaust Victim Asset Litig.***, No. CV-96-4849 (E.D.N.Y.).  Ms. Finegan managed the design and implementation of the Internet site on this historic case.  The site was developed in 21 native languages.  It is a highly secure data gathering tool and information hub, central to the global outreach program of Holocaust survivors. www.swissbankclaims.com.

***In re: Exxon Valdez Oil Spill Litig.***, No. A89-095-CV (HRH) (Consolidated) (D. Alaska).  Ms. Finegan designed and implemented two media campaigns to notify native Alaskan residents, trade workers, fisherman, and others impacted by the oil spill of the litigation and their rights under the settlement terms.

***In re: Johns-Manville Phenolic Foam Litig.***, No. CV 96-10069 (D. Mass).  The nationwide multi-media legal notice program was designed to reach all Persons who owned any structure, including an industrial building, commercial building, school, condominium, apartment house, home, garage or other type of structure located in the United States or its territories, in which Johns-Manville PFRI was installed, in whole or in part, on top of a metal roof deck.

***Bristow v Fleetwood Enters Litig.***, No Civ 00-0082-S-EJL (D. Id).  Ms. Finegan designed and implemented a legal notice campaign targeting present and former employees of Fleetwood Enterprises, Inc., or its subsidiaries who worked as hourly production workers at Fleetwood's housing, travel trailer, or motor home manufacturing plants. The comprehensive notice campaign included print, radio and television advertising.

***In re: New Orleans Tank Car Leakage Fire Litig.***, No 87-16374 (Civil Dist. Ct., Parish of Orleans, LA) (2000). This case resulted in one of the largest settlements in U.S. history.  This campaign consisted of a media relations and paid advertising program to notify individuals of their rights under the terms of the settlement.

***Garria Spencer v. Shell Oil Co.***, No. CV 94-074(Dist. Ct., Harris County, Tex.).  The nationwide notification program was designed to reach individuals who owned real property or structures in the United States, which contained polybutylene plumbing with acetyl insert or metal insert fittings.

***In re: Hurd Millwork Heat Mirror™ Litig.***, No. CV-772488 (Sup. Ct. of Cal., County of Santa Clara).  This nationwide multi-media notice program was designed to reach class members with failed heat mirror seals on windows and doors, and alert them as to the actions that they needed to take to receive enhanced warranties or window and door replacement.

***Laborers Dist. Counsel of Alabama Health and Welfare Fund v. Clinical Lab. Servs., Inc***, No. CV–97-C-629-W (N.D. Ala.). Ms. Finegan designed and developed a national media and Internet



site notification program in connection with the settlement of a nationwide class action concerning alleged billing discrepancies for clinical laboratory testing services.

*In re: StarLink Corn Prods. Liab. Litig.*, No. 01-C-1181 (N.D. Ill)..  Ms. Finegan designed and implemented a nationwide notification program designed to alert potential class members of the terms of the settlement.

*In re: MCI Non-Subscriber Rate Payers Litig.*, MDL Docket No. 1275, 3:99-cv-01275 (S.D.Ill.). The advertising and media notice program, found to be "more than adequate" by the Court, was designed with the understanding that the litigation affected all persons or entities who were customers of record for telephone lines presubscribed to MCI/World Com, and were charged the higher non-subscriber rates and surcharges for direct-dialed long distance calls placed on those lines. www.rateclaims.com.

*In re: Albertson's Back Pay Litig.*, No. 97-0159-S-BLW (D.Id.).  Ms. Finegan designed and developed a secure Internet site, where claimants could seek case information confidentially.

*In re: Georgia Pacific Hardboard Siding Recovering Program*, No. CV-95-3330-RG (Cir. Ct., Mobile County, Ala.).  Ms. Finegan designed and implemented a multi-media legal notice program, which was designed to reach class members with failed G-P siding and alert them of the pending matter. Notice was provided through advertisements, which aired on national cable networks, magazines of nationwide distribution, local newspaper, press releases and trade magazines.

*In re: Diet Drugs* (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig., Nos. 1203, 99-20593.  Ms. Finegan worked as a consultant to the National Diet Drug Settlement Committee on notification issues.  The resulting notice program was described and complimented at length in the Court's Memorandum and Pretrial Order 1415, approving the settlement,

*In re: Diet Drugs* (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig., 2000 WL 1222042, Nos. 1203, 99-20593 (E.D.Pa. Aug. 28, 2002).

Ms. Finegan designed the Notice programs for multiple state antitrust cases filed against the Microsoft Corporation.  In those cases, it was generally alleged that Microsoft unlawfully used anticompetitive means to maintain a monopoly in markets for certain software, and that as a result, it overcharged consumers who licensed its MS-DOS, Windows, Word, Excel and Office software. The multiple legal notice programs designed by Jeanne Finegan and listed below targeted both individual users and business users of this software.  The scientifically designed notice programs took into consideration both media usage habits and demographic characteristics of the targeted class members.

*In re: Florida Microsoft Antitrust Litig. Settlement*, No.  99-27340 CA 11 (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).



***In re: Montana Microsoft Antitrust Litig. Settlement***, No. DCV 2000 219 (First Judicial Dist. Ct., Lewis & Clark Co., Mt.).

***In re: South Dakota Microsoft Antitrust Litig. Settlement***, No. 00-235(Sixth Judicial Cir., County of Hughes, S.D.).

***In re: Kansas Microsoft Antitrust Litig. Settlement***, No. 99C17089 Division No. 15 Consolidated Cases (Dist. Ct., Johnson County, Kan.) ("The Class Notice provided was the best notice practicable under the circumstances and fully complied in all respects with the requirements of due process and of the Kansas State. Annot. §60-22.3.").

***In re: North Carolina Microsoft Antitrust Litig. Settlement***, No. 00-CvS-4073 (Wake) 00-CvS-1246 (Lincoln) (General Court of Justice Sup. Ct., Wake and Lincoln Counties, N.C.).

***In re: ABS II Pipes Litig.***, No. 3126 (Sup. Ct. of Cal., Contra Costa County). The Court approved regional notification program designed to alert those individuals who owned structures with the pipe that they were eligible to recover the cost of replacing the pipe.

***In re: Avenue A Inc. Internet Privacy Litig.***, No: C00-1964C (W.D. Wash.).

***In re: Lorazepam and Clorazepate Antitrust Litig.***, No. 1290 (TFH) (D.C.C.).

***In re: Providian Fin. Corp. ERISA Litig.***, No C-01-5027 (N.D. Cal.).

***In re: H & R Block., et al Tax Refund Litig.***, No. 97195023/CC4111 (MD Cir. Ct., Baltimore City).

***In re: American Premier Underwriters, Inc, U.S. Railroad Vest Corp.***, No. 06C01-9912 (Cir. Ct., Boone County, Ind.).

