THE WAND LAW FIRM, P.C.
Aubry Wand (SBN 281207)
400 Corporate Pointe, Suite 300
Culver City, California 90230
Telephone:  (310) 590-4503
Facsimile:  (310) 590-4596
E-mail: awand@wandlawfirm.com

SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
Todd M. Schneider (SBN 158253)
Jason H. Kim (SBN 220279)
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
E-mail:  tschneider@schneiderwallace.com
              jkim@schneiderwallace.com

*Attorneys for Plaintiffs and
The Putative Class*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA DASHNAW, WILLIAM MEIER, and SHERRYL JONES, individually, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>NEW BALANCE ATHLETICS, INC., a corporation; and DOES 1 through 50, inclusive,<br><br>        Defendants. | CASE NO.: 3:17-cv-00159-L-JLB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SECOND RENEWED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Judge: Hon. M. James Lorenz<br>Date:   January 7, 2019<br>Time:  10:30 am<br>Courtroom: 5B<br><br>**<u>No oral argument unless requested by the Court</u>** |

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................ 1

II. RESPONSE TO THE SECOND ORDER .................................................... 1

   A. Cy Pres Recipients ................................................................................ 1

   B. Release and Preliminary Injunction .................................................... 3

   C. Class Notice .......................................................................................... 4

   D. Time Line .............................................................................................. 4

III. THE SETTLEMENT .................................................................................... 4

   A. The Settlement Class ............................................................................ 4

   B. Settlement Terms .................................................................................. 5

      1.  Monetary Relief to the Class ....................................................... 5

      2.  Injunctive Relief to the Class ....................................................... 7

      3.  Class Representative Service Awards ........................................... 9

      4.  Attorneys' Fees and Costs ............................................................ 9

      5.  Settlement Administration Costs .................................................. 10

   C. Release ................................................................................................... 11

   D. Class Notice and Objection and Opt-Out Rights ................................. 11

      1.  Direct Notice ................................................................................. 11

      2.  Notice via Publication ................................................................... 12

      3.  Form of Notice to Class Members ................................................ 13

      4.  Exclusions ...................................................................................... 13

      5.  Objections ....................................................................................... 13

   E. CAFA Notice ......................................................................................... 14

IV. THE SETTLEMENT IS FAIR AND REASONABLE ................................. 14

   A. The Settlement Was Reached After Informed, Arm's Length Bargaining ........ 15

   B. The Settlement Does Not Suffer From Any Obvious Deficiencies ................... 15

C. The Settlement Does Not Provide Preferential Treatment to Plaintiffs or a Segment of the Class ....................................................................... 17

D. The Settlement Falls within the Range of Possible Approval ........................... 18

V.    THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT  PURPOSES ..... 20

A. The Requirements of Rule 23(a) Are Satisfied ..................................................... 20

    1.   The Numerosity Requirement is Satisfied ................................................. 20

    2.   The Commonality Requirement is Satisfied .............................................. 20

    3.   The Typicality Requirement is Satisfied ................................................... 21

    4.   The Adequacy Requirement is Satisfied .................................................... 22

B. The Requirements of Rule 23(b)(3) are Satisfied ................................................ 22

    1.   Common Questions Predominate Over Individual Issues ........................ 22

    2.   Class is the Superior Method to Resolve this Controversy ..................... 23

VI.   THE PROPOSED CLASS NOTICE SHOULD BE APPROVED ........................ 24

VII.  CONCLUSION ....................................................................................................... 25

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Amchem Products, Inc. v. Windsor*
   521 U.S. 591 (1997) ...........................................................................................22

*Arnold v. Fitflop USA, LLC*
   No. 11-CV-0973 W (KSC), 2014 WL 1670133 (S.D. Cal. April 28, 2014) .....................7

*Barbosa v. Cargill Meat Solutions Corp.*
   No. 1:11-cv-00275-SKO, 2013 WL 3340939 (E.D. Cal. Jul. 2, 2013) .......................23

*Beck-Ellman v. Kaz USA, Inc.*
   No. 3:10-CV-02134-H-DHB, 2013 WL 10102326 (S.D. Cal. June 11, 2013) ....................2

*Churchill Vill., L.L.C. v. GE*
   361 F.3d 566 (9th Cir. 2004) .............................................................................24

*De La Torre v. CashCall, Inc.*
   No. 08-CV-03174-MEJ, 2017 WL 5524718 (N.D. Cal. Nov. 17, 2017) .....................2

*Eisen v. Carlisle & Jacquelin*
   417 U.S. 156 (1974) ...........................................................................................24

*Guido v. L'Oreal, USA, Inc.*
   284 F.R.D. 468 (C.D. Cal. 2012) *reconsideration granted on other grounds*, CV 11-1067 CAS
JCX, 2012 WL 2458118 (C.D. Cal. June 25, 2012) ............................................21

*Hanlon v. Chrysler Corp.*
   105 F.3d 1011 (9th Cir. 1998) ......................................................................... passim

*Hesse v. Sprint Corp.*
   598 F.3d 581 (9th Cir. 2010) ...............................................................................3

*Hopson v. Hanesbrands Inc.*
   2009 WL 928133 (N.D. Cal. Apr. 3, 2009) .........................................................18

*In re Heritage Bond Litig.*
   546 F.3d 667 (9th Cir. 2009) .............................................................................14

*In re LDK Solar Sec. Litig.*
   No. C 07-5182 WHA, 2010 WL 3001384 (N.D. Cal. July 29, 2010) .....................19

*In re Mercury Interactive Corp. Sec. Litig.*
   618 F.3d 988 (9th Cir. 2010) .............................................................................10

*In re Online DVD-Rental Antitrust Litig.*
   779 F.3d 934 (9th Cir. 2015) .............................................................................17

*In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*
   295 F.R.D. ........................................................................................................15

*Mendoza v. United States*
    623 F.2d 1338 (9th Cir. 1980) ........................................................................24

*Morris v. Lifescan, Inc.*
    54 Fed.Appx. 663 (9th Cir. 2003) ..................................................................10

*Negrete v. Allianz Life Ins. Co. of N. Am.*
    523 F.3d 1091 (9th Cir. 2008) ..........................................................................4

*Phillips Petroleum Co. v. Shutts*
    472 U.S. 797 (1985) ........................................................................................25