***In re: Sprint Corp. Optical Fiber Litig.***, No: 9907 CV 284 (Dist. Ct., Leavenworth County, Kan.)

***In re: Shelter Mutual Ins. Co. Litig.***, No. CJ-2002-263 (Dist.Ct., Canadian County. Ok).

***In re: Conseco, Inc. Sec. Litig.***, No: IP-00-0585-C Y/S CA (S.D. Ind.).

***In re: Nat'l Treasury Employees Union, et al.***, 54 Fed. Cl. 791 (2002).

***In re: City of Miami Parking Litig.***, Nos. 99-21456 CA-10, 99-23765 – CA-10 (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

***In re: Prime Co. Incorporated D/B/A/ Prime Co. Personal Comm.***, No. L 1:01CV658 (E.D. Tx.).

***Alsea Veneer v. State of Oregon A.A.***, No. 88C-11289-88C-11300.



## INTERNATIONAL EXPERIENCE

*Bell v. Canadian Imperial Bank of Commerce*, et al, Court File No.: CV-08-359335 (Ontario Superior Court of Justice); (2016).

*In re: Canadian Air Cargo Shipping Class Actions* (Ontario Superior Court of Justice, Court File No. 50389CP, Supreme Court of British Columbia.

*In re: Canadian Air Cargo Shipping Class Actions* Québec Superior Court).

*Fischer v. IG Investment Management LTD.*, No. 06-CV-307599CP (Ontario Superior Court of Justice).

*In Re Nortel I & II Securities Litigation*, Civil Action No. 01-CV-1855 (RMB), Master File No. 05 MD 1659 (LAP) (S.D.N.Y. 2006).

*Frohlinger v. Nortel Networks Corporation* et al., Court File No.: 02-CL-4605 (Ontario Superior Court of Justice).

*Association de Protection des Épargnants et Investissuers du Québec v. Corporation Nortel Networks*, No.: 500-06-0002316-017 (Superior Court of Québec).

*Jeffery v. Nortel Networks Corporation* et al., Court File No.: S015159 (Supreme Court of British Columbia).

*Gallardi v. Nortel Networks Corporation*, No. 05-CV-285606CP (Ontario Superior Court).

*Skarstedt v. Corporation Nortel Networks*, No. 500-06-000277-059 (Superior Court of Québec).


## SEC ENFORCEMENT NOTICE PROGRAM EXPERIENCE

*SEC v. Vivendi Universal, S.A., et al.,* Case No. 02 Civ. 5571 (RJH) (HBP) (S.D.N.Y.).
The Notice program included publication in 11 different countries and eight different languages.

*SEC v. Royal Dutch Petroleum Company*, No.04-3359 (S.D. Tex.)



**FEDERAL TRADE COMMISSION NOTICE PROGRAM EXPERIENCE**

*FTC v. TracFone Wireless, Inc.,* Case No. 15-cv-00392-EMC.

*FTC v. Skechers U.S.A., Inc.,* No. 1:12-cv-01214-JG (N.D. Ohio).

*FTC v. Reebok International Ltd.*, No. 11-cv-02046 (N.D. Ohio)

*FTC v. Chanery and RTC Research and Development LLC [Nutraquest]*, No :05-cv-03460 (D.N.J.)

**BANKRUPTCY EXPERIENCE**

Ms. Finegan has designed and implemented hundreds of domestic and international bankruptcy notice programs.  A sample case list includes the following:

*In re AMR Corporation [American Airlines], et al.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y.) *("due and proper notice [was] provided, and … no other or further notice need be provided.")*

*In re Jackson Hewitt Tax Service Inc.*, et al., No 11-11587 (Bankr. D.Del.) (2011). The debtors sought to provide notice of their filing as well as the hearing to approve their disclosure statement and confirm their plan to a large group of current and former customers, many of whom current and viable addresses promised to be a difficult (if not impossible) and costly undertaking. The court approved a publication notice program designed and implemented by Finegan and the administrator, that included more than 350 local newspaper and television websites, two national online networks (24/7 Real Media, Inc. and Microsoft Media Network), a website notice linked to a press release and notice on eight major websites, including CNN and Yahoo. These online efforts supplemented the print publication and direct-mail notice provided to known claimants and their attorneys, as well as to the state attorneys general of all 50 states. The *Jackson Hewitt* notice program constituted one of the first large chapter 11 cases to incorporate online advertising.

*In re: Nutraquest Inc.*, No. 03-44147 (Bankr. D.N.J.)

*In re: General Motors Corp. et al*, No. 09-50026 (Bankr. S.D.N.Y.).  This case is the 4th largest bankruptcy in U.S. history.   Ms. Finegan and her team worked with General Motors restructuring attorneys to design and implement the legal notice program.

*In re: ACandS, Inc.,* No. 0212687 (Bankr. D.Del.) (2007) (*"Adequate notice of the Motion and of the hearing on the Motion was given."*).

*In re: United Airlines*, No. 02-B-48191 (Bankr. N.D Ill.).  Ms. Finegan worked with United and its restructuring attorneys to design and implement global legal notice programs.  The notice was published in 11 countries and translated into 6 languages. Ms. Finegan worked closely with



legal counsel and UAL's advertising team to select the appropriate media and to negotiate the most favorable advertising rates. www.pd-ual.com.

*In re: Enron*, No. 01-16034 (Bankr. S.D.N.Y.).  Ms. Finegan worked with Enron and its restructuring attorneys to publish various legal notices.

*In re: Dow Corning,* No. 95-20512 (Bankr. E.D. Mich.).  Ms. Finegan originally designed the information website.  This Internet site is a major information hub that has various forms in 15 languages.

*In re: Harnischfeger Inds.*, No. 99-2171 (RJW) Jointly Administered (Bankr. D. Del.).  Ms. Finegan designed and implemented 6 domestic and international notice programs for this case. The notice was translated into 14 different languages and published in 16 countries.

*In re: Keene Corp.*, No. 93B 46090 (SMB), (Bankr. E.D. MO.).  Ms. Finegan designed and implemented multiple domestic bankruptcy notice programs including notice on the plan of reorganization directed to all creditors and all Class 4 asbestos-related claimants and counsel.

*In re: Lamonts*, No. 00-00045 (Bankr. W.D. Wash.).  Ms. Finegan designed an implemented multiple bankruptcy notice programs.

*In re: Monet Group Holdings*, Nos. 00-1936 (MFW) (Bankr. D. Del.).  Ms. Finegan designed and implemented a bar date notice.