*Reed v. 1–800 Contacts, Inc.*
    No. 12-cv-02359 JM (BGS), 2014 WL 29011 (S.D. Cal. Jan. 2, 2014) .........18

*Rodriguez v. West Publishing Corp.*
    563 F.3d 948 (9th Cir.2009) ......................................................................15, 20

*Schaffer v. Litton Loan Servicing*
    *LP*, No. CV 05-07673 MMM (JCx), 2012 WL 10274679, (C.D. Cal. Nov. 13, 2012) ..................20

*Spann v. J.C. Penney Corp.*
    314 F.R.D. 312 (C.D. Cal. 2016) ...............................................................15, 16

*Tait v. BSH Home*
    No. SA CV 10-0711 DOC (ANx), 2012 WL 6699247, (C.D. Cal. Dec. 20, 2012) ........................23

*Valentino v. Carter-Wallace, Inc.*
    97 F.3d 1227 (9th Cir. 1996) ...........................................................................23

*Vasquez v. Coast Valley Roofing, Inc.*
    670 F. Supp. 2d 1114 (E.D. Cal. 2009) ...........................................................18

*Vinh Nguyen v. Radient Pharm. Corp.*
    No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293, (C.D. Cal. May 6, 2014) ......................17

*Wal-Mart Stores, Inc. v. Dukes*
    564 U.S. 338 (2011) ........................................................................................21

*Williams v. Gerber Prods. Co.*
    552 F.3d 934 (9th Cir. 2008) ...........................................................................23

**Federal Statutes**

28 U.S.C. Section 1651 ............................................................................................3

28 U.S.C. Section 1715 ..........................................................................................14

28 U.S.C. Section 2283 ............................................................................................3

**State Statutes**

Cal. Bus. & Prof. Code Section 17533.7 ...............................................................16

Cal. Civ. Code Section 1542 .................................................................................................9

**Rules and Regulations**

Fed. R. Civ. P. 23(a)(1) ....................................................................................................20

Fed. R. Civ. P. 23(a)(4) ....................................................................................................22

Fed. R. Civ. P. 23(d) ...........................................................................................................3

Fed. R. Civ. P. 23(e) ...................................................................................................14, 24

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs respectfully submit this Second Renewed Motion for Preliminary Approval of Settlement, which addresses the issues raised by the Court in its November 26, 2018 Order Denying Without Prejudice Plaintiffs' Renewed Motion for Preliminary Approval of Settlement ("Second Order"). ECF No. 105. This memorandum first addresses the concerns expressed in the Second Order. The memorandum then presents facts and arguments (largely repeated from the initial Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Approval, ECF No. 99-1) otherwise supporting preliminary approval of the settlement and certification of a settlement class.

In this class action, Sheila Dashnaw, William Meier, and Sherryl Jones ("Plaintiffs") allege that New Balance Athletics, Inc. ("New Balance") violated California consumer protection laws and committed unlawful business practices by advertising that some of its shoes are "Made in USA" when those shoes are comprised of up to 30% non-domestic content. New Balance denies that its advertising practices violate any such laws.

## II.   RESPONSE TO THE SECOND ORDER

### A.   Cy Pres Recipients

The Declaration of F. Paul Bland, Jr. ("Bland Declaration") provides further detail on why the Public Justice Foundation ("Public Justice") is an appropriate *cy pres* recipient. As the Court notes, Public Justice engages in a wide range of activities, many of which do not have a close nexus with protecting consumers from allegedly deceptive advertising. The Bland Declaration, however, explains in detail the advocacy and educational activities of Public Justice that have such a nexus. Bland Decl., ¶¶ 11-27. To ensure that a *cy pres* award in this case would be used for purposes of

1    protecting California consumers from deceptive advertising, Public Justice has
2    committed to treat the award like a grant that is required to be devoted to a particular
3    purpose and describes how it will implement that commitment. *Id.*, ¶¶ 2-3. This should
4    be sufficient to assure the required nexus between the award and the claims and that
5    class members benefit from the *cy pres* award.

6         As an additional *cy pres* recipient (or an alternative one if the Court finds Public
7    Justice is not an appropriate recipient), the parties have designated the Consumer
8    Federation of California ("CFC"). CFC is a non-profit advocacy organization that
9    works solely on protecting the rights of California consumers and has been active on
10   the specific issue involved in this case, California's Made in the USA law. *See*
11   Declaration of Richard Holober ("Holober Declaration"), ¶¶ 3-4. CFC also commits to
12   ensuring that a *cy pres* award from this case would be used to protect California
13   consumers from deceptive advertising. *Id.*, ¶ 17. The Honorable Marilyn L. Huff from
14   this Court approved CFC as a *cy pres* recipient in a case (like this one) alleging
15   violations of California's Unfair Competition Law, False Advertising Law, and
16   Consumer Legal Remedies Act, finding that CFC (among other recipients) had
17   "demonstrate[d] its dedication to protecting consumers from injuries caused by false
18   advertising." *Beck-Ellman v. Kaz USA, Inc.*, No. 3:10-CV-02134-H-DHB, 2013 WL
19   10102326, at *8 (S.D. Cal. June 11, 2013). *See also De La Torre v. CashCall, Inc.*, No.
20   08-CV-03174-MEJ, 2017 WL 5524718, at *15 (N.D. Cal. Nov. 17, 2017) (approving
21   CFC among others as an appropriate *cy pres* recipient in a settlement with a consumer
22   lender involving violations of California consumer protection laws); Holober Decl.,
23   ¶ 18 (listing cases where CFC was approved as a *cy pres* recipient).

24

25

26

27

28

**B.**     **Release and Preliminary Injunction**

The parties have amended and restated the Settlement Agreement in response to the Second Order (as well as the previous Order). The Amended Settlement Agreement is attached as Exhibit "A" to the Declaration of Jason H. Kim ("Kim Declaration").

In relevant part, the release has been amended to apply only to "the claims asserted in any of the Complaints in this action and/or any claim based on the same factual predicate as any of the claims asserted in any of the Complaints in this action." Amended Settlement Agreement, ¶ VII.B. This is intended to conform to the scope of a class action release, based on the "identical factual predicate" test, allowed under *Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010).