*In re: Laclede Steel Co.*, No. 98-53121-399 (Bankr. E.D. MO.).  Ms. Finegan designed and implemented multiple bankruptcy notice programs.

*In re: Columbia Gas Transmission Corp.*, No. 91-804 (Bankr. S.D.N.Y.).  Ms. Finegan developed multiple nationwide legal notice notification programs for this case.

*In re: U.S.H. Corp. of New York, et al*. (Bankr. S.D.N.Y.  Ms. Finegan designed and implemented a bar date advertising notification campaign.

*In re: Best Prods. Co., Inc.,* No. 96-35267-T, (Bankr. E.D. Va.). Ms. Finegan implemented a national legal notice program that included multiple advertising campaigns for notice of sale, bar date, disclosure and plan confirmation.

*In re: Lodgian, Inc., et al.*, No. 16345 (BRL) Factory Card Outlet – 99-685 (JCA), 99-686 (JCA) (Bankr. S.D.N.Y.).

*In re: Internat'l Total Servs, Inc., et al.*, Nos. 01-21812, 01-21818, 01-21820, 01-21882, 01-21824, 01-21826, 01-21827 (CD) Under Case No: 01-21812 (Bankr. E.D.N.Y).

*In re: Decora Inds., Inc. and Decora, Incorp.*, Nos. 00-4459 and 00-4460 (JJF) (Bankr. D. Del.).



*In re: Genesis Health Ventures, Inc., et al*, No. 002692 (PJW) (Bankr. D. Del.).

*In re: Tel. Warehouse, Inc., et al*, No. 00-2105 through 00-2110 (MFW) (Bankr. D. Del.).

*In re: United Cos. Fin. Corp., et al*, No. 99-450 (MFW) through 99-461 (MFW) (Bankr. D. Del.).

*In re: Caldor, Inc. New York, The Caldor Corp., Caldor, Inc. CT, et al.*, No. 95-B44080 (JLG) (Bankr. S.D.N.Y).

*In re: Physicians Health Corp., et al.*, No. 00-4482 (MFW) (Bankr. D. Del.).

*In re: GC Cos., et al.*, Nos. 00-3897 through 00-3927 (MFW) (Bankr. D. Del.).

*In re: Heilig-Meyers Co., et al.*, Nos. 00-34533 through 00-34538 (Bankr. E.D. Va.).

## PRODUCT RECALL AND CRISIS COMMUNICATION EXPERIENCE

***Reser's Fine Foods.*** Reser's is a nationally distributed brand and manufacturer of food products through giants such as Albertsons, Costco, Food Lion, WinnDixie, Ingles, Safeway and Walmart. Ms. Finegan designed an enterprise-wide crisis communication plan that included communications objectives, crisis team roles and responsibilities, crisis response procedures, regulatory protocols, definitions of incidents that require various levels of notice, target audiences, and threat assessment protocols.  Ms. Finegan worked with the company through two nationwide, high profile recalls, conducting extensive media relations efforts.

***Gulf Coast Claims Facility Notice Campaign.*** Finegan coordinated a massive outreach effort throughout the Gulf Coast region to notify those who have claims as a result of damages caused by the Deep Water Horizon Oil spill.  The notice campaign included extensive advertising in newspapers throughout the region, Internet notice through local newspaper, television and radio websites and media relations. The Gulf Coast Claims Facility (GCCF) was an independent claims facility, funded by BP, for the resolution of claims by individuals and businesses for damages incurred as a result of the oil discharges due to the Deepwater Horizon incident on April 20, 2010.

***City of New Orleans Tax Revisions, Post-Hurricane Katrina.*** In 2007, the City of New Orleans revised property tax assessments for property owners.  As part of this process, it received numerous appeals to the assessments.  An administration firm served as liaison between the city and property owners, coordinating the hearing schedule and providing important information to property owners on the status of their appeal.  Central to this effort was the comprehensive outreach program designed by Ms. Finegan, which included a website and a heavy schedule of television, radio and newspaper advertising, along with the coordination of key news interviews about the project picked up by local media.



**ARTICLES**

Author, "Creating a Class Notice Program that Satisfies Due Process" Law360, New York, (February 13, 2018 12:58 PM ET).

Author, "3 Considerations for Class Action Notice Brand Safety" Law360, New York, (October 2, 2017  12:24 PM ET).

Author, "What Would Class Action Reform Mean for Notice?"  Law360, New York, (April 13, 2017 11:50 AM ET).

Author, "Bots Can Silently Steal your Due Process Notice."  Wisconsin Law Journal, April 2017.

Author, "*Don't Turn a Blind Eye to Bots*. Ad Fraud and Bots are a Reality of the Digital Environment." LinkedIn article March 6, 2107.

Co-Author,  "Modern Notice Requirements Through the Lens of *Eisen* and *Mullane"* – Bloomberg - BNA Class Action Litigation Report, 17 CLASS 1077, (October 14, 2016).

Author, "Think All Internet Impressions Are The Same? Think Again" – Law360.com, New York (March 16, 2016, 3:39 ET).

Author, "Why Class Members Should See An Online Ad More Than Once" – Law360.com, New York, (December 3, 2015, 2:52 PM ET).

Author, 'Being 'Media-Relevant' — What It Means And Why It Matters - Law360.com, New York (September 11, 2013, 2:50 PM ET).

Co-Author, "New Media Creates New Expectations for Bankruptcy Notice Programs," ABI Journal, Vol. XXX, No 9, (November 2011).

Quoted Expert,  "Effective Class Action Notice Promotes Access to Justice: Insight from a New U.S. Federal Judicial Center Checklist," Canadian Supreme Court Law Review,  (2011), 53 S.C.L.R. (2d).

Co-Author, with Hon. Dickran Tevrizian – "Expert Opinion: It's More Than Just a Report…Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape," BNA Class Action Litigation Report, 12 CLASS 464, May 27, 2011.

Co-Author, with Hon. Dickran Tevrizian, Your Insight, "Expert Opinion: It's More Than Just a Report -Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape," TXLR, Vol. 26, No. 21, May 26, 2011.



Quoted Expert, "Analysis of the FJC's 2010 Judges' Class Action Notice and Claims Process Checklist and Guide: A New Roadmap to Adequate Notice and Beyond," BNA Class Action Litigation Report, 12 CLASS 165, February 25, 2011.

Author, Five Key Considerations for a Successful International Notice Program, BNA Class Action Litigation Report, April, 9, 2010 Vol. 11, No. 7 p. 343.

Quoted Expert, "Communication Technology Trends Pose Novel Notification Issues for Class Litigators," BNA Electronic Commerce and Law, 15 ECLR 109 January 27, 2010.