The preliminary injunction in the proposed order preliminarily approving the settlement has been amended accordingly. Class members who do not exclude themselves will be preliminary enjoined from participating in, or benefiting from, any proceeding "asserting any Released Claims as defined in the Settlement Agreement." Amended Settlement Agreement, Exh. 6, ¶ 13. The preliminary injunction is coextensive with the Release, which is co-extensive with *Hesse*.

The Court has the authority to issue such an injunction upon preliminarily approving a class action settlement pursuant to 28 U.S.C. §§ 1651(a) and 2283. As the Ninth Circuit held in *Hanlon v. Chrysler Corp.*, 105 F.3d 1011, 1025 (9th Cir. 1998):

> [T]he temporary approval of the nationwide settlement stayed the state class actions. The federal court had the power to issue an injunction against continued state proceedings under the All Writs Act, 28 U.S.C. § 1651 … and the Anti-Injunction Act, 28 U.S.C. § 2283 …. Although comity requires federal courts to exercise extreme caution in interfering with state litigation, federal courts have the power to do so when their jurisdiction is threatened.

> Further, Fed. R. Civ. P. Rule 23(d) vests a district court with the authority and discretion to protect the interest and rights of class members and to ensure its control over the integrity of the settlement approval process. …

*See also Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1102-03 (9th Cir. 2008) (collecting cases where federal courts had issued injunctions to avoid interference with an imminent class action settlement).

As these cases note, the Anti-Injunction Act imposes limitations on a federal court's power to enjoin state proceedings (although an imminent settlement is sufficient to overcome the Anti-Injunction Act). The effect of the Anti-Injunction Act is purely theoretical in this case, however, as Plaintiffs are not aware of any current proceeding in any forum asserting any of the Released Claims that would be enjoined.

## C.   Class Notice

The parties have amended the proposed class notice, summary notice, and claims form and have agreed on an exclusion form to make the communications to the class more accurate, clear, and user-friendly. Exhibits "B"-"E" to Kim Decl. The class notice and summary notice contain all material terms of the settlement and do not cross-reference the Amended Settlement Agreement for the definition of any material term. Exhibit "C" to Kim Decl. Editable Word versions of these documents will be submitted to the Court's efile address.

## D.   Time Line

The Amended Settlement Agreement incorporates the timeline requested by the Court. Amended Settlement Agreement, ¶¶ IV.B, V.A, & VIII.A. The parties, however, request that the Final Fairness Hearing be scheduled on a Monday approximately 150 days after filing of the preliminary approval order, as that is the period of time required to perform the tasks set forth in the Court's requested timeline and accommodate the 90-day claim period.

## III.   THE SETTLEMENT

### A.   The Settlement Class

The proposed Settlement provides relief to a California Class comprised of:

All persons who, during the Class Period, purchased any and all "Made in USA" Shoes from New Balance and/or its Authorized Retailers in California.[1]

Amended Settlement Agreement, ¶ II.A.11.[2]

The Class Period is defined as December 27, 2012 until the date the Court grants preliminary approval of the Settlement. Amended Settlement Agreement, ¶ II.A.15. Shoes labeled as "Made in USA" (e.g., qualifying shoes) include 51 different New Balance shoe models, which are listed in the Amended Settlement Agreement and in related documents such as the Class Notice, Claim Form, and Exclusion Form. Amended Settlement Agreement, ¶ II.A.22.

**B.   <u>Settlement Terms</u>**

In exchange for a release of claims against New Balance, the material terms of the Settlement are as follows:

1.   <u>Monetary Relief to the Class</u>

Pursuant to the Settlement, New Balance shall allocate $750,000 to a non-reversionary common fund, which shall cover settlement administration costs, the service awards to the named Plaintiffs, and Individual Settlement Payments to Class Members. *Id.*, ¶ III.A.

Each Class Member who does not opt out of the Settlement will be eligible to receive up to $10 per purchase of "Made in USA" shoes and up to a maximum of $50

---

[1] Excluded from the Class are: (a) New Balance's Board members or employees, including its attorneys; (b) any persons who purchased "Made in USA" shoes for purposes of resale; (c) distributors or re-sellers of the "Made in USA" Shoes; (d) the judge and magistrate judge presiding over the Action and their immediate families; (e) governmental entities; and (f) persons or entities who or which timely and properly exclude themselves from the   Class as provided in this Agreement.

[2] The Parties have executed an Amended Settlement Agreement, which is filed concurrently as Exhibit A with this Second Renewed Motion. Plaintiffs refer to the appropriate documents when referencing the operative terms of the Settlement.

(*e.g.*, up to five pairs of qualified shoes), depending on the claims rate. *Id.*, ¶ III.B.8. Class Members will be required to submit a Claim Form to the Class Action Settlement Administrator[3] in order to be eligible to receive the Claim Amount. *Id.*, ¶ II.B.1. Any monetary sum remaining in the common fund, after settlement administration costs have been paid (i.e., unclaimed funds) or any uncashed Claim Amounts issued to Class Members (i.e., residual funds) shall go to the Public Justice Foundation and/or the Consumer Federation of California, as described above. Amended Settlement Agreement ¶ III.C.2.

It is estimated that about $535,000 of the $750,000 common fund will be available to satisfy the claims of Class Members. Based on information produced by New Balance, there were an estimated 984,835 purchases of New Balance shoes during the relevant time period that qualify for a claim.

The recovery to each Class Member per qualifying purchase based on a 5%, 10%, and 15% claims rate is set forth in the following table:

| Claims Rate | Number of Claims | Average Payment |
|---|---|---|
| 5 Percent | 49,242 | $10 ($0.86 remainder goes to cy pres) |
| 10 Percent | 98,484 | $5.43 |
| 15 Percent | 147,725 | $3.62 |

By comparison, based on an average purchase price of $100 and Plaintiffs' expert's calculation of a 10.1 percent price premium based on the "Made in the USA" representation, which New Balance disputed with competing expert testimony, each Class Member would at most be potentially entitled to, on average, $10.10 per qualifying purchase, if Plaintiffs prevailed at trial. At a five percent claims rate, each

---

[3] Also referred to as "Notice Administrator."