Author, "Legal Notice: R U ready 2 adapt?" BNA Class Action Report, Vol. 10 Class 702, July 24, 2009.

Author, "On Demand Media Could Change the Future of Best Practicable Notice," BNA Class Action Litigation Report, Vol. 9, No. 7, April 11, 2008, pp. 307-310.

Quoted Expert, "Warranty Conference: Globalization of Warranty and Legal Aspects of Extended Warranty," Warranty Week, warrantyweek.com/archive/ww20070228.html/ February 28, 2007.

Co-Author, "Approaches to Notice in State Court Class Actions," For The Defense, Vol. 45, No. 11, November, 2003.

Citation, "Recall Effectiveness Research: A Review and Summary of the Literature on Consumer Motivation and Behavior," U.S. Consumer Product Safety Commission, CPSC-F-02-1391, p.10, Heiden Associates, July 2003.

Author, "The Web Offers Near, Real-Time Cost Efficient Notice," American Bankruptcy Institute, ABI Journal, Vol. XXII, No. 5., 2003.

Author, "Determining Adequate Notice in Rule 23 Actions," For The Defense, Vol. 44, No. 9 September, 2002.

Author, "Legal Notice, What You Need To Know and Why," Monograph, July 2002.

Co-Author, "The Electronic Nature of Legal Noticing," The American Bankruptcy Institute Journal, Vol. XXI, No. 3, April 2002.

Author, "Three Important Mantras for CEO's and Risk Managers," - International Risk Management Institute, irmi.com, January 2002.

Co-Author, "Used the Bat Signal Lately," The National Law Journal, Special Litigation Section, February 19, 2001.



Author, "How Much is Enough Notice," Dispute Resolution Alert, Vol. 1, No. 6. March 2001.

Author, "Monitoring the Internet Buzz," The Risk Report, Vol. XXIII, No. 5, Jan. 2001.

Author, "High-Profile Product Recalls Need More Than the Bat Signal," - International Risk Management Institute, irmi.com, July 2001.

Co-Author, "Do You Know What 100 Million People are Buzzing About Today?" Risk and Insurance Management, March 2001.

Quoted Article, "Keep Up with Class Action," Kentucky Courier Journal, March 13, 2000.

Author, "The Great Debate - How Much is Enough Legal Notice?" American Bar Association – Class Actions and Derivatives Suits Newsletter, winter edition 1999.

### SPEAKER/EXPERT PANELIST/PRESENTER

| | |
|---|---|
| American Bar Assn. | Faculty Panelist, 4th Annual Western Regional CLE Class Actions, "Big Brother, Information Privacy, and Class Actions: How Big Data and Social Media are Changing the Class Action Landscape" San Francisco, CA  June, 2017. |
| Miami Law Class Action & Complex Litigation Forum | Faculty Panelist, " Settlement and Resolution of Class Actions," Miami, FL December 2, 2016. |
| The Knowledge Group | Faculty Panelist, "Class Action Settlements: Hot Topics 2016 and Beyond," Live Webcast, www.theknowledgegroup.org, October 2016. |
| ABA National Symposium | Faculty Panelist, "Ethical Considerations in Settling Class Actions," New Orleans, LA, March 2016. |
| S.F. Banking Attorney Assn. | Speaker, "How a Class Action Notice can Make or Break your Client's Settlement," San Francisco, CA, May 2015. |
| Perrin Class Action Conf. | Faculty Panelist, "Being Media Relevant, What It Means and Why It Matters – The Social Media Evolution: Trends, Challenges and Opportunities," Chicago, IL May 2015. |
| Bridgeport Continuing Ed. | Speaker, Webinar "Media Relevant in the Class Notice Context." July, 2014. |
| Bridgeport Continuing Ed. | Faculty Panelist, "Media Relevant in the Class Notice Context." Los Angeles, California, April 2014. |



| | |
|---|---|
| CASD 5th Annual | Speaker, "The Impact of Social Media on Class Action Notice." Consumer Attorneys of San Diego Class Action Symposium, San Diego, California, September 2012. |
| Law Seminars International | Speaker, "Class Action Notice: Rules and Statutes Governing FRCP (b)(3) Best Practicable... What constitutes a best practicable notice? What practitioners and courts should expect in the new era of online and social media."  Chicago, IL, October 2011. ***Voted by attendees as one of the best presentations given.*** |
| CASD 4th Annual | Faculty Panelist, "Reasonable Notice - Insight for practitioners on the FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*. Consumer Attorneys of San Diego Class Action Symposium, San Diego, California, October 2011. |
| CLE International | Faculty Panelist, Building a Workable Settlement Structure, CLE International, San Francisco, California May, 2011. |
| CASD | Faculty Panelist, "21st Century Class Notice and Outreach." 3nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2010. |
| CASD | Faculty Panelist, "The Future of Notice." 2nd Annual Class Action Symposium CASD Symposium, San Diego California, October 2009. |
| American Bar Association | Speaker, 2008 Annual Meeting, "Practical Advice for Class Action Settlements:  The Future of Notice In the United States and Internationally – Meeting the Best Practicable Standard." Section of Business Law Business and Corporate Litigation Committee – Class and Derivative Actions Subcommittee, New York, NY, August 2008. |
| Women Lawyers Assn. | Faculty Panelist, Women Lawyers Association of Los Angeles "The Anatomy of a Class Action." Los Angeles, CA, February, 2008. |
| Warranty Chain Mgmt. | Faculty Panelist, Presentation Product Recall Simulation.  Tampa, Florida, March 2007. |
| Practicing Law Institute. | Faculty Panelist, CLE Presentation, 11th Annual Consumer Financial Services Litigation. Presentation: Class Action Settlement Structures – Evolving Notice Standards in the Internet Age.  New York/Boston (simulcast), NY March 2006; Chicago, IL April 2006 and San Francisco, CA, May 2006. |