1  Class Member would therefore receive essentially full compensation. And even at a

2  fifteen percent claims rate, each Class Member would receive more than 35 percent of

3  the maximum damages, which by itself is a reasonable settlement amount, for the

4  reasons set forth below.[4]

5                  2.    Injunctive Relief to the Class

6       A primary goal of this case was to challenge New Balance's "Made in USA"

7  advertising. This Settlement resolves that challenge by requiring New Balance to make

8  more prominent the disclosure of what it means by this phrase. New Balance will be

9  required to make the following changes to its marketing practices pursuant to the

10 Settlement:

11              a.    For all "Made in USA" Shoes produced after the Final Settlement

12 Date, the hangtag affixed to the "Made in USA" Shoes which contain less than 95%

13 U.S. content will no longer include the phrase "Made in the USA" on the front of the

14 tag.   On the back, in clear readable font, the hangtag will include the following

15 sentence, or words to similar effect, "New Balance 'made' is a premium collection that

16 contains domestic value of 70% or greater" (the "Made Notice") unless and until a

17

18 [4] Here, the parties propose an extensive, state-of-the-art notice campaign as described

19 below. This case, however, involves products largely sold "over the counter" at retail, with no centralized information to identify, much less directly contact, all class

20 members. *See Arnold v. Fitflop USA, LLC*, No. 11-CV-0973 W (KSC), 2014 WL 1670133 (S.D. Cal. April 28, 2014) (certifying settlement class and preliminarily

21 approving settlement despite the fact that "because FitFlop Footwear was primarily sold over the counter at retail stores, Defendant does not have contact information for

22 most Class Members"). Here, New Balance is largely a wholesaler, selling the vast majority of its products to third-party retailers.  Supplemental Declaration of Erin

23 Michael ISO Settlement Agreement ("Supp. Michael Decl.") at ¶ 3.  New Balance does not receive or have access to any identifying information regarding the end-

24 consumers who purchase shoes from these third-party retailers. *Id*. New Balance only receives and retains identifying information for its own online sales through its website

25 and in-store sales to New Balance loyalty members. *Id*. at ¶ 4. As a result, New Balance is only able to identify approximately 5% of potential Class Members for the

26 purposes of sending direct notice. *Id*. at ¶ 5.  In these circumstances, despite the best efforts of the parties and the experienced Settlement Administrator, it is unlikely that

27 more than fifteen percent of class members will file claims.

28

change in either federal or California law obviates the need for such clarification.  New Balance may make any and all stylistic changes to the hangtag it desires so long as such changes are in accordance with the principles set forth in this paragraph.

b.      For all "Made in USA" Shoes produced after the Final Settlement Date, shoe boxes for the "Made in USA" Shoes which contain less than 95% U.S. content will not include the phrase "Made in the USA" on the outside top panel of the box.  New Balance may indicate that the shoes are made in the United States on the side(s) of the shoe box if, on the end and/or side of the shoe box, in clear readable font, it states the following sentence, or words to similar effect, "New Balance 'made' is a premium collection that contains domestic value of 70% or greater" unless and until a change in either federal or California law obviates the need for such clarification.  New Balance may make any and all stylistic changes to the shoe box it desires so long as such changes are in accordance with the principles set forth in this paragraph.

c.      New Balance will implement a compliance and training program for a period of five years from the Final Settlement Date, intended to ensure that moving forward any advertising – including print, television, social media in the United States – include the Made Notice any time the "Made in USA" representation is made with respect to "Made in USA" Shoes which contain less than 95% U.S. content.

d.      New Balance will implement reasonable policies and practices intended to ensure that the modified hangtag is physically affixed to each display shoe in all California retail stores. New Balance further agrees to implement a compliance training program for employees of its flagship and factory stores in California.

e.      New Balance sales and marketing associates who work on advertising for the "Made in USA" Shoes shall receive training at least twice during the five years following the effective date of the Settlement Agreement regarding California's false advertising laws conducted by an attorney.  New Balance will also

1  appoint an attorney responsible for ensuring compliance with the above and implement
2  a compliance program for this same five-year period.

3          f.     New Balance agrees that it will maintain its current policy with
4  respect to any "Made in USA" statements on its U.S. ecommerce website. Specifically,
5  (1) all banners saying "Made in USA" or displaying a "Made in USA" Shoe where the
6  "Made in USA" label is showing must have the Made Notice in legible size and font,
7  (2) the "Made in USA" Shoe landing page (i.e., where all of New Balance's "Made in
8  USA" Shoes are listed), must have the Made Notice listed under the "Made in USA"
9  heading, and (3) all individual product display pages containing a "Made in USA"
10  Shoe must have the Made Notice listed in same size and font as, and in close proximity
11  to, the rest of the product description.  New Balance acknowledges that various aspects
12  of its e-commerce website relating to "Made in USA" Shoes were changed after this
13  litigation commenced.

14        Amended Settlement Agreement, ¶ III.D.1-7.

15          3.    Class Representative Service Awards

16        Subject to Court approval, in exchange for a broad release of their claims,
17  including a waiver of Cal. Civ. Code § 1542, as well as for their time and effort in
18  litigating this matter, each of the Named Plaintiffs shall be eligible to receive a
19  payment of up to $5,000 ("Class Representative Service Award").  Amended
20  Settlement Agreement, ¶ VIII.C.

21          4.    Attorneys' Fees and Costs

22        Pursuant to the Settlement Agreement, Plaintiffs' Counsel will request up to
23  $650,000 for their fees and reimbursable litigation costs, which New Balance does not
24  oppose. *Id.*, ¶ VIII.A. Plaintiffs' Counsel currently estimates their litigation costs are
25  approximately $230,000 and their fees, based on the lodestar, are in excess of

585,000.[5] Kim Decl., ¶ 6; Declaration of Aubry Wand ISO Plaintiffs' Second Renewed Motion for Preliminary Approval ("Wand Decl."), ¶¶ 8-9. Plaintiffs' Counsel's lodestar will increase considerably based on the time they will need to expend through the settlement administration and approval process. Kim Decl., ¶ 7. Thus, the award of attorneys' fees and costs is less than the value of the services of Counsel as calculated under the lodestar method. Moreover, the attorneys' fees and costs represent less than 10% of the total value of the Settlement, including the monetary value of the injunctive relief, and thus the fee award is also appropriate under the common fund approach. Courts in the Ninth Circuit regularly approve fee awards of one third of the total settlement amount. *See*, *e.g.*, *Morris v. Lifescan, Inc.*, 54 Fed.Appx. 663 (9th Cir. 2003) (affirming a 33% award).