| U.S. Consumer Product Safety Commission | Ms. Finegan participated as an invited expert panelist to the CPSC to discuss ways in which the CPSC could enhance and measure the recall process. As a panelist, Ms Finegan discussed how the CPSC could better motivate consumers to take action on recalls and how companies could scientifically measure and defend their outreach efforts. Bethesda, MD, September 2003. |
| --- | --- |
| Weil, Gotshal & Manges | Presenter, CLE presentation, "A Scientific Approach to Legal Notice Communication." New York, June 2003. |
| Sidley & Austin | Presenter, CLE presentation, "A Scientific Approach to Legal Notice Communication." Los Angeles, May 2003. |
| Kirkland & Ellis | Speaker to restructuring group addressing "The Best Practicable Methods to Give Notice in a Tort Bankruptcy." Chicago, April 2002. |
| Georgetown University Law | Faculty, CLE White Paper: "What are the best practicable methods to Center Mass Tort Litigation give notice? Dispelling the communications myth – A notice Institute disseminated is a notice communicated," Mass Tort Litigation Institute. Washington D.C., November, 2001. |
| American Bar Association | Presenter, "How to Bullet-Proof Notice Programs and What Communication Barriers Present Due Process Concerns in Legal Notice," ABA Litigation Section Committee on Class Actions & Derivative Suits. Chicago, IL, August 6, 2001. |
| McCutchin, Doyle, Brown | Speaker to litigation group in San Francisco and simulcast to four other McCutchin locations, addressing the definition of effective notice and barriers to communication that affect due process in legal notice. San Francisco, CA, June 2001. |
| Marylhurst University | Guest lecturer on public relations research methods. Portland, OR, February 2001. |
| University of Oregon | Guest speaker to MBA candidates on quantitative and qualitative research for marketing and communications programs. Portland, OR, May 2001. |
| Judicial Arbitration & Mediation Services (JAMS) | Speaker on the definition of effective notice. San Francisco and Los Angeles, CA, June 2000. |



| International Risk Management Institute | Past Expert Commentator on Crisis and Litigation Communications. www.irmi.com. |
| The American Bankruptcy Institute Journal (ABI) | Past Contributing Editor – Beyond the Quill. www.abi.org. |

### BACKGROUND

Ms Finegan's past experience includes working in senior management for leading Class Action Administration firms including The Garden City Group ("GCG") and Poorman-Douglas Corp., ("EPIQ"). Ms. Finegan co-founded Huntington Advertising, a nationally recognized leader in legal notice communications.  After Fleet Bank purchased her firm in 1997, she grew the company into one of the nation's leading legal notice communication agencies.

Prior to that, Ms. Finegan spearheaded Huntington Communications, (an Internet development company) and The Huntington Group, Inc., (a public relations firm).  As a partner and consultant, she has worked on a wide variety of client marketing, research, advertising, public relations and Internet programs.  During her tenure at the Huntington Group, client projects included advertising (media planning and buying), shareholder meetings, direct mail, public relations (planning, financial communications) and community outreach programs. Her past client list includes large public and privately held companies: Code-A-Phone Corp., Thrifty-Payless Drug Stores, Hyster-Yale, The Portland Winter Hawks Hockey Team, U.S. National Bank, U.S. Trust Company, Morley Capital Management, and Durametal Corporation.

Prior to Huntington Advertising, Ms. Finegan worked as a consultant and public relations specialist for a West Coast-based Management and Public Relations Consulting firm.

Additionally, Ms. Finegan has experience in news and public affairs. Her professional background includes being a reporter, anchor and public affairs director for KWJJ/KJIB radio in Portland, Oregon, as well as reporter covering state government for KBZY radio in Salem, Oregon. Ms. Finegan worked as an assistant television program/promotion manager for KPDX directing $50 million in programming.  She was also the program/promotion manager at KECH-22 television.

 Ms. Finegan's multi-level communication background gives her a thorough, hands-on understanding of media, the communication process, and how it relates to creating effective and efficient legal notice campaigns.



## <u>MEMBERSHIPS, PROFESSIONAL CREDENTIALS</u>

**APR**    The Universal Board of Accreditation Public Relations Society of America – Accredited.
- **Member of the Public Relations Society of America**
- **Member Canadian Public Relations Society**

---

## <u>SOCIAL MEDIA</u>

*LinkedIn: [www.linkedin.com/in/jeanne-finegan-apr-7112341b](www.linkedin.com/in/jeanne-finegan-apr-7112341b)*

# Exhibit 8

# If you purchased New Balance "Made in USA" Shoes your rights may be affected by a proposed class action settlement.

A proposed class action settlement has been reached involving New Balance "Made in USA" Shoes.

## ARE YOU AFFECTED?

You may be a Class Member if you purchased the "Made in USA" Shoes listed below from New Balance and/or its authorized retailers from December 27, 2012 until [DATE].

"MADE IN USA" SHOES

| ELIGIBLE NEW BALANCE SHOE MODELS | |
|---|---|
| 601 | ML996 |
| M1140 | ML997 |
| M1290 | MR1105 |
| M1300 | MR993 |
| M1400 | MW812 |
| M1540 | PM15 |
| M1700 | PM16 |
| M2040 | US574 |
| M3040 | US576 |
| M498 | US990 |
| M574 | US993 |
| M585 | US998 |
| M587 | W1140 |
| M770 | W1290 |
| M990 | W1400 |
| M991 | W1540 |
| M995 | W3040 |
| M996 | W498 |
| M997 | W587 |
| M9975 | W990 |
| M998 | W998 |
| MK706 | WK706 |
| ML1300 | WR993 |
| ML1978 | WW812 |

## WHAT IS THIS CASE ABOUT?

The lawsuit claims that New Balance violated certain state laws regarding the marketing and sale of its "Made in USA" Shoes. New Balance denies it did anything wrong. The Court did not decide which side was right. Instead, the parties have decided to settle.

**WHAT DOES THIS SETTLEMENT PROVIDE?**

A settlement fund of $750,000 has been set up to pay (i) claims to eligible Class Members, (ii) the costs of settlement notice and administration, and (iii) service awards to the named plaintiffs. New Balance is also agreeing to engage in certain notice practices and separately pay attorneys' fees and costs. Full details about the Settlement are on the website below.

**HOW DO YOU ASK FOR A PAYMENT?**

To get money, eligible Class Members **must submit** a Claim Form online no later than [DATE] or postmarked no later than [DATE]. Payments could be up to $10 for each pair of "Made in USA" Shoes purchased, up to a maximum of five pairs, but the precise amount may be less depending upon the number of claims submitted by all Class Members and the amount of the fees, costs, and payments specified in the Settlement Agreement.

**WHAT ARE YOUR OPTIONS?**

If you are a Class Member, you may (1) do nothing; (2) exclude yourself; (3) send in a Claim Form; and/or (4) object to the settlement. If you don't want to be bound by the settlement, you must exclude yourself by letter postmarked by [DATE]. If you exclude yourself, you can't get a payment, but you preserve the right to sue New Balance for these claims. If you stay in the Class, you may submit a Claim Form and/or object to the settlement. Claim Forms must be submitted by [DATE]. Objections must be mailed to the Claims Administrator, postmarked by [DATE] and filed with the Court by [DATE].