### 5. Settlement Administration Costs

Settlement Administration costs will be paid out of the common fund. Amended Settlement Agreement, ¶ III.A.2. Heffler Claims Group ("Heffler"), an experienced and well-qualified claims administrator, has been selected to administer class notice and settlement. *Id.*, ¶ II.A.23. Prior to selecting Heffler, the parties considered proposals from three other reputable claims administrators, but ultimately selected Heffler based on several factors, including consideration of Heffler's experiences, costs, and notice plan. Kim Decl., ¶ 8. Heffler has extensive experience in administering similar consumer class action settlements. Declaration of Jeanne Finegan ("Finegan Decl."), ¶¶ 1-11.

---

[5]Due to the additional work spent drafting this second renewed motion, this represents a slight increase from Plaintiffs' Counsel's prior lodestar as stated in their initial preliminary approval motion. Plaintiffs will provide further supporting documentation and briefing regarding attorneys' fees and costs and the Class Representative Service Awards in a separate motion, which will be filed no later than 21 days after filing of the preliminary approval order, thus enabling Class Members to consider this issue before deciding how to proceed under the Settlement. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 933 (9th Cir. 2010).

## C.    Release

Under the Settlement, Class Members will only release claims alleged in any of the Complaints in the Action and/or claims based on the same factual predicate as the claims alleged in any of the Complaints in this Action. Amended Settlement Agreement, ¶ VII.B.

## D.    Class Notice and Objection and Opt-Out Rights

Pursuant to the terms of the Settlement Agreement, sufficient notice will be provided that will fully apprise the Class of the terms of the Settlement. The notice plan is designed to reach 70% of the target audience. Finegan Decl., ¶ 4. Notice will be in the form of a two-step approach: (1) direct notice via email and/or U.S. Mail to approximately 50,000 Class Members for whom New Balance has such information; and (2) targeted notice to the entire Class via print advertisements, Internet websites, and the creation of a settlement website and the maintenance of a toll-free number.

### 1.    Direct Notice

New Balance will provide the Notice Administrator with information relating to the Class Members, including their email and/or mailing addresses, within one (1) business day after the Court grants preliminary approval of the Settlement. Amended Settlement Agreement, ¶ IV.B.1.a.

Not later than fourteen (14) calendar days after entry of the Preliminary Approval Order, the Notice Administrator will send the Class Notice to Class Members via email. *Id.*, ¶ IV.B.1.b. Not later than twenty-one (21) calendar days after entry of the Preliminary Approval Order, the Notice Administrator shall send the Summary Settlement Notice by First Class U.S. Mail to each Class Member whose email address returned a message as undeliverable, subject to the existence of such information as provided by New Balance, and will re-mail any such notices that are retuned as undeliverable. *Id.*, ¶ IV.B.1.c, d; Finegan Decl. ¶ 15.

## 2. Notice via Publication

Not later than ten (10) calendar days after entry of the Preliminary Approval Order, the Notice Administrator will also create a settlement website and post, among other potential documents, the Class Notice, the operative Complaint, the Settlement Agreement, the Claim Form, Class Counsel's motion for attorneys' fees and costs, and the Order Granting Preliminary Approval of Class Action Settlement, on the settlement website prior to the end of the Claim Period. *Id.*, ¶ VI.B.4; Finegan Decl., ¶¶ 26-27. Not later than ten (10) calendar days after entry of the Preliminary Approval Order, the Notice Administrator shall also establish a toll-free telephone number that will provide Settlement-related information to Class Members. Amended Settlement Agreement, ¶ VI.B.5; Finegan Decl., ¶ 28.

In addition, the Notice Administrator has put together a carefully designed notice plan via print and internet advertisements that will reach 70% of the target audience. Finegan Decl., ¶¶ 4, 16-21. The Notice Administrator shall publish the Summary Settlement Notice not later than fourteen (14) calendar days after entry of the Preliminary Approval Order. Amended Settlement Agreement, ¶ IV.B.3. Specifically, the notice program will employ social media platforms such as Facebook and Instagram, it will be posted in print and online versions of the Los Angeles Times, and there will be a news release over PR Newswire's California and California Hispanic Newslines, which delivers to thousands of print and broadcast newsrooms nationwide, as well as websites, databases and online services including featured placement in news sections of leading portals. Finegan Decl., ¶¶ 22-24. Heffler will monitor the various media channel and provide the Court with a report upon completion of the notice program. *Id.*, ¶ 25.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 3. Form of Notice to Class Members

The Parties have agreed to the substantial form of the Class Notice and the Summary Settlement Notice, subject to the Court's approval. Kim Decl., ¶ 6, Exhs. B and C. The Notices have been amended in response to the Order, as noted above.

### 4. Exclusions

Class Members will have the opportunity to exclude themselves from the Settlement by submitting an Exclusion Form. Amended Settlement Agreement, ¶ V. Class Members must submit the Exclusion Form within ninety (90) days after the Notice Administrator transmits the Class Notice to Class Members (the "Claims Period"). *Id.*, ¶¶ II.A.8, V. Class Members who fail to timely exclude themselves in the manner specified shall be included in the Settlement. *Id.*, ¶ V, IX.A.6.

### 5. Objections

The Class Notice informs Class Members of their right to object to the Settlement. Class Members who wish to object *may* file with the Court a written objection, and submit the objection to the Notice Administrator by first-class mail, postage-prepaid mail, pursuant to the instructions set forth in the Class Notice. Amended Settlement Agreement, ¶ VI. The Objection must be signed by the Class Member and state: (a) the full name, address, and telephone number of the Class Member; (b) include proof of purchase of qualified shoe(s); (c) a written statement of the Class Member's objection(s), including any legal support and/or supporting evidence; (d) whether the person intends to appear the Final Settlement Hearing; and (e) the Class Member's signature, even if represented by counsel. *Id.,* ¶ II.A.14. Class Members who fail to make objections in the manner specified shall be deemed to have waived any objections and shall be foreclosed from making any objections (whether by appeal or otherwise) to the Settlement. *Id*, ¶ VI.C.