---

**PLEASE SEE THE DETAILED NOTICE**

at [WEBSITE] or call [TOLL FREE NUMBER] for complete instructions on how to file a claim, object, or exclude yourself and other important information. It is important that you review these instructions carefully, as failure to follow them may result in a denial of your claim, request for exclusion, or objection. The Court will hold a hearing in this case on [DATE] at [TIME] in the Edward J. Schwartz Federal Courthouse, Courtroom 5B, located at 221 West Broadway, San Diego, California 92101, to consider final approval of the settlement, payment of attorneys' fees and expenses of up to $650,000 to lawyers for the Class (Schneider Wallace Cottrell Konecky Wotkyns LLP and The Wand Law Firm, P.C.), and payments of up to $5,000 for each of the three named plaintiffs, and related issues. The motion(s) by Class Counsel for those fees, costs and service awards will be available on the Settlement website after they are filed, and no later than 14 days before the objection/exclusion deadline. The Court has appointed Jason H. Kim of Schneider Wallace Cottrell Konecky Wotkyns LLP and Aubry Wand of The Wand Law Firm, P.C. to represent the Class. You may appear at the hearing, but you don't have to.

**HOW CAN YOU GET MORE INFORMATION?**

Visit [WEBSITE] or call [TOLL FREE NUMBER], or write to *Dashnaw v. New Balance Athletics, Inc.,* c/o [PO BOX ADDRESS]. Or visit us on Facebook at [FACEBOOK SETTLEMENT PAGE].

# Exhibit 9

THE WAND LAW FIRM
Aubry Wand (SBN 281207)
400 Corporate Pointe, Suite 300
Culver City, California 90230
Telephone: (310) 590-4503
Facsimile: (310) 590-4596
E-mail: awand@wandlawfirm.com

SCHNEIDER WALLACE COTTRELL
KONECKY & WOTKYNS LLP
Todd M. Schneider (SBN 158253)
Jason H. Kim (SBN 220279)
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
E-mail:
tschneider@schneiderwallace.com
          jkim@schneiderwallace.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA DASHNAW, WILLIAM MEIER, and SHERRYL JONES, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br>NEW BALANCE ATHLETICS, INC., a corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 3:17-cv-00159-L-JLB<br><br>**CONFIDENTIALITY AGREEMENT FOR DISCOVERY MATERIALS MADE AVAILABLE TO CLASS MEMBERS**<br><br>Judge: Hon. M. James Lorenz<br><br>Courtroom: 5B |

Pursuant to the Settlement Agreement and all of its exhibits, which are incorporated herein by reference, including, but not limited to, this Confidentiality Agreement for Discovery Materials Made Available to Class Members ("Confidentiality Agreement"), it is hereby stipulated and agreed, by and between the undersigned, as follows:

1. Pursuant and subject to the Court's Order, New Balance will provide the undersigned Class Member(s) and/or counsel retained at those Class Member(s)' expense and/or certain other persons identified in Paragraph 6 (below) with access to documents New Balance disclosed to Class Counsel in the course of discovery in this Action.

2. The following documents and materials to be reviewed pursuant to this Confidentiality Agreement shall be deemed "Confidential Information." "Confidential Information" shall be limited to:

      (a)     sales and accounting records relating to the "Made in USA" Shoes;

      (b)     marketing, advertising, media and public relations materials relating to the "Made in USA" Shoes;

      (c)     intercompany and intracompany communications relating to the information above; and

      (d)     related information and materials.

In addition, any and all notes, memoranda, or dictation that copies, reproduces, reflects, incorporates, or otherwise refers to the Confidential Information made by any person afforded access to Confidential Information pursuant to this Confidentiality Agreement shall be treated as, and deemed to be, Confidential Information as well.

3. All Confidential Information to which the undersigned and/or certain other persons identified in Paragraph 6 (below) are given access is subject to this Confidentiality Agreement, and such Confidential Information shall not be used or disclosed to anyone or in any manner, except as provided herein.

4.  The undersigned and/or certain other persons identified in Paragraph 6 (below) specifically certify(ies) that he/she/they shall use the Confidential Information solely for purposes of evaluating the fairness, reasonableness, and adequacy of the proposed settlement in this Action and for no other purpose. In particular and without limitation, Confidential Information provided pursuant to this Confidentiality Agreement shall not be used: (a) in the litigation of this Action, should the Parties not reach a settlement and/or in the Other Actions; (b) in the litigation of this Action, if the Court should fail to approve the proposed settlement for any reason, or if any appellate court should reverse an order of this Court approving the proposed settlement and/or the Other Actions; and/or (c) in any other litigation, arbitration, or other judicial or administrative proceeding, including, without limitation, in the investigation or preparation of any such proceeding, and/or the Other Actions.

5.  The undersigned and/or certain other persons identified in Paragraph 6 (below) may inspect the Confidential Information by prior appointment at a time during regular business hours and at a location designated by Class Counsel. Duplication of documents or materials containing Confidential Information shall not be permitted, except for documents that the undersigned Class Member(s) and/or their counsel represent to the Court that they need to duplicate for the Court in support of a point of objection. The cost of any duplication shall be borne by the requesting Class Member or their counsel. Any such documents shall be filed under seal with the Court, labeled, "Confidential – Subject to Protective Order," and shall be delivered to the Clerk of the Court in an envelope bearing the notation, "THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION SUBMITTED UNDER SEAL PURSUANT TO COURT ORDER." However, in the course of inspecting the Confidential Information, the undersigned Class Member(s) and/or certain other persons identified in Paragraph 6 (below) shall be permitted to make a reasonable amount of notes reflecting their review of Confidential Information, which shall also be treated as Confidential Information.

6. Access to Confidential Information shall be subject to the protective order entered in this case and limited to those persons who are working directly on the Class Member's behalf, to whom it is necessary that the Confidential Information be disclosed and who are:

      (a)    the undersigned Class Member(s);

      (b)    their undersigned counsel;

      (c)    employees of such counsel assigned to and necessary to assist such counsel in evaluating the proposed settlement; and

      (d)    consultants or experts, to the extent necessary to assist the undersigned Class Member(s) and/or their counsel in evaluating the proposed settlement.

7. Any person given access to Confidential Information shall be advised, prior to being granted access, of the terms of this Confidentiality Agreement and of the Court's Protective Order and shall thereby become bound by their terms, including without limitation, the requirement that such Confidential Information may not be disclosed to any person other than those described in Paragraph 6 (above). In addition, access to Confidential Information shall not be provided to any person described in Subparagraphs 6.c or 6.d of this Confidentiality Agreement until and unless such person has executed an undertaking in the form attached hereto as Exhibit A. The individual who provides access to Confidential Information to such person shall retain the executed undertaking and shall provide a copy of it to Designated Class Counsel and to New Balance's Counsel.