1    Class Members are encouraged, *but not required*, to file any objections and/or
2    notice of intention to appear at the Final Fairness Hearing, by no later than the last day
3    of the Claim Period. Amended Settlement Agreement, ¶ VI. Class Members may also
4    raise objections orally at the Court's Fairness Hearing. *Id.*

5    **E.    CAFA Notice**

6    On May 1, 2018, New Balance provided notice of the Settlement to the officials
7    designated pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, including the
8    Attorney General of California and the United States' Attorney General. Declaration of
9    Laura B. Najemy, ECF No. 103, ¶¶ 2-4. On November 14, 2018, New Balance
10   provided a second notice of the Settlement to these same officials. *See* Proof of Service
11   Re: Notice of Proposed Class Action Settlement Agreement (ECF No. 104).  To date,
12   the parties are not aware of any objection from these Attorneys' General to the
13   Settlement. Kim Decl., ¶ 26. In addition, New Balance will provide additional
14   documentation, pursuant to 28 U.S.C. § 1715, within ten days of the filing of this
15   Second Renewed Motion and will file a Proof of Service with this Court thereafter.

16   **IV.    THE SETTLEMENT IS FAIR AND REASONABLE**

17   Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or
18   defenses of a certified class may be settled, voluntarily dismissed, or compromised
19   only with the court's approval." Fed. R. Civ. Proc. § 23(e). Before a court approves a
20   settlement, it must conclude that the settlement is "fundamentally fair, adequate and
21   reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2009). At the
22   preliminary approval stage, the court may grant preliminary approval of a settlement
23   and direct notice to the class if the settlement: "(1) appears to be the product of serious,
24   informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not
25   improperly grant preferential treatment to the class representative or segments of the
26   class; and (4) falls within the range of possible approval." *Spann v. J.C. Penney Corp.*,
27
28

314 F.R.D. 312, 319 (C.D. Cal. 2016) (internal quotation omitted). Preliminary approval is appropriate here because all the foregoing criteria, and the factors supporting class certification, are satisfied.

### A.   The Settlement Was Reached After Informed, Arm's Length Bargaining

The Settlement Agreement was reached following extensive negotiations during a private mediation session with Professor Eric Green in Boston, Massachusetts, who is one of the preeminent mediators in the country. Kim Decl., ¶ 3. When a settlement is "a product of informed, arms-length negotiations," a presumption of fairness attaches. *In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. at 450; s*ee also Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir.2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

The settlement negotiations were at arm's length and, although conducted in a professional manner, were adversarial. Each side was also committed and prepared to vigorously litigate the case if a settlement had not been reached. This is demonstrated by the extensive briefing which was on file before the mediation occurred. Kim Decl. ¶ 10. Moreover, Plaintiffs conducted a thorough investigation and completed substantial discovery before participating in the mediation. *Id.*, ¶ 11. Thus, Plaintiffs and Class Counsel were well-apprised of the salient legal and factual issues before participating in the mediation. *Id.*

### B.   The Settlement Does Not Suffer From Any Obvious Deficiencies

Under the terms of the Settlement Agreement, New Balance has committed to set aside $750,000 as a common fund, in addition to undertaking substantial marketing efforts to make its 70% disclosures regarding its "Made in USA" advertising more prominent. This is an excellent recovery for the Class, taking into consideration the

1   significant risks of proceeding with the litigation, including the risks of obtaining and

2   maintaining class certification, establishing liability and proving damages. *See Spann*,

3   314 F.R.D. at 326 (preliminarily approving settlement of class action involving

4   deceptive discounting practices in light of "substantial litigation risks" including risks

5   associated with restitutionary measures).

6      Prior to the mediation, New Balance filed a motion for judgment on the

7   pleadings, wherein it argued that California's "Made in USA" statute (Cal. Bus. &

8   Prof. Code § 17533.7) violated its free speech rights. If New Balance prevailed on this

9   motion, it would not only have gutted Plaintiffs' primary claim, but it could also have

10  jeopardized the viability of more generalized claims based on false advertising (*e.g.*,

11  Plaintiffs' unlawful prong UCL claim).

12     New Balance also argued that Plaintiffs could not prove restitutionary damages

13  and relatedly that Plaintiffs' economic expert, who proffered a price premium based on

14  the alleged deceptive "Made in USA" representation, should be excluded. New

15  Balance asserted that it would also have been able to introduce evidence that it claimed

16  would establish: (1) that it has always intended to disclose to consumers the nature of

17  its "Made in USA" claims, and that it believes that its claims have been sufficiently

18  qualified in the past to fall outside the specific provisions of California's "Made in

19  USA" statute (Cal. Bus. & Prof. Code § 17533.7); (2) that it has never intended to

20  mislead consumers; (3) that it does, in fact, have five factories in the United States that

21  employ more than 1,300 American workers, where shoes are manufactured; and

22  (4) that (according to surveys conducted by its expert) consumers were not, in fact,

23  deceived by the "Made in the U.S.A." claims at issue in the case.  In short, there are

24  real risks that Plaintiffs would have been unable to certify a class, leaving the class

25  with nothing.

26

27

28

1    When the risks of litigation, the uncertainties involved in achieving class

2   certification, the burdens of proof necessary to establish liability, and the probability of

3   appeal of a favorable judgment are balanced against the merits of Plaintiffs' claims, it

4   is clear that the settlement amount is fair, adequate, and reasonable and that there are

5   no deficiencies in the proposed settlement. Kim Decl., ¶ 21.

6    **C.   The Settlement Does Not Provide Preferential Treatment to**

7         **Plaintiffs or a Segment of the Class**

8    The Settlement Agreement provides equal relief to all Class Members. Each

9   Class Member shall be entitled to recover a Claim Amount of up to $10 per purchase,

10   depending on the number of claims filed, and up to five purchases. This ceiling amount

11   is directly tied to the alleged damages calculated by Plaintiffs where the average shoe

12   costs approximately $100 and the price premium based on the Made in the USA

13   representation is 10.1%. The allocation is appropriate. *See Vinh Nguyen v. Radient*

14   *Pharm. Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293, at *5 (C.D.

15   Cal. May 6, 2014) ("[C]ourts recognize that an allocation formula need only have a

16   reasonable, rational basis, particularly if recommended by experienced and competent

17   counsel."). Even if the claims rate is higher than expected, the recovery for class

18   members will still be appropriate based on the facts and circumstances described

19   herein.