8. By providing access to Confidential Information, no party to this Action shall be deemed to have waived any claim that such information is privileged, confidential, or protected from discovery as attorney work product, nor shall any party use this Confidentiality Agreement as an admission or concession that the Confidential Information is relevant, material, responsive, admissible, or otherwise discoverable in any pending or future litigation or judicial or administrative

proceeding. The undersigned Class Member(s) and/or certain other persons identified in Paragraph 6 (above) agree that they, or any of them, shall not contend or otherwise take the position in this or in any other pending or future litigation or judicial or administrative proceeding that any party has waived the attorney-client privilege and/or the protection of the attorney work product doctrine, or any other privilege or protective doctrine, with regard to Confidential Information.

9. The terms of this Confidentiality Agreement shall survive the termination of this Action and/or the Other Actions. At the earlier of: (a) the conclusion of any or all appeals of the Final Order and/or Final Judgment approving the proposed settlement, or (b) such time as the parties terminate their Settlement Agreement, all persons having received Confidential Information shall either return such material and all copies thereof (including notes and other records containing or reflecting Confidential Information) to New Balance's Counsel or shall destroy such material. New Balance reserves the right to demand written certification of destruction from any person who has been given access to Confidential Information.

10. The terms of this Confidentiality Agreement shall be enforceable by any aggrieved party, including any party to this Action. The undersigned and/or other persons identified in Paragraph 6 (above) agree(s) that, if he/she/they fail to comply with this Confidentiality Agreement, New Balance may suffer irreparable harm that may not be adequately compensated for by monetary damages alone. Any breach of the terms of this Confidentiality Agreement shall give rise to any and all applicable legal and equitable remedies for enforcement of the Confidentiality Agreement and/or relief, including, without limitation, injunctive relief and/or damages, for its breach, in addition to any other remedies available at law.

11. Pursuant to the Court's Preliminary Approval Order incorporating this Confidentiality Agreement, any breach of the terms of this Confidentiality Agreement shall constitute a violation of the Court's Preliminary Approval Order and may result in an order of contempt of Court and/or other sanctions, upon application to the Court

by any party aggrieved by such violation, including any party to this Action. The undersigned and/or certain other persons identified in paragraph 6 below consent to the jurisdiction of the United States District Court for the District of Massachusetts for purposes of interpretation and enforcement of the terms of this Confidentiality Agreement.

12. Any dispute over the meaning or interpretation of this Confidentiality Agreement shall be governed by the laws of the State of California, disregarding any conflicts-of-law provisions.

13. The undersigned Class Member(s) and/or their counsel agree(s) to notify Class Counsel and New Balance's Counsel immediately: (a) of any disclosure of Confidential Information in violation of this Confidentiality Agreement and or the Court's Preliminary Approval Order, even if inadvertent; and (b) if any person granted access to the Confidential Information under this Confidentiality Agreement is served with or otherwise receives a subpoena, summons, court order, request, or application requiring disclosure of Confidential Information. In any such instance, the undersigned Class Member(s) and/or their counsel agree(s): (a) not to oppose New Balance's efforts to prevent the disclosure of the Confidential Information; and (b) not to surrender the Confidential Information to any third party without the consent of New Balance or except by the final order of a court with competent jurisdiction.

14. The notice required in Paragraph 13 of this Confidentiality Agreement must be provided by e-mail and overnight delivery service to:

New Balance Athletics, Inc.:
R. David Hosp
FISH & RICHARDSON P.C.
1 Marina Park Drive
Boston, Massachusetts 02210
Tel.: 617.542.5070
Fax: 617.542.8906
E-Mail: hosp@fr.com

and

Erin Michael
New Balance Athletics, Inc.
100 Guest Street
Boston, Massachusetts 02135
Tel.: 617.779.7408
E-Mail: erin.michael@newbalance.com

With a copy to:

General Counsel
New Balance Athletics, Inc.
100 Guest Street
Boston, Massachusetts 02135
Fax: 617.787.9355

Plaintiffs:

Jason H. Kim
SCHNEIDER WALLACE COTTRELL
KONECKY & WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
E-Mail: jkim@schneiderwallace.com

and

Aubry Wand
THE WAND LAW FIRM
400 Corporate Pointe, Suite 300
Culver City, California 90230
Telephone: (310) 590-4503
Facsimile: (310) 590-4596
E-Mail: awand@wandlawfirm.com

15. No waiver by any party hereto of any breach of any term or condition of this Confidentiality Agreement shall be deemed a waiver of a similar or dissimilar term or condition.

16. The waiver by one party of any breach of this Confidentiality Agreement by another party shall not be deemed a waiver of any prior or subsequent breach of this Confidentiality Agreement.

17. The undersigned certify(ies) and agree(s) that he/she/they: (a) has read, understands, consents, accepts, and agrees to be bound by the terms of this Confidentiality Agreement and the Preliminary Approval Order and by the terms of any future Orders of the Court concerning the information he/she shall receive; and (b) shall use the Confidential Information solely for the purposes of evaluating the fairness, reasonableness, and adequacy of the proposed settlement in this Action and for no other purpose.

18. This Confidentiality Agreement may be executed in one or more counterparts, each of which shall constitute a duplicate original.

Dated: _____

     COUNSEL, INDIVIDUALLY AND ON BEHALF

     OF THE CLASS MEMBER(S):

_____ [Signature]

_____ [Print Name]

_____ [Firm Name]

_____ [Print Name of Class Member(s)]

_____ [Address and Telephone Number]

THE CLASS MEMBER(S):

_____ [Signature]

_____ [Print Name]

_____ [Address and Telephone Number]

## EXHIBIT A TO THE CONFIDENTIALITY AGREEMENT

The undersigned hereby certifies that he/she understands, consents and acknowledges that Confidential Information is being provided to him/her pursuant to the terms and restrictions of the Settlement Agreement preliminarily approved by the United States District Court for the Southern District of California (the "Court") in *Sheila Dashnaw et al. v. New Balance Athletics, Inc.*, Case No. 3:17-cv-00159-L-JLB, and by the Court's Preliminary Approval Order. The undersigned also certifies that he/she has been provided with the Confidentiality Agreement, has read, understands, consents, accepts and agrees to be bound by its terms.

The undersigned acknowledges that breach of the Confidentiality Agreement shall be actionable by any aggrieved party, including any party to the aforementioned Action, and that such breach shall subject the undersigned to any and all applicable legal and equitable remedies for enforcement of the Stipulation and/or relief, including damages, for its breach. The undersigned also acknowledges that breach of the Stipulation will violate the Court's Order and may subject the undersigned to an order of contempt of Court or other sanctions, upon application to the Court by any party aggrieved by such violation, including any party to the aforementioned Action. The undersigned hereby subjects himself/herself to the jurisdiction of the Court for purposes of enforcement of the terms and restrictions of the Stipulation and/or the Preliminary Approval Order.