20    The Settlement provides a service payment to Plaintiffs in an amount of up to

21   $5,000 each. This modest payment is for the extensive risk and services undertaken by

22   Plaintiffs, as well as the substantial benefit conferred on the Class as a result of their

23   efforts. The Ninth Circuit has recognized that service awards to named Plaintiffs in a

24   class action are permissible and do not render a settlement unfair or unreasonable. *See*

25   *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015)

26   (approving $5,000 incentive award and finding that it was not unreasonably large or

27

28

1   unfair). Further, the Court will ultimately determine whether Plaintiffs are entitled to

2   the requested service awards, or a portion thereof, after reviewing Plaintiffs' motion

3   for attorneys' fees and costs.

4   **D.      The Settlement Falls within the Range of Possible Approval**

5   Finally, the Court must consider whether the Settlement falls within the range of

6   possible approval. "To evaluate the range of possible approval criterion, which focuses

7   on substantive fairness and adequacy, courts primarily consider Plaintiffs' expected

8   recovery balanced against the value of the settlement offer." *Vasquez v. Coast Valley*

9   *Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (citation omitted).

10   Approximately one million purchases of qualified shoes have been made during

11   the Class Period. Kim Decl., ¶ 15. The number of purchases do not equate to the

12   number of Class Members, but it does serve as a close approximation. The average

13   shoe price is $100. *Id.* Plaintiffs' economics expert, Colin Weir, calculated a 10.1%

14   price premium based on the alleged "Made in USA" misrepresentation. *See* ECF 66.

15   Thus, Class Counsel believes the maximum classwide monetary benefit attainable for

16   the Class, based on restitution, would be approximately $9,210,137 (multiplying the

17   10.1% price premium by the relevant sales data during the Class Period).

18   The $750,000 monetary component of the Settlement represents over 8% of the

19   maximum classwide damages recovery. *Id.* This represents a true common fund, as no

20   money will revert to New Balance, regardless of the claims rate. Thus, it represents an

21   excellent recovery, and on its own, supports preliminary approval and final approval.

22   *See*, *e.g.*, *Hopson v. Hanesbrands Inc.*, 2009 WL 928133, *8 (N.D. Cal. Apr. 3, 2009)

23   ("The settlement … represents less than two percent of that amount," but "may be

24   justifiable … given … significant defenses that increase the risks of litigation."); *Reed*

25   *v. 1–800 Contacts, Inc.*, No. 12-cv-02359 JM (BGS), 2014 WL 29011, *6 (S.D. Cal.

26   Jan. 2, 2014) (granting final approval where settlement represented 1.7% of possible

27

28

recovery); *In re LDK Solar Sec. Litig.*, No. C 07-5182 WHA, 2010 WL 3001384, *2 (N.D. Cal. July 29, 2010) (granting final approval where settlement was 5% of estimated damages). The monetary amount is also fair when measured against the anticipated individual compensation each Settlement Class Member will likely recover as set forth above.

The substantial programmatic relief provided under the Settlement also provides a tangible benefit to all Class Members, including those who do not submit claim forms. *See Keil*, 862 F.3d at 697 ("[a]ssuming that these class members [who do not submit claims] continue to purchase pet food, they will benefit from the additional injunctive relief that the settlement provides"). Here, New Balance has calculated the approximate total monetary costs and expenditures associated with planning and printing materials containing the disclaimer in order to comply with all of the foregoing injunctive relief. *See* Declaration of Erin Michael ("Michael Decl."). Specifically, New Balance estimates that it will spend approximately $35,000 per year on the production of these hangtags over the next five years; it will spend approximately $1.2M per year on the production of shoes boxes that include the agreed-upon disclosure over the next five years (which excludes the costs associated with the design of the boxes); and New Balance's in-house legal team will spend approximately 50 hours on the implementation of this training program over the next five years. In total, the monetary value of the injunctive relief is approximately $6,175,000, excluding the costs of the training and compliance program. Michael Decl., ¶¶ 6-14. When factoring in the monetary value of the injunctive relief provided pursuant to the settlement, the total monetary value of the Settlement is $6,925,000, which represents 75% percent of the *maximum* recovery if Plaintiffs were to prevail at trial.

Finally, New Balance contests liability, as well as the propriety of certification, and it is prepared to vigorously oppose certification and to defend against Plaintiffs' claims if the action is not settled. *See*, *e.g*., *Schaffer v. Litton Loan Servicing, LP*, No. CV 05-07673 MMM (JCx), 2012 WL 10274679, at *11 (C.D. Cal. Nov. 13, 2012) ("Estimates of a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years).").  In sum, given the maximum potential damages and the substantial risks entailed by this case, the proposed settlement is reasonable.

## V.   THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

When presented with a proposed settlement, the Court must ascertain whether the proposed settlement class satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-22 (9th Cir. 1998). Here, the requirements of both Rule 23(a) and Rule 23(b)(3) are satisfied.

### A.   The Requirements of Rule 23(a) Are Satisfied

Rule 23(a) enumerates four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. Fed. R. Civ. P. 23(a). Each of these requirements is met here.

#### 1.   The Numerosity Requirement is Satisfied

A class must be so numerous that joinder of all members individually is "impracticable."  Fed. R. Civ. P. 23(a)(1). Here, there are at least several hundred thousand Class Members. Kim Decl., ¶ 15. Thus, numerosity is satisfied.

#### 2.   The Commonality Requirement is Satisfied

Rule 23(a)(2) only requires that there be at least one issue of law or fact common to the class. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (one question of fact or law is sufficient). To satisfy the commonality requirement, a

class claim "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

The commonality requirement is satisfied here because all Class Members' claims arise under the same laws, all Class Members were exposed to the same alleged misrepresentations on the shoes themselves, and all Class Members have been injured in the same manner. Thus, absent settlement, several issues of law and fact common to the entire Class can be resolved in one fell swoop: whether New Balance's "Made in USA" claims were false or misleading; whether these claims were material to consumers' purchasing decisions; and whether Plaintiffs and Class Members have suffered damages as a result of New Balance's conduct.

### 3.   The Typicality Requirement is Satisfied

Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality does not mean that the claims of the class representatives must be identical or substantially identical to those of absent class members." *Staton*, 327 F.3d at 957. Rather, they only need to be "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020.