Dated:_____, _____

By: _____

Print Name: _____

# Exhibit 10

THE WAND LAW FIRM
Aubry Wand (SBN 281207)
400 Corporate Pointe, Suite 300
Culver City, California 90230
Telephone: (310) 590-4503
Facsimile: (310) 590-4596
E-mail: awand@wandlawfirm.com

SCHNEIDER WALLACE COTTRELL
KONECKY & WOTKYNS LLP
Todd M. Schneider (SBN 158253)
Jason H. Kim (SBN 220279)
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
E-mail: tschneider@schneiderwallace.com
        jkim@schneiderwallace.com

*Attorneys for Plaintiffs*

FISH & RICHARDSON P.C.
R. David Hosp (Pro Hac Vice)
Sheryl Garko (Pro Hac Vice)
Mark S. Puzella (Pro Hac Vice)
Laura B. Najemy (Pro Hac Vice)
1 Marina Park Dr.
Boston, MA 02210
Telephone: (617) 542-5070
Facsimile: (617) 542-8906
E-mail: hosp@fr.com; garko@fr.com
        puzella@fr.com; najemy@fr.com

FISH & RICHARDSON P.C.
Garrett K. Sakimae (SBN 288453)
12390 El Camino Real
San Diego, California 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099
E-mail: sakimae@fr.com

*Attorneys for Defendant [Additional Counsel listed on last page]*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA DASHNAW, WILLIAM MEIER, and SHERRYL JONES, individually, and on behalf of all others similarly situated,<br><br>  Plaintiffs,<br>  v.<br>NEW BALANCE ATHLETICS, INC., a corporation; and DOES 1 through 50, inclusive,<br><br>  Defendants. | Case No. 3:17-cv-00159-L-JLB<br><br>**STIPULATION OF DISMISSAL**<br><br>Judge: Hon. M. James Lorenz<br><br>Courtroom: 5B |

1

1    Pursuant to the Settlement Agreement filed on April 23, 2018 in *Sheila*
2  *Dashnaw et al. v. New Balance Athletics, Inc.*, Case No. 3:17-cv-00159-L-JLB (S.D.
3  Cal.) (the "Settlement Agreement"), and finally approved by the Court on [DATE],
4  Plaintiffs Sheila Dashnaw, William Meier, and Sherryl Jones ("Plaintiffs") and
5  Defendant New Balance Athletics, Inc. hereby jointly stipulate to the dismissal of
6  Plaintiffs' Complaint and above-captioned action in its entirety with prejudice,
7  without costs and fees (except as otherwise provided in the Settlement Agreement),
8  and waiving all rights of appeal.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: April    , 2018                    Respectfully submitted,

NEW BALANCE ATHLETICS, INC.

By its attorneys,

By: _____
   R. David Hosp (*Pro Hac Vice*)
      Massachusetts BBO 634091
   Sheryl Koval Garko (*Pro Hac Vice*)
      Massachusetts BBO 657735
   Mark S. Puzella (*Pro Hac Vice*)
      Massachusetts BBO 644850
   Laura B. Najemy (*Pro Hac Vice*)
      Massachusetts BBO 678756
   FISH & RICHARDSON P.C.
   One Marina Park Drive
   Boston, MA 02210-1878
   Tel:  (617) 542-5070
   Fax:  (617) 542-8906
   hosp@fr.com; garko@fr.com;
   puzella@fr.com; najemy@fr.com

   Garrett K. Sakimae
   FISH & RICHARDSON P.C.
   12390 El Camino Real
   San Diego, CA 92130
   Tel: (858) 678-5070
   Fax: (858) 678-5099
   sakimae@fr.com

   Elizabeth Brenckman (*Pro Hac Vice*)
      Minnesota State Bar No. 0388871
   FISH & RICHARDSON P.C.
   601 Lexington Avenue, 52nd Floor
   New York, NY 10022
   Tel: (212) 765-5070
   Fax: (212) 258-2291
   brenckman@fr.com

3

Dated: April __, 2018

Respectfully submitted,

SHEILA DASHNAW, WILLIAM
MEIER, AND SHERRYL JONES

By their attorneys,

By: _____

    Jason H. Kim
    Todd M. Schneider
    **SCHNEIDER WALLACE**
    **COTTREEL KONECKY &**
    **WOTKYNS LLP**
    2000 Powell Street, Suite 1400
    Emeryville, CA 94608
    Tel: (415) 421-7100
    Fax: (415) 421-7105
    tschneider@schneiderwallace.com;
    jim@schneiderwallace.com

    *and*

    Aubry Wand
    **THE WAND LAW FIRM**
    400 Corporate Point, Suite 300
    Culver City, CA 90230
    Tel: (310) 590-4503
    Fax: (310) 590-4596
    awand@wandlawfirm.com

4

# SIGNATURE CERTIFICATION

     Pursuant to Section 2(f)(4) of the Electronic Case Filing Administration Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to Jason H. Kim, counsel for Plaintiffs, and that I have obtained Mr. Kim's authorization to affix his electronic signature to this document.

By: _____
          R. David Hosp

# Exhibit 11

New Balance and the plaintiffs in *Dashnaw, et al. v. New Balance Athletics, Inc.* have amicably resolved claims on behalf of California consumers who purchased certain models of athletic shoes containing 70% or more domestic content and marketed as "Made in the USA." New Balance marketed the shoes in question with disclosures stating, "Where the domestic value is at least 70%, we label our shoes 'Made in the USA.'" While New Balance stands behind its marketing of its "Made in USA" shoes, this settlement will allow the company to focus on its mission of employing American workers in its five domestic manufacturing facilities, and creating and marketing the finest athletic shoes available.

The claims in the lawsuit asserted that, under California law, unqualified "Made in the USA" claims can be made only for products for which the domestic content is 95% or greater, and that New Balance's claims were unqualified. New Balance contended that it made qualified—rather than unqualified—claims due to its 70% disclosure statements and, as such, its marketing was truthful and not deceptive.

Under the terms of the settlement, New Balance has agreed to continue to disclose its 70% standard, and make its disclosures even more prominent in connection with its shoes marketed as "Made in the USA." New Balance will also create a fund of $750,000, which will be used, in part, to pay class members up to $10 per pair of "Made in the USA" shoes purchased.

New Balance maintains its commitment to its American workers, and stands behind its marketing of its "Made in the USA" shoes. This settlement does not signal the company's agreement with plaintiffs' claims in the litigation.