The typicality requirement is satisfied because Plaintiffs and Class Members purchased products from New Balance that were based on the same deceptive "Made in USA" representations on the shoes themselves. *See Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 479 (C.D. Cal. 2012) *reconsideration granted on other grounds*, CV 11-1067 CAS JCX, 2012 WL 2458118 (C.D. Cal. June 25, 2012) (finding typicality when "each named Plaintiffs testified that she would not have purchased Serum or would have paid less for Serum had she known it had flammable characteristics.").

### 4.     The Adequacy Requirement is Satisfied

A class representative must "fairly and adequately" protect the interests of all members in the class. Fed. R. Civ. P. 23(a)(4). Adequacy is met where the class representatives: (1) have common interests with unnamed class members; and (2) will vigorously prosecute the interests of the class through qualified counsel. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997).

Here, Plaintiffs, the proposed class representatives, have the same types of interests and suffered the same types of injury as all other Class Members. In addition, Plaintiffs have already provided significant, valuable assistance in the investigation and prosecution of this matter, and helped to bring about the Settlement now before this Court. Kim Decl., ¶ 22. They are therefore "adequate" class representatives within the meaning of Rule 23(a)(4). Plaintiffs' counsel are also "adequate" because they have extensive experience in class action litigation, and have vigorously pursued these claims throughout this litigation. Kim Decl., ¶¶ 25-26, Exh. F; Wand Decl., ¶¶ 3-7. Accordingly, the designated Plaintiffs should be appointed as Class Representatives and Plaintiffs' counsel should be appointed as Class Counsel.

### B.     **The Requirements of Rule 23(b)(3) are Satisfied**

"To qualify for certification under [Rule 23(b)(3)], a class must satisfy two conditions in addition to the Rule 23(a) prerequisites: common questions must 'predominate over any questions affecting only individual members,' and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Hanlon*, 150 F.3d at 1022, *quoting* Fed. R. Civ. P. 23(b)(3)).

### 1.     Common Questions Predominate Over Individual Issues

Plaintiffs bring claims for violations of the California Made in USA statute, various California consumer protection statutes, and common law claims. The central

1   and predominant question as to all of Plaintiffs' legal claims is whether New Balance's
2   "Made in USA" advertising is deceptive, unlawful, and/or unfair. *See Williams v.*
3   *Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (holding that "the primary
4   evidence in a false advertising case is the advertising itself") (citation omitted). This
5   determination is not made with regard to each class member, but under a single,
6   objective, and common "reasonable consumer" standard. *Id.* at 938. "This objective
7   test renders claims under the UCL, FAL, and CLRA ideal for class certification
8   because they will not require the court to investigate class members' individual
9   interaction with the product.'" *Tait v. BSH Home*, No. SA CV 10-0711 DOC (ANx),
10  2012 WL 6699247, at *12 (C.D. Cal. Dec. 20, 2012) (citations omitted).

## 2.   Class is the Superior Method to Resolve this Controversy

12       A class action is superior to other methods of litigation where, as here,
13  "classwide litigation of common issues will reduce litigation costs and promote greater
14  efficiency" and "no realistic alternative [to classwide treatment] exists." *Valentino v.*
15  *Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-1235 (9th Cir. 1996). Here, concentrating
16  the adjudication of claims into a single proceeding is highly desirable because
17  individual claims could only be brought by claimants unlikely to be able to afford to
18  pursue them or who lack sufficient knowledge of their rights. Even if those individuals
19  could bring separate lawsuits, having nearly identical lawsuits filed by hundreds if not
20  thousands of individuals would be wasteful and inefficient. The high cost of litigating
21  these cases would dwarf any potential recovery for the majority of consumers, most of
22  whom would likely forgo vindicating their rights. *See Barbosa v. Cargill Meat*
23  *Solutions Corp.*, No. 1:11-cv-00275-SKO, 2013 WL 3340939, at *11 (E.D. Cal. Jul. 2,
24  2013). Accordingly, certification is superior to any other method of resolution, as it
25  will promote economy, expediency, and efficiency.

## VI.     THE PROPOSED CLASS NOTICE SHOULD BE APPROVED

Adequate notice is critical to court approval of a class settlement under Rule 23(e). *Hanlon*, 150 F.3d at 1025. The threshold requirement concerning the sufficiency of class notice is whether the means employed to distribute the notice is reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the class members' rights to opt out or object. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974). In the Ninth Circuit, notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004), *citing Mendoza v. United States*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

Here, the Class Notice provides Class Members with sufficient information to make an informed and intelligent decision about the Settlement. The Class Notice and Summary Notice are written in simple, straightforward language that, among other things, includes: (1) basic information about the lawsuit; (2) a description of the benefits provided by the settlement; (3) an explanation of how Class Members can obtain settlement benefits; (4) an explanation of how Class Members can exercise their right to request exclusion from or object to the settlement; (5) an explanation that any claims against New Balance that could have been litigated in this action will be released if the Class Member does not request exclusion from the settlement; (6) information regarding Class Counsel's request for fees and expenses, Plaintiffs' service award payments, and how Class Members may obtain a copy of the upcoming fee motion (which, like all pertinent settlement documents, will be posted to a settlement website); and (7) the Final Approval hearing date. Accordingly, the Notice forms satisfy the content requirements of Rule 23(e).

The notice plan is also comprehensive and designed to reach 70% of the target audience, in compliance with the Federal Judicial Center Guidelines, as described above. In sum, the contents and dissemination of the proposed Class Notice constitute the best notice practicable under the circumstances and fully comply with the requirements of Rule 23 and due process. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) ("The notice must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (internal citations and quotations omitted)).

## VII.   **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the class action settlement set forth in the Settlement Agreement as amended; (2) approve the Class Notice as amended; (3) provisionally certify the Class described herein for settlement purposes; (4) appoint Plaintiffs as representatives of the Class; (5) appoint the Wand Law Firm, P.C. and Schneider Wallace Cottrell Konecky & Wotkyns LLP as Class Counsel; (6) appoint Heffler as the Settlement Administrator; and (7) schedule a final fairness hearing.

Plaintiffs respectfully request a hearing on this Motion if the Court is not inclined to grant this Motion on the papers.

DATED: December 7, 2018          By: /s/ Jason H. Kim

SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
Todd M. Schneider
Jason H. Kim

THE WAND LAW FIRM, P.C.

*Attorneys for Plaintiffs and the Putative Class